UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re<br><br>**CASHMAN EQUIPMENT CORP.,**[1]<br><br>Debtor | **Chapter 11**<br><br>**Case No. 17-12205** |

**MOTION BY DEBTORS FOR ENTRY OF ORDER**
**DIRECTING JOINT ADMINISTRATION OF CHAPTER 11 CASES**

Cashman Equipment Corp. ("CEC"), Cashman Scrap & Salvage, LLC ("CSS"), Servicio Marina Superior, LLC ("SMS"), Cashman Canada, Inc. ("CCI") and Mystic Adventure Sails, LLC ("Mystic", and together with CEC, CSS, SMS and CCI the "Debtors"), each a debtor and debtor-in-possession, move the Court for the entry of an pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and Rule 1015-1(a) and (c) of the Local Bankruptcy Rules of the United States District Court for the District of Massachusetts directing the joint administration of their respective bankruptcy cases and the case of James M. Cashman ("JM Cashman"), docket number 17-12204. The Debtors are "affiliates", as that term is defined under Section 101(2) of the Bankruptcy Code, of each other and JM Cashman. JM Cashman has guaranteed substantially all of the secured debt arising from the Debtors' bank loans. The Debtors request joint administration for procedural purposes only. The approval of this motion will dispense with otherwise unnecessary and potentially duplicative filings, easing the administrative burden on the

---

[1] Joint administration requested. The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Cashman Equipment Corp. (7969), Cashman Scrap & Salvage, LLC (6088), Servicio Marina Superior, LLC (6919), Mystic Adventure Sails, LLC (2137) and Cashman Canada, Inc. (1296).

1

Court and all creditors and parties in interest. The Debtors request that this Court designate the case captioned as *In re Cashman Equipment Corp.*, docket number 17-12205, as the lead case in these bankruptcy proceedings. In support of this motion, the Debtors aver as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

3. On the date of this Motion (the "Petition Date"), each of the Debtors filed a petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Court"). The Debtors continue to operate as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

**A.    The Debtors and Their Businesses**

4. The Debtors specialize in the charter and sale of ocean going and inland barges and tugboats servicing the marine construction, oil and gas, scrap and salvage and marine remediation industries worldwide. The Debtors have also been involved in heavy marine construction including, among other things, dredging, pile driving, concrete work, pier and dock construction, bridge construction, shore protection and other marine structures, demolition, oil spill and other marine remediation work, and marine salvage work.

5. Beginning with CEC, which was formed in 1995 with a fleet of only ten (10) barges servicing the New England construction industry, the Debtors have expanded and now include a fleet (the "Fleet") of 147 vessels, consisting of forty-one (41) inland/coastal barges,

eighty-three (81) ocean going barges, eight (8) tug/push boats, two (2) floating hotels, fourteen (14) sectional construction barges, one (1) three-masted schooner, and various items of general and specialized construction equipment, including cranes and related construction equipment and marine pollution and clean-up equipment.

6.  The Fleet includes inland and ocean going barges ranging in size from 120 to 400 feet in length. Nearly seventy-five (75%) of the Fleet barges are less than fourteen (14) years old, and can be retrofitted to accommodate the unique project needs of customers across the public and private sectors and a variety of industries. CEC is the largest operator of offshore barges in the world.

7.  The Debtors provide services in and maintain or have maintained fleets on the U.S. East Coast and Gulf of Mexico, Mexico, Singapore, Australia, the Persian Gulf, West Africa, the Caspian Sea and South and Central America. Due to the size and versatility of the Fleet, the Debtors are able to deploy vessels and service customers across the world.

8.  CEC currently has barges based in Africa, Indonesia, Korea, the Middle East, Mexico, Singapore and the states of Louisiana, New Jersey, South Carolina, Virginia, Florida, Massachusetts and New York. CCI's barges are based in Canada.

9.  The Debtors' current financial issues are due to the unprecedented and prolonged downturn in the oil and gas industry. A substantial portion of the Debtors' revenue is derived from the sale and charter of vessels to companies involved in the exploration for and development of oil and gas assets, as well as oil clean up and related petroleum projects. The sharp and sustained decline in the price of oil has resulted in financial workouts and bankruptcy filings for many companies engaged in and associated with the oil and gas industry.

10. The Debtors intend to continue their operations in the ordinary course of business while reducing the size of the Fleet and the related indebtedness through the orderly sale of vessels, in order to restructure their businesses and remaining indebtedness.

### i. The Debtors' Businesses.

11. The Debtors' primary source of revenue is the charter and sale of the vessels and equipment in the Fleet, with secondary revenue sources being vessel and equipment sales and its construction contracting business. In recent years, a substantial portion of the Debtors' revenue has come from the oil and gas industry. In 2014 and 2015, the Debtors generated consolidated gross revenue from the charter and sale of vessels of approximately $74.3 and $86.6 million, respectively. In 2016, as a result of the downturn in the oil and gas industry, the consolidated revenue was approximately $44.7 million.

12. The Debtors operations are integrated, with CEC providing administrative functions for each of the Debtors, CSS providing repair and maintenance services for the Fleet, SMS providing tug and tow services and CCI and Mystic owning discrete assets. JM Cashman, the Debtors' principal, has over forty (40) years of experience in the marine services and construction business, both offshore and on-shore. In addition to providing management to the Debtors, JM Cashman is responsible for the charter and sale of vessels worldwide.

13. Since the dramatic downturn in the oil and gas industry, the Debtors have taken steps to reduce costs and streamline operations. Among other things, the Debtors have reduced their overhead, have placed their tugs and Mystic's schooner in storage with the intention to sell

or enter into long term charters for those vessels, and have substantially reduced their overseas operations[2] pending an improvement in the oil and gas industry.

14. The length of CEC's barge charters run from daily, to monthly, to, in some instances, more than a year, with daily charter rates between $300 and $3,000 per day. Once a barge is on charter, the party chartering the barge covers the costs of operating the barge, including crew costs, dock and harbor fees, pilotage and insurance. The charter and sale of vessels is accomplished by utilizing JM Cashman's extensive industry network.[3]

### ii.    The Debtors' Structure.

15. CEC, a Massachusetts corporation, was formed in 1995 and currently employs nineteen (19) people, all of whom are based in the United States. CEC is headquartered in Braintree, Massachusetts, and owns 140 of the vessels in the Fleet, as well as other equipment utilized in its operations. In addition to chartering and managing the Fleet, CEC has provided marine and general (heavy civil) construction services.

16. CSS, a Louisiana limited liability company, was formed in 2003 and currently employs five (5) people, all of whom are based in the United States. CSS operations are located in Louisiana and consist of managing the repair and maintenance yard utilized by CEC to maintain the Fleet. CSS also provides the Debtors with scrapping and salvaging services for vessels and equipment, and provides waterfront facilities for logistical support.

17. SMS, is a Louisiana limited liability company, was formed in 2006 and currently employs two (2) people based in the United States. SMS owns eight (8) tug/push boats in the

---

[2] The Debtors integrated operations previously included the operations of various foreign affiliates, including affiliates in Singapore, Mexico and Kazakhstan. The affiliates' operations have ceased, and they do not currently have any material assets. These entities have not, therefore, filed Chapter 11 cases.
[3] The Debtors intend to file a motion requesting the establishment of procedures for the sales of vessels in the ordinary course of business.

Fleet. SMS historically provided towing and heavy haul services, primarily to the off shore drilling industry in the Gulf of Mexico and in Southeast Asia. SMS' tug/push boats are all currently in storage pending the sale or long term charter of those vessels.

18. CCI is a Canadian corporation that owns and operates four (4) of the barges in the Fleet. Mystic is a Massachusetts limited liability company whose sole asset is an ocean-going three-masted sailing schooner called the *Mystic* (the "Schooner") that is currently in storage pending the sale or long term charter of the Schooner. The Schooner has operated pleasure cruises across the eastern seaboard.

19. As of the Petition Date, CEC and SMS had borrowed money from the Lenders in order to finance the acquisition and construction of new Fleet vessels, to refinance prior debt, and to support general working capital needs. The aggregate amount asserted to be owed by the Lenders is approximately $142,500,000. All of the Debtors have guaranteed some or all of the Lenders' indebtedness.[4]

20. There are liens on some, but not all, of the Debtors' vessels. In order to obtain a lien on a flagged vessel, a lender must record a vessel mortgage in the jurisdiction in which the vessel is flagged. A preliminary analysis indicates that there may be as many as seventeen (17) barges that are unencumbered, and the Debtors may own other assets that are unencumbered. The Debtors estimate that the seventeen (17) unencumbered barges have an orderly liquidation value totaling approximately $22,350,000.

21. In conjunction with obtaining financing, the Debtors obtained appraisals of their vessels (collectively the "Appraisals"). Based on the Appraisals, the aggregate fair market value

---

[4] The following non-debtor affiliates have also guaranteed some of the obligations to the Lenders: (a) Cashman Consulting, Singapore, Pte Ltd., (b) CHM Maritime, SAPI de CV, and (c) Cashman Caspian, LLP (collectively the "Non-Debtor Guarantors").

of the assets against which the Lenders assert liens is approximately $357,700,000, and the orderly liquidation value of those assets is approximately $301,300,000.

22.     Descriptions of the claims against the Debtors are set forth in the Affidavit of James M. Cashman in Support of First Day Motions, which has been filed contemporaneously with this motion.

### ARGUMENT

23.     Federal Rule of Bankruptcy Procedure 1015(b) provides that if two or more petitions involving a debtor and an affiliate are pending in the same court, "the court may order a joint administration of the estates." Fed. R. Bankr. P. 1015(b). Rule 1015-1(a)(3) of the MLBR provides that a motion for joint administration shall be granted "if it is likely to ease the administrative burden on the parties and the Court." MLBR 1015-1(a)(3).

24.     The Debtors are "affiliates" as that term is defined by Section 101(2) of the Bankruptcy Code, and are affiliates of JM Cashman. *See* 11 U.S.C. 101(2). All of the Debtors and JM Cashman have guaranteed some or all of the Lenders' indebtedness.

25.     The Debtors expect to file notices, applications, motions, and other pleadings and orders that are applicable to all of the Debtors and to JM Cashman. Joint administration will permit all parties in interest to file and serve pleadings for all of the respective cases under a single caption. Joint administration will also enable parties in interest to remain apprised of the various matters before the Court in all of the cases and will enable the Debtors to utilize a single creditor service list, eliminating duplication.

26.     Joint administration will similarly reduce the number of pleadings that otherwise would be filed with the Clerk of the Court, make the completion of various administrative tasks less burdensome, and minimize any delays. Joint administration will permit the Clerk of the

Court to utilize a single general docket for these cases and combine notices to creditors of the Debtors' and JM Cashman's estates and other parties in interest.

27.  The Debtors are not aware of any facts that would give rise to actual or potential conflicts of interest caused by joint administration. The Debtors are not seeking substantive consolidation of the Chapter 11 cases through this motion. The rights of the Debtors' respective creditors will not be prejudiced by the entry of an order directing the joint administration of these cases.

28.  To the extent that proofs of claim are required to be filed, each creditor will be required to file a claim against the particular estate that is indebted to such creditor. The Debtors will keep separate and account for the assets and liabilities of each of their respective estates.

29.  Grounds therefore exist for the entry of an order directing the joint administration of the Debtors' bankruptcy estates.

## NOTICE

30.  The Debtors have served this motion by this Court's ECF System, electronic mail or first class mail upon (a) all known creditors, (b) taxing authorities, (c) the Office of the United States Trustee, and (d) all parties who have filed a notice of appearance in this case. In light of the relief requested herein, the Debtors submit that no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request the entry of an order: (a) authorizing the joint administration of the Debtors' Chapter 11 cases and JM Cashman's Chapter 11 case, (b) designating *In re Cashman Equipment Corp.* as the lead case, and (c) granting such other and further relief as the Court deems appropriate.

>Respectfully submitted,
>
>CASHMAN EQUIPMENT CORP.,
>CASHMAN SCRAP & SALVAGE, LLC,
>SERVICIO MARINA SUPERIOR, LLC,
>CASHMAN CANADA, INC., AND
>MYSTIC ADVENTURE SAILS, LLC,
>By their proposed attorneys,
>
>/s/ D. Ethan Jeffery
>Harold B. Murphy (BBO #362610)
>D. Ethan Jeffery (BBO #631941)
>Michael K. O'Neil (BBO #658025)
>MURPHY & KING, Professional Corporation
>One Beacon Street
>Boston, Massachusetts  02108-3107
>Tel: (617) 423-0400
>Fax: (617) 556-8985
>Email: ejeffery@murphyking.com

Dated: June 12, 2017

724999