**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

| | |
|---|---|
| In re<br><br>**CASHMAN EQUIPMENT CORP.,**[1]<br><br>Debtor | **Chapter 11**<br><br>**Case No. 17-12205-MSH**<br><br>**Jointly Administered** |

**NOTICE OF PROPOSED TERM SHEET**

**Please take notice that** attached as Exhibit A is a term sheet (the "Term Sheet") describing a proposed agreement between Cashman Equipment Corp. ("CEC"), Cashman Scrap & Salvage, LLC ("CSS"), Servicio Marina Superior, LLC ("SMS"), Cashman Canada, Inc. ("CCI"), and Mystic Adventure Sails, LLC ("Mystic", and together with CEC, CSS, SMS and CCI the "Debtors") and the Lenders (as defined in the Term Sheet)[2] with respect to the following pending motions:

- *Motion for an Order Authorizing the Debtors (A) To Sell Vessels in the Ordinary Course of Business, (B) To Distribute Sale Proceeds, and (C) To Grant Substitute Liens* [docket no. 128] (the "Sale Motion"); and

- *Motion for an Order (1) Authorizing the Continued Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* [docket no. 370] (the "Cash Collateral Motion").

The Term Sheet remains subject to Lender approval. Subject to Bankruptcy Court approval, the Term Sheet contemplates the submission of agreed to orders with respect to the Sale Motion (the "Sale Order") and the Cash Collateral Motion (the "New Cash Collateral Order", and together with the Sale Order the "Agreed Orders") that provide for the consensual sales of specified assets of the Debtors and the consensual use of cash collateral through January 15, 2018, unless terminated earlier (the "Term"). Except with respect to certain pending sales of vessels, the Debtors intend to request that the Bankruptcy Court continue the hearings on the Sale Motion and the Cash Collateral Motion that are currently scheduled for September 13, 2017, and will ask that the Bankruptcy Court enter the Sale Order and the New Cash Collateral Order (to be filed at a later date) at those continued hearings. Notice of any continued hearings on the Sale Motion and the Cash Collateral Motion will be provided at a later date. The Debtors intend to request that the Bankruptcy Court approve the proposed sales of the following vessels at the

---

[1] The other debtors in these jointly administered Chapter 11 cases are Cashman Scrap & Salvage, LLC, Servicio Marina Superior, LLC, Cashman Canada, Inc. and Mystic Adventure Sails, LLC.

[2] Capitalized terms not otherwise defined in this notice shall have the meanings ascribed to them in the Term Sheet.

1

hearing on September 13, 2017: (a) JMC 4 to Pacific Tugboat Service, (b) JMC 86 and JMC 29
to M&M Electrical Services, LLC, (c) JMC 126 to Conway Marine Construction, Inc., (d) JMC
127 to Conway Marine Construction, Inc., (e) JMC 628, JMC 633, JMC 634, JMC 635, JMC
636, JMC 637, JMC 639 and JMC 642 to Gravoris Aluminum Boats, LLC, and (f) JMC 154 to
Shimmick/FCC/Impregilio JV.

The major provisions of the Term Sheet are summarized below.[3]

<u>THE SALE ORDER</u>

1.      The Term Sheet provides, and the Sale Order will provide, that during the Term
the Debtors will be permitted to sell, free and clear of liens, claims and interests and without
further Court order: (a) up to $25,000,000 of Mortgaged Vessels, based on the aggregate gross
sales prices of such assets, and (b) up to $10,000,000 of Unencumbered Vessels, based on the
aggregate gross sales prices of such assets.  The Debtors and the Lenders have or will, prior to
the entry of the Agreed Orders, agreed to minimum sale prices (the "<u>Minimum Disposition
Price</u>") for each of the Mortgaged Vessels and the Unencumbered Vessels (collectively the
"<u>Vessels</u>").  The Debtors will request that the Minimum Disposition Prices be filed under seal.

2.      Notices of proposed sales of Vessels will be given to the Lender(s) holding a lien
on the asset in question, to the Official Committee of Unsecured Creditors and, with respect to
sales of Unencumbered Vessels, to the Agent.  Such parties will have five (5) days to object to
the proposed sale.  If the proposed sale is for a price that is at or above the Minimum Disposition
Price, no objection to the proposed sale price will be permitted.  A Lender that does not object to
the sale of a Vessel against which it holds a lien is required to provide the Debtor with a
discharge of its lien upon the closing of the sale of the Vessel.

3.      Upon the closing of a sale of a Vessel, the Debtor will remit to the Lender holding
a first priority lien on the Vessel (or to Agent in the case of the sale of an Unencumbered Vessel)
the lesser of: (a) the Lender Claim(s) secured by the Vessel, or (b) Net Proceeds equal to 85% of
orderly liquidation value ("<u>OLV</u>") of the Vessel, plus 50% of any Net Proceeds in excess of
OLV.  The Debtors and the Lenders have or will, prior to the entry of the Agreed Orders, agreed
to the OLV for each of the Vessels.  The balance of the proceeds remaining after such payments
are remitted (the "<u>Retained Proceeds</u>") will be retained by the Debtors free and clear of any
prepetition liens, claims, encumbrances or interests, and placed in a segregated debtor-in-
possession bank account to be used only in accordance with orders of the Bankruptcy Court.

4.      Each Lender holding a first lien on a Mortgaged Vessel that is sold will have a
claim for the amount of Retained Proceeds that are retained by the Debtors.  The Agent, for the
benefit of each Lender with a Retained Proceeds Claim, will be granted a lien on the
Unencumbered Vessels to secure all of the Retained Proceeds Claims.  Each Retained Proceeds

---

[3]  The description of the Term Sheet in this notice is a summary only, and does not include all of the terms and
conditions in the Term Sheet.  Creditors and parties in interest should review the entire Term Sheet.  Where there is
an inconsistency between the Term Sheet and this notice, the Term Sheet shall control and govern any matter or
point.

Claim shall have a *pari passu* interest with every other Retained Proceeds Claim in the Retained Proceeds Lien.

THE NEW CASH COLLATERAL ORDER

5.      Attached to the Cash Collateral Motion is a budget (the "Budget") for the duration of the Term.  The New Cash Collateral Order will provide the Debtors with the authority to use Cash Collateral in accordance with the Budget.  The Debtors will provide reporting to the Lenders, the Committee and the Office of the United States Trustee (the "UST") consistent with the reporting requirements contained in the prior cash collateral orders entered by the Bankruptcy Court (collectively the "Prior Orders") [doc. no.s 56, 217, 326 and 364].

6.      In addition to the replacement liens granted to the Lien Lenders pursuant to the Prior Cash Collateral Orders, each Lien Lender shall receive an "Additional Adequate Protection Lien" on all Mortgaged Vessels other than those vessels subject to the liens held by Pacific West Bank and the U.S. Maritime Administration.  The Additional Adequate Protection Liens shall be junior to existing liens, including any liens granted pursuant to the Prior Cash Collateral Orders, and constitute additional adequate protection for: (a) the Debtors' use of cash collateral pursuant to the New Cash Collateral Order, and (b) any decline in value of non-cash collateral during the period from the Petition Date through the Termination Date.

7.      Subject to certain retained challenge rights (the "Retained Challenge Rights"), the New Cash Collateral Order will recognize certain acknowledgements and waivers by the Debtors with respect to certain of the Lenders' claims and liens.  **In accordance with M.L.B.R. 4001-1(d), the Debtors will ask the Bankruptcy Court to approve the following terms for additional adequate protection to each Lender (subject to the Retained Challenge Rights), which otherwise would be unenforceable in accordance with M.L.B.R. 4001-1(c):**

a.      An acknowledgment of the amount of principal and interest owed to each Lender as of the Petition Date;

b.      An acknowledgment of the extent, validity, and perfection of each Lender's liens against certain specified property of the Debtors, including the Mortgaged Vessels;

c.      A release by the Debtors of all claims against such Lender as of the Petition Date, including those under chapter 5 of the Bankruptcy Code;

d.      A waiver of rights under Bankruptcy Code section 506(c) as to any and all surcharge on collateral apart from certain amounts specified in the Term Sheet; and

e.      A waiver of rights under Bankruptcy Code Section 552(b) and to marshal prepetition collateral.

8.    A list of the Debtors' Retained Challenge Rights will be filed with the Court.  In addition to the Debtors' Retained Challenge Rights, the Committee will have thirty (30) days from the entry of the Agreed Orders to investigate and, if appropriate, seek the authority to challenge the extend, priority and validity of any lien asserted by a Lender.  All Retained Challenge Rights, including those held by the Committee shall be exercised within sixty (60) days of the entry of the Agreed Orders, barring which the Retained Challenge Rights will be waived and released.

Respectfully Submitted,

CASHMAN EQUIPMENT CORP., CASHMAN SCRAP & SALVAGE, LLC, SERVICIO MARINA SUPERIOR, LLC, CASHMAN CANADA, INC., AND MYSTIC ADVENTURE SAILS, LLC,

By their counsel,

/s/ D. Ethan Jeffery
Harold B. Murphy (BBO #362610)
D. Ethan Jeffery (BBO #631941)
Murphy & King, Professional Corporation
One Beacon Street, 21st Floor
Boston, Massachusetts  02108-3107
Telephone:  (617) 423-0400
EJeffery@murphyking.com

Dated: September 11, 2017

732521

4

IN RE: CASHMAN EQUIPMENT CORP., *ET AL.*
BANKRUPTCY NO. 17-12205
(JOINTLY ADMINISTERED)

EXHIBIT A TO

NOTICE OF PROPOSED TERM SHEET

**SUBJECT TO FED. R. EV. 408**
**THIS DOCUMENT IS SUBJECT TO REVIEW AND APPROVAL BY LENDERS**
**UNLESS AND UNTIL APPROVED BY LENDERS, THIS DOCUMENT SHALL HAVE NO LEGAL EFFECT**

# TERM SHEET

September \_\_\_, 2017

among

**CASHMAN EQUIPMENT CORP. *et al.***

and

**ROCKLAND TRUST COMPANY AND CERTAIN OTHER LENDERS**

| I. | GENERAL |
|---|---|
| **A.     Certain Definitions** | "<u>Additional Adequate Protection Collateral</u>" means all Mortgaged Vessels, except vessels subject to first mortgages of MARAD or PacWest. |
| | "<u>Additional Adequate Protection Lien</u>" means a lien on the Additional Adequate Protection Collateral junior to all valid and perfected liens and security interests. |
| | "<u>Agreed Orders</u>" means the Sale Order (per III(A) below) and the New Cash Collateral Order (per IV(B) below). |
| | "<u>Cash Collateral</u>" means "cash collateral," as defined in section 363(a) of the Bankruptcy Code, of any of the Debtors. |
| | "<u>Committee</u>" means the Official Committee of Unsecured Creditors of the Debtors; |
| | "<u>Debtors</u>" means Cashman Equipment Corp., Cashman Scrap & Salvage, LLC, Servicio Marina Superior, LLC, Cashman Canada, Inc., and Mystic Adventure Sails, LLC; |
| | "<u>First Lien Lender</u>" means, as to a Mortgaged Vessel, the Lender holding a prepetition duly recorded first preferred ship mortgage on or prepetition first priority perfected security interest (including, as to any Mortgaged Vessel consisting of specified equipment, a first priority UCC security interest in such equipment) in such Mortgaged Vessel. |
| | "<u>Individual Debtor</u>" means James M. Cashman. |
| | "<u>Lender Claim</u>" means, as to each Lender, the sum of (i) such Lender's allowed claim for principal and interest as of the Petition Date, (ii) such Lender's additional claim for amounts payable under Bankruptcy Code section 506(b), and (iii) any portion of such Lender's claim that is subject to a pending Retained Challenge Right and/or Committee Notice, each as defined in IV(D), below. |

2

"Lenders" means Rockland Trust Company, N.A. and other Lien Lenders.[1]

"Lien Lender" means, (i) as to any Mortgaged Vessel, each of the First Lien Lender and Second Lien Lender, if any, and (ii) as to any Unencumbered Vessel, Rockland Trust Company as collateral agent pursuant to IV(F) below.

"MDP" means the minimum disposition price described in II(A) below.

"Mortgaged Vessel(s)" means:  (x) all vessels of any Debtor that are subject to a mortgage in favor of any Lender as of the Petition Date and (y) certain, to be specified, items of equipment subject to Lender security interests as of the Petition Date.

"Net Proceeds" means, as to sales of vessels and certain equipment, the gross sale price received or to be received by the Debtors at the sale closing, less:  (i) the Permitted Commission for such sale, (ii) the amount to be paid at such closing to obtain discharge of a Priority Maritime Lien, and (iii) recording, discharge, and transfer fees.  For the avoidance of doubt, there shall not be subtracted from the gross sale price in the calculation of Net Proceeds either (x) any outstanding charges (including fees relating to the registration of the vessel under the laws of its current flag state) that must be paid before the sale of the vessel will be permitted or recognized by such state, nor (y) any applicable sales taxes (which Debtors shall cause to be paid by the applicable buyer(s) at the sale closing).  With respect to the sale of a Mortgaged Vessel pursuant to a Purchase Option Charter (as defined below), the Net Proceeds for such sale shall be calculated without taking into account any credits to the purchase price due to a buyer as a result of having made lease payments under a Purchase Option Charter.

---

[1]   Rockland Trust Company is working with all Lenders directly regarding this preliminary Term Sheet.  Like Rockland Trust Company, all of those Lenders have not consented to the terms herein and reserve their rights in full regarding all aspects of the matters described herein, including in respect of the pending sale motion and cash collateral motion, under applicable law, including applicable bankruptcy law and rules.  Without limitation, all Lenders' rights of review and comment hereon are specifically reserved.

732567

"New Cash Collateral Order" means the order described in IV(A) below.

"OLV" means, as to any Mortgaged Vessel or Unencumbered Vessel, the orderly liquidation value set forth in the Debtors' 2017 appraisals which have been supplied to the Lenders, or such other value that the First Lien Lender and the Debtor agree shall be the OLV of such vessel for purposes of the agreements set forth in this Term Sheet. For the avoidance of doubt, Lenders are not bound by such appraisals or agreed OLVs for any purpose other than as expressly set forth in this Term Sheet.

"Parties" means the Debtors, all Lenders and the Committee.

"Pending Sales" means the following sales: (i) JMC 60 for a gross purchase price of $110,000, (ii) JMC 86 and JMC 29 for a combined gross purchase price of $900,000; (iii) JMC 126 for a gross purchase price of $130,000; (iv) JMC 127 for a gross purchase price of $130,000; (v) JMC 628, JMC 633, JMC 634, JMC 635, JMC 636, JMC 637, JMC 639 and JMC 642 for an aggregate gross purchase price of $132,000; and (vi) JMC 154 for a gross sale price, pursuant to a Purchase Option Charter (as defined below), of $1,100,000. The amounts of the Pending Sales shall be confidential, subject to impoundment/sealing orders prior to use in the Bankruptcy Court or any court, and shall be shared in confidence by and among the Debtors, Lenders, the Agent, and Committee.

"Permitted Commission" means, with respect to a Mortgaged Vessel/Unencumbered Vessel sale, a fee payable to one or more brokers, none of whom is an insider, that, absent the consent of the Lien Lender(s) with respect to the Mortgaged Vessel to be sold, does not exceed three and one-half percent (3.5%) of the gross purchase price. The Permitted Commission shall be confidential, subject to impoundment/sealing orders prior to use in the Bankruptcy Court or any court, and shall be shared in confidence by and among the Debtors, Lenders, the Agent, and Committee.

"Petition Date" means June 9, 2017.

4

732567

| | |
|---|---|
| | "Priority Maritime Lien" means a maritime lien on a vessel having priority, under applicable law in the vessel's location, over the first preferred ship mortgage on such vessel, and arising on account of obligations incurred by the Debtors before the Petition Date. |
| | "Related Documents" shall mean:  (i) the fleet mortgage(s) recorded by the Agent to perfect the Retained Proceeds Lien on the Unencumbered Vessels, (ii) an agreement evidencing the obligations of the Debtors to satisfy and pay the Retained Proceeds Claims in accordance with the Agreed Orders and (iii) [TBD]. |
| | "Retained Proceeds" has the meaning set forth in III(H) below. |
| | "Retained Proceeds Claim" has the meaning set forth in IV(B) below. |
| | "Retained Proceeds Collateral" means all Unencumbered Vessels as of the Petition Date. |
| | "Retained Proceeds Lien" means a lien on the Retained Proceeds Collateral. |
| | "Sale Order" means the order described in III(A) below. |
| | "Second Lien Lender" means, as to a Mortgaged Vessel, a Lender, other than the First Lien Lender, holding a prepetition duly recorded preferred ship mortgage on or prepetition perfected security interest (including, as to any Mortgaged Vessel consisting of specified equipment, a perfected UCC security interest in such equipment)  in such Mortgaged Vessel. |
| | "Unencumbered Vessels" means all vessels of any Debtor that are not subject to a mortgage as of the Petition Date.  For the avoidance of doubt, Unencumbered Vessels will be encumbered after the Start Date by the Retained Proceeds Lien. |
| **B.     Term** | Authority to close on the Pending Sales, sell Mortgaged Vessels/ Unencumbered Vessels, and to use collateral as specified below will commence upon entry of the Agreed Orders (provided that the Agreed Orders contain waivers of the stay set forth in F.R.B.P. 6004(h) and are not subject to a stay |

5

| | |
|---|---|
| | pending appeal) (the "Start Date"), and will terminate 1/15/18 or on such earlier date (if any) as the Debtors are in default under the Sale Order or the New Cash Collateral Order (the "Termination Date").  It is agreed that the values established as an "OLV" or "MDP" with respect to any Mortgaged Vessel or Unencumbered Vessel, or any other value established for or allocated to any Mortgaged Vessel or Unencumbered Vessel in connection with the Agreed Orders or any transaction thereunder or in connection therewith, are solely for purposes of the settlement reflected in, and for the period governed by, the Agreed Orders, and may not be cited, nor shall have any precedential or binding effect, for any other purpose or in any other context (including any other purpose or context in the Bankruptcy Court).  After the Termination Date, all parties reserve all rights under applicable bankruptcy and non-bankruptcy law, under Chapter 11 or otherwise, including, without limitation, in respect of adequate protection, stay relief, the use of Cash Collateral, and the sale of property under Section 363(b) or 363(c) of the Bankruptcy Code, *provided, however,* that the following shall survive the Termination Date: (a) all liens granted to secure the diminution in the Lenders' Collateral between the Petition Date and the Termination Date; (b) the Retained Proceeds Lien; and (c) the acknowledgements, releases and waivers set forth in IV(D), below. |
| **C.      Notices** | Notices and other documents transmitted pursuant to this term sheet shall:  (i) if directed to the Debtors and/or the Committee, be sent electronically to such Party's counsel including up to three designated recipients, (ii) if directed to any Lender, be sent electronically to such Lender (up to three designated recipients) and to such Lender's counsel (up to three designated recipients), and (iii) in the case of a Sale Notice (per III(D) below) electronically to the Agent (defined below), each First Lien Lender and each Second Lien Lender, and to the Agent's counsel and to counsel for the First Lien Lender and Second Lien Lender. |

6

| II. | **INFORMATION/AGREEMENTS** | |
|---|---|---|
| **A.** | **Minimum Disposition Price** | The minimum disposition price ("MDP") for each Mortgaged Vessel and each Unencumbered Vessel is set forth in the confidential schedule of MDPs accompanying this Term Sheet. MDPs shall be confidential, subject to impoundment/sealing orders prior to use in the Bankruptcy Court or any court, and shall be shared in confidence by and among the Debtors, Lenders, the Agent, and Committee. For the avoidance of doubt, MDP is an agreed threshold gross sale price. |
| **B.** | **Cash Collateral Budget** | Debtors will submit to Lenders (and the Committee) for their approval prior to the entry of the Agreed Orders a new Cash Collateral budget showing cash receipts and disbursements through January 31, 2018 (the "New Budget"), which shall include:  (i) projected charter and other operating revenue, (ii) disbursements, if any, to professionals for the Debtors and Committee, and (iii) a schedule of expenses (including in respect of any professional fees)[2] projected to accrue prior to the Termination Date but be payable thereafter (the "Scheduled Accruals"); provided that the projected amount shall not constitute a cap on the amount of any allowed administrative expense. |
| **C.** | **Budget Tail** | Debtors will submit to Lenders (and the Committee) for their information a projection of operating receipts (for the avoidance of doubt, such receipts do not include vessel sale proceeds) and disbursements (including to professionals) for the periods 2/1/18 through 3/31/18 and 4/1/18 through 6/30/18. |
| **D.** | **Vessel Sales** | Debtors will submit to Lenders (and the Committee) for their information prior to the entry of the Agreed Orders the status of their plans for sales of vessels and major equipment through January 31, 2018, including:  (i) offers they have |

---

[2]   For the avoidance of doubt, and without limitation, nothing in this Term Sheet, including by virtue of its presentation to the Debtors constitutes any agreement by any Lender to the payment of professional fees from its cash collateral unless and until this Term Sheet is approved by such Lenders and takes effect, including entry of the New Cash Collateral Order.

732567

|  | received and believe are still available (including accepted offers), (ii) any current negotiations for vessel sales, provided that the Debtors shall not be required to disclose the identity of any potential buyer, (iii) vessels or categories/classes of vessels targeted or prioritized for disposition, and (iv) methods for reaching the market (including advertising, use of brokers, etc.) (collectively the "Sales Plan"). The Lenders and the Committee keep the Sales Plan confidential. The Sales Plan shall identify all Mortgaged Vessels, if any, that are not being actively marketed for sale. Subject to the general requirements of the sale process described herein, if Lien Lenders identify possible buyers for their Mortgaged Vessels, they may refer those buyers in writing to the Debtors, and the Debtors shall negotiate in good faith with such referred buyers regarding the sale of such Mortgaged Vessels. The Lien Lenders shall not be permitted to market Mortgaged Vessels for sale. To the extent consistent with market conditions and the Sales Plan, and subject to the acknowledgement that buyer preferences are controlling, the Debtors shall try to sell Mortgaged Vessels as proportionally as possible to the Debtors' outstanding obligations to each Lender (*i.e.*, such that the obligations to each Lender are reduced by approximately the same percentage). |
|---|---|

| **III.** | **VESSEL SALES** |  |
|---|---|---|
| **A.** | **Sale Order** | Through the Termination Date, Debtors may sell, without further notice or hearing (except as otherwise expressly provided for herein or in the Sales Order), Mortgaged Vessels and Unencumbered Vessels in accordance with an order of the Bankruptcy Court, in form and substance acceptable to the Debtors, all Lenders and the Committee, permitting such sales in accordance with III(B) through (H) below (the "Sale Order"). |
| **B.** | **Cap/Consideration** | The Sale Order may be utilized to sell: (i) Mortgaged Vessels for gross sale proceeds not to exceed $25,000,000 for all sales of Mortgaged Vessels, unless otherwise agreed to between the |

8

Debtors and the Lien Lender(s) asserting liens on a specific Mortgaged Vessel, and (ii) Unencumbered Vessels for gross sale proceeds not to exceed $10,000,000 for all sales of Unencumbered Vessels. The sale of any Mortgaged Vessel for less than MDP may be effectuated under the Sale Order with the prior written consent of the First Lien Lender on such Mortgaged Vessel.  However, notwithstanding anything to the contrary provided for herein, no sale of any Mortgaged Vessel or Unencumbered Vessel may be made under the Sale Order at any time if, after giving pro forma effect to such sale and to the creation of any Retained Proceeds Claims in connection therewith, the ratio of the aggregate OLVs for all Unencumbered Vessels still owned by the Debtors to the aggregate amount of all Retained Proceeds Claims (the "Retained Claims Ratio") would be less than [2.00 to 1.00]. The consideration paid in connection with the sale of any Mortgaged Vessel or Unencumbered Vessel pursuant to the Agreed Order (including, in the case of a Purchase Option Charter, as defined below, the price paid to purchase the vessel if the applicable option to purchase is exercised) shall consist solely of cash/immediately available funds. For the avoidance of doubt, any sale (including any sale pursuant to any Purchase Option Charter) consisting of either (x) the sale of two or more vessels constituting Mortgaged Vessels and/or Unencumbered Vessels, or (y) the sale of one or more items of equipment constituting Mortgaged Vessels together with any one or more vessel(s) constituting Mortgaged Vessel(s) or Unencumbered Vessel(s) must be made for the aggregate amount of the MDPs for all such items(s) of equipment and such vessel(s) (unless the applicable Lien Lenders, and, if applicable, the Agent and the Committee, have given their prior written consent to such sale).  In the case of any such sale described in the foregoing sentence (including any such sale pursuant to any Purchase Charter Option), the Sale Notice (as defined below) provided by the Debtors shall set forth an allocation of the aggregate gross purchase price payable upon the closing of such sale among all subject vessel(s), subject item(s) of equipment, and any material

9

| | |
|---|---|
| | charters or leases, which shall allocate such price among all such vessels and items of equipment in proportion to their respective MDPs, allocating value to any material charters and leases to the extent ascertainable (the "<u>Allocation</u>"). For the avoidance of doubt, the Allocation shall provide for each Lien Lender to be allocated a share of the aggregate gross purchase price and corresponding Retained Proceeds Claim not less than what each Lien Lender would be entitled to if each of its subject vessel(s) or subject item(s) of equipment were sold at MDP. |
| **C.    Purchase Option Charters** | The Debtors may enter into and sell vessels and certain equipment constituting Mortgaged Vessel(s) and/or Unencumbered Vessel(s) pursuant to charter agreements that provide the lessee with an option to purchase the leased vessel and/or equipment (each, a "<u>Purchase Option Charter</u>") provided that: (i) the purchase price payable in cash/immediately available funds upon exercise of such option and sale, over and above any credit for any lease payment(s) paid to the Debtors under the Purchase Option Charter prior to such exercise, is not less than the aggregate sum of the MDP(s) for the vessel and, if applicable, items of equipment subject to such Purchase Option Charter; and (ii) the purchase option must solely be exercisable on or before six (6) months from the commencement date of the Purchase Option Charter. |
| | In the event of any sale of any Mortgaged Vessel(s) and/or Unmortgaged Vessel(s) pursuant to an exercise of a purchase option in a Purchase Option Charter: (A) the amount of the Retained Proceeds (as defined below) shall be reduced by the aggregate amount of any and all lease payments received by the Debtors under the Purchase Option Charter prior to the sale closing; and (B) upon distribution to the Lien Lender of the Net Proceeds to which such Lien Lender is entitled under III(H) below, the Retained Proceeds Lien shall be substituted for any replacement lien granted or to be granted under any cash collateral order entered by the Court, to the Lien Lender in respect of its interest in the vessel and/or equipment sold and any lease payments under the Purchase Option Charter. |

10

| | | |
|---|---|---|
| | | By way of example, if the Net Proceeds available from a sale are $1,000,000, and the Debtors previously received $100,000 in lease payments, the Lien Lender would receive $850,000 ($1,000,000 x .85), and the Debtors would receive $50,000 ($1,000,000 x .15 less $100,000 previously received as lease payments). |
| **D.** | **Sale/Purchase Option Charter Notice** | Prior to any proposed closing on any sale (including through exercise of the option to purchase under a Purchase Option Charter) and upon entering into a Purchase Option Charter Option, Debtors shall give all Lenders, the Agent, and the Committee: (i) a notice of the sale or Purchase Option Charter (the "<u>Sale Notice</u>") in the form attached as Exhibit A, including (in Xcel format) a spreadsheet in the form included with <u>Exhibit A</u>, and (ii) solely to Lien Lenders/Agent, the lien-release document(s) that will be required in order to close the sale (the "<u>Release Documentation</u>"). |
| **E.** | **Objections to Sales** | Any Lien Lender may object to the proposed sale or Purchase Option Charter of the Lien Lender's collateral by giving written notice to the other Parties within five (5) business days of the Sale Notice (the "<u>Response Period</u>").  The sole basis for objection shall be non-compliance with the Sale Order[3] or erroneous computation of the Allocation, if applicable.  For avoidance of doubt, economic terms of the sale or an Allocation shall not be a permissible basis for objection if the (i) gross sale proceeds exceed the aggregate MDP(s) for all Mortgaged Vessel(s) and/or Unmortgaged Vessel(s) subject to such sale, (ii) Net Proceeds are correctly computed, including, without limitation, as to a Permitted Commission, (iii) items to be deducted from sale price to reach Net Proceeds consist solely of the items permitted to be so deducted under the definition of Net Proceeds, and (iv) Allocation, if applicable, has been correctly computed; provided that (A) with respect to an objection under items (ii), (iii) and/or (iv) (a "<u>Non-Blocking Objection</u>"), the Debtors may close the sale so long as Net Proceeds equal to the amount of the disputed charge or allocation amount are |

---

[3] The Sale Order will incorporate, and require compliance with, the terms of the Related Documents.

11

| | |
|---|---|
| | reserved pending agreement of the Parties (which, in the case of an objection to an Allocation, shall consist solely of the Lien Lenders affected thereby) or order of the Bankruptcy Court, and (B) with respect to an objection under item (i) that is not withdrawn (a "<u>Blocking Objection</u>"), the Debtors may close the sale only if they obtain an order of the Bankruptcy Court, with prior notice to the applicable Lien Lenders, which the Debtors may seek on an emergency basis, *provided, however,* that the Debtors shall be required to demonstrate to the Court that gross sale proceeds do in fact exceed the aggregate MDPs for all Mortgaged Vessels and/or Unmortgaged Vessels subject to such sale. For the avoidance of doubt, any Lender or the Agent may object to the extent, validity and amount of any proposed Priority Maritime Lien.   The Committee may make a Non-Blocking Objection during the Response Period for any proposed sale or Purchase Option Charter. |
| **F.     Lien Release** | Each Lien Lender that does not send a Blocking Objection during the Response Period shall, within the Response Period, execute the Release Documentation and return it to the Debtors' counsel (if copy sent by email during the Response Period, originals may be sent by overnight delivery for receipt on the next business day).  If the Debtors do not receive from each such Lien Lender within the Response Period an objection and/or Release Documentation, the Debtors shall file, and serve upon all Parties, a Notice of Failure to Respond requiring the non-responding Lien Lender to send a Blocking Objection or the Release Documentation no later than two (2) business days after the date such notice of non-response has been served on such non-responding Lien Lender.  If a Lien Lender does not timely object or execute Release Documentation properly proffered by the Debtors, they may file with the Bankruptcy Court and serve on all Parties an affidavit of compliance with the Sale Order and request the entry of an order approving the sale in question, free and clear of liens, claims and interests, without further notice or hearing.  No sale shall close until the earlier of (i) entry of such order, or (ii) the Debtors' receipt of |

12

| | |
|---|---|
| | Release Documentation or a Non-Blocking Objection from each Lien Lender. |
| **G.    Closing** | Except for sales pursuant to the exercise of purchase options under Purchase Option Charters, a sale closing must occur within twenty (20) business days after the Sale Notice.  For sales pursuant to the exercise of purchase options under Purchase Option Charters, the sale closing must occur within twenty (20) business days after the exercise of the purchase option. The Debtors' counsel shall hold executed Release Documentation in escrow, to be delivered at the closing simultaneously with (i) the Debtors' receipt of the full sale price in cash/immediately available funds, (ii) remitting to the applicable Lien Lender(s) the portion of the Net Proceeds required under III(H) below, and (iii) satisfying all Priority Maritime Liens, Permitted Commissions, and (solely from Retained Proceeds or, to the extent contemplated by the New Budget, other funds of the Debtors) any other maritime liens that arose post-petition and have priority, under applicable law in the vessel's location, over the first preferred ship mortgage on such vessel. |
| **H.    Vessel Sale Proceeds** | At the closing of a sale of a vessel and/or equipment, the Debtors shall remit by wire transfer to the First Lien Lender or Agent, as applicable, the lesser of:  (i) the outstanding amount of the Lender Claim(s) secured by the vessel that is the subject of the sale, or (ii) Net Proceeds equal to eighty-five percent (85%) of OLV, plus fifty percent (50%) of any Net Proceeds in excess of OLV.  The Agreed Orders shall provide that, automatically and immediately upon the receipt of such Net Proceeds by the applicable Lien Lender(s) (without the necessity of any further action by any party, including the filing of any ship mortgage or other perfection action), the Retained Proceeds Lien as to the Retained Proceeds Claim(s) of the applicable Lien Lender(s) shall attach to the Retained Proceeds Collateral and be perfected as a first priority lien (subject only to any Priority Maritime Liens on Retained Proceeds Collateral).   The balance of the Net Proceeds remaining after the foregoing payments (the "Retained Proceeds") |

13

|  | shall be retained by the Debtors free and clear of liens, claims, encumbrances and interests of the Lien Lenders. The Debtors shall keep the Retained Proceeds in a separate debtor-in-possession bank account, but may use such funds pursuant to the New Budget or, after the Termination Date, any subsequent budget approved by the Lenders or by the Bankruptcy Court.  For the avoidance of doubt: (a) notwithstanding payment of that portion of a Lender Claim attributable to amounts claimed by the Lender under Bankruptcy Code section 506(b), the rights of the bankruptcy estate in respect of such amounts shall be reserved, and such amounts shall be recoverable by the estate to the extent provided in a final order of the Bankruptcy Court; and (b) any amounts associated with the portion of a Lien Lender's claim that is subject to a Retained Challenge Right and/or Committee Notice shall be reserved pending further order of the Bankruptcy Court, and if decided favorably to the Lien Lender, such amounts (including any amounts that would otherwise constitute Retained Proceeds) shall be paid to such Lien Lender. |
| **I.    Alternative Sale Process** | Notwithstanding the Sale Order, during the term of the Sale Order the Debtors may sell: (i) Mortgaged Vessels and equipment by an order of the Bankruptcy Court, pursuant to Bankruptcy Code § 363(b) and (f), with the Lenders having all protections of the Bankruptcy Code including § 363(k) and provided that such order is not subject to a stay pending appeal; and (ii) Unencumbered Vessels by an order of the Bankruptcy Court, pursuant to Bankruptcy Code § 363(b) and/or (c), and Bankruptcy Code § 363(f), provided that all then-outstanding Retained Proceeds Claims, if any, shall be paid from the sale proceeds at the closing. Nothing shall limit the Debtors' right to seek to sell any vessels and/or equipment, including pursuant to Bankruptcy Code sections 363(b) and/or (c), after the Termination Date, subject to the fully preserved rights of the Lenders, the Agent, and the Committee to object to any such sales and related motion practice. |

14

| IV. | USE OF COLLATERAL/ADEQUATE PROTECTION | |
|---|---|---|
| **A.** | **New Cash Collateral Order** | An order shall be entered authorizing further interim use of Cash Collateral through the Termination Date for disbursements pursuant to the New Budget (the "New Cash Collateral Order"). The New Cash Collateral Order shall include provision for biweekly conference calls of the Debtors with the Committee and Lenders; one item on the agenda at each such call will be an oral report of the Debtors on their progress in executing the Sales Plan including offers received (but not, except as to accepted offers, the identity of putative buyers). |
| **B.** | **Retained Proceeds** | The Agent, for the ratable benefit of each Lien Lender, will have an allowed secured claim in an amount equal to the aggregate amount of Retained Proceeds allocable at any time to sales of Mortgaged Vessels of such Lien Lender (each a "Retained Proceeds Claim" and collectively, the "Retained Proceeds Claims"), which shall be secured by the Retained Proceeds Lien, *provided, however,* that no Lender's Retained Proceeds Claim shall at any time exceed the outstanding amount of such Lender's Lender Claim at such time. The Sale Order shall provide that the Retained Proceeds Lien shall automatically and immediately attach to the Retained Proceeds Collateral and be perfected as a first priority lien (subject only to any Priority Maritime Liens) as to each Retained Proceeds Claim upon the receipt by each applicable Lien Lender of its share of the Net Proceeds from each applicable sale under the Sale Order (without the necessity of any further action by any party, including the filing of any ship mortgage or other perfection action), but, notwithstanding and without limiting or contradicting such provisions of the Sale Order, the Retained Proceeds Lien will be evidenced by a preferred fleet mortgage on the Unencumbered Vessels, which shall be a first priority lien, subject only to Priority Maritime Liens. Each Lender's interest in the Retained Proceeds Lien shall be in the amount of such Lender's Retained Proceeds Claim, and shall be *pari passu* with every other Lender's interest in the |

15

| | |
|---|---|
| | Retained Proceeds Lien.[4] Any Chapter 11 plan confirmed in the Debtors' cases shall provide for the full payment in cash to the holders of Retained Proceeds Claims, on the effective date, of an amount equal to the Retained Proceeds Claims in accordance with the terms of the plan.  To the best of their knowledge, the Debtors represent that Exhibit B hereto is a correct and complete list of Priority Maritime Liens, Purchase Option Charters and other charters of more than six months' duration (including extensions at the option of charterer); the Debtors will make the same representation as of the Start Date.  Such exhibit shall not be deemed an admission of the Debtors as to the validity or priority of any Priority Maritime Lien |
| **C.**   **Additional Adequate Protection** | In addition to the Primary Replacement Lien and the Supplementary Replacement Lien granted to the Lien Lenders pursuant to the existing cash collateral order entered by the Bankruptcy Court on August 14, 2017, each Lender shall receive the ratable benefit of the Additional Adequate Protection Lien, to be held by the Agent, for the ratable benefit of Lenders, as (i) additional adequate protection for the Debtors' use of Cash Collateral pursuant to the New Cash Collateral Order, and (ii) adequate protection for any decline in value of non-Cash Collateral during the period from the petition date through the Termination Date.  Cash proceeds (if any) of the Additional Adequate Protection Lien shall be turned over to the Debtors for use in accordance with any cash collateral orders entered by the Bankruptcy Court, subject on a *pari passu* basis to whatever adequate protection claims against such proceeds have been or later are established in favor of any Lender by order of the Bankruptcy Court. |
| **D.**   **Bankruptcy Estate's Acknowledgments, Releases, Waivers, etc.** | Effective on the Start Date and subject to the Retained Challenge Rights (as defined below), the New Cash Collateral Order shall provide each Lender with the following additional adequate protection:  (i) acknowledgement of the amount of principal and interest as of the Petition Date, and |

---

[4] The Sale Order shall include approval of intercreditor arrangements as described in IV(F) below.

16

the validity, of such Lender's claim against the Debtors, and allowance of each such claim, (ii) acknowledgement of the extent, validity and perfection of each Lender's liens against property of the Debtors; (iii) a release by each Debtor of all claims against such Lender as of the Petition Date and under chapter 5 of the Bankruptcy Code; (iv) a waiver of rights under Bankruptcy Code section 506(c) as to any and all expenses or other liabilities of the estate incurred from the Petition Date through the Termination Date except that there shall be no waiver as to the Scheduled Accruals (or any liability or expense first arising after the Termination Date); and (v) a waiver of rights under Bankruptcy Code section 552(b) and to marshal prepetition collateral (collectively, the "Released Matters"). The foregoing acknowledgments, allowances, releases and waivers shall be subject to a list of specific, written exceptions agreed to by and among the Debtors, the Committee and the applicable Lenders (collectively the "Retained Challenge Rights"), including the right of the Committee up to and including the thirtieth (30th) day following the Start Date (or the next business day if the such date is a Saturday, Sunday or a Federal legal holiday) (the "Committee Deadline") to provide specific written notification (a "Committee Notice") to the affected Lien Lender(s), of any challenge to the extent, priority and/or validity of any lien asserted by any Lien Lender, *provided, however,* that notwithstanding anything to the contrary contained herein, the Debtors may not exercise any rights under the Sale Order (including sending any Sale Notice) with respect to any Mortgaged Vessel that is subject to a Lenders' lien (x) that is subject to an outstanding Retained Challenge Right by the Debtors or a Committee Notice, or (y) before the Committee Deadline, unless the Committee has agreed that the Committee Notice shall not include an objection to such Lender's lien on such vessel. In the event a Retained Challenge Right (including any such right retained by the Committee through a Committee Notice) is not exercised through the filing of appropriate pleadings not later than November 30, 2017 (as it may be extended in writing by an

732567

| | |
|---|---|
| | affected Lender), or is timely exercised and then withdrawn, any challenge to the Released Matter in question shall be deemed to be forever waived and released. "Appropriate pleadings" for purposes of the preceding sentence shall include (notwithstanding any national or local rule requiring an adversary proceeding) a motion as to which every affected Lender shall have not less than thirty (30) days to respond. Except for the Released Matters, all of the Debtors' other rights, claims and defenses are fully preserved. For the avoidance of doubt, the Committee must seek standing to assert any purported challenge against any Lender. The Debtors (prior to September 13, 2017 and subject to a cap of $100,000) and the Committee (prior to the Committee Deadline, and subject to a cap of $50,000) may use Cash Collateral to fund investigation of possible claims against Lenders and possible objections to Lender Claims, and preparation of notices of Retained Challenge Rights as provided above, but may not otherwise use Cash Collateral in connection with claims against Lenders and possible objections to Lender Claims, including preparation and prosecution of litigation. In addition to the foregoing, the Individual Debtor will acknowledge, effective as of the Start Date, the validity of all personal guaranties of Lender Claims |
| **E.**  **Lenders' Acknowledgments, Releases, Waivers, etc.** | In consideration for the Debtors' concessions in the Agreed Orders, so long as the Debtors are in compliance with the Agreed Orders, the Lenders shall not, prior to the Termination Date, whether by pleading filed with the Bankruptcy Court or otherwise (i) request additional adequate protection, (ii) seek relief from the automatic stay, (iii) challenge the Debtors' use of Cash Collateral (other than violations of the Agreed Orders) , or (iv) seek any examination under F.R.B.P. 2004, the appointment of a Trustee or Examiner, or to convert the Debtors' cases to cases under Chapter 7 of the Bankruptcy Code, unless by reason of a cause arising after the Start Date. The Lenders consent to the entry of an order extending to January 31, 2018: (i) the exclusive period set forth in Section 1121(b), |

18

| | |
|---|---|
| | (ii) the period set forth in Section 1121(c)(2), and (iii) the period set forth in Section 1121(c)(3). |
| **F.     Documentation** | The liens on the Retained Proceeds Collateral will be (i) held by Rockland Trust Company as collateral agent for all Lenders with an interest therein (the "<u>Agent</u>"), and (ii) evidenced by Related Documents acceptable to the Debtors and the Lenders, including preferred fleet mortgages on Unencumbered Vessels in such form as will reflect requirements of applicable law needed to assure enforceability.    The Agent's reasonable fees incurred after the date of the execution of this Term Sheet (solely in such capacity), pursuant to the fee schedule attached hereto as Exhibit C, and the fees/expenses of the Agent's counsel incurred after the date of the execution of this Term Sheet (solely to represent the Agent in such capacity, and subject to a cap of \$_____[5]), including any such fees and counsel's fees/expenses incurred by Agent (in such capacity) in connection with the negotiation of the MDPs for the Unencumbered Vessels, and the negotiation, execution, delivery and recording of (and if applicable, enforcement of) the Related Documents, shall be secured by the Retained Proceeds Lien and paid by the Debtors on a monthly basis upon twenty (20) days' notice to the Debtors, the Committee and the U.S. Trustee, during which period any of them may object to any specific amount(s), in which event the disputed amount(s) shall not be paid pending an order of the Bankruptcy Court determining the dispute; provided that no fees and/or professional fees or expenses associated with the negotiation of this Term Sheet or the Agreed Orders (excluding negotiation of the MDPs for the Unencumbered Vessels and the Related Documents) shall constitute Agent's fees and/or Agent's counsel's fees/expenses.  The Agent and the Lenders shall sign an agreement reasonably acceptable to the Agent and the Lenders setting forth the governance of the agency and related matters, including, without     limitation,     majority/super-majority required lender direction provisions relating to |

---

[5] Such cap shall apply only to the payment provisions of this sentence and not to the inclusion of fees and expenses in the secured claim of Rockland Trust Company.

732567

|  |  |
|---|---|
|  | rights in respect of Related Documents and Adequate Protection Collateral. Further, the Agent and the Lenders shall sign an intercreditor and subordination agreement, which can address the governance of agency as well, for the benefit of First Lien Lenders with the Agent in respect of Adequate Protection Collateral.  Such agreement shall include a provision that existing subordination agreements among Lenders shall remain in effect. Except as set forth in this Term Sheet and in the Agreed Orders, nothing in any intercreditor agreement shall preclude any Lender from exercising, or alter or modify or impair, any and all rights it may have as a party in interest in the Debtors' Chapter 11 cases. |
| **G.      Parties Bound** | The New Cash Collateral Order, including the provisions referred to in IV(D) above, shall bind the Debtors, the Individual Debtor, any future trustee or other estate representative, the Committee, and all creditors and other parties in interest. |
| **V.      BANKRUPTCY COURT APPROVAL** | The Parties' obligations under this Term Sheet are subject to the approval of the Bankruptcy Court. |

732567

| | CASHMAN EQUIPMENT CORP. |
|---|---|
| Dated: _____ | By_____<br>Name:_____<br>Title:_____ |
| Dated: _____ | CASHMAN SCRAP & SALVAGE, LLC<br><br>By_____<br>Name:_____<br>Title:_____ |
| Dated: _____ | SERVICIO MARINA SUPERIOR, LLC<br><br>By_____<br>Name:_____<br>Title:_____ |
| Dated: _____ | CASHMAN CANADA, INC.<br><br>By_____<br>Name:_____<br>Title:_____ |
| Dated: _____ | MYSTIC ADVENTURE SAILS, LLC<br><br>By_____<br>Name:_____<br>Title:_____ |
| Dated: _____ | ROCKLAND TRUST COMPANY<br><br>By_____<br>Name:_____<br>Title:_____ |
| Dated: _____ | _____<br><br>By_____<br>Name:_____<br>Title:_____ |

21

732567