## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### (Eastern Division)

|  |  |
|---|---|
| In re<br><br>CASHMAN EQUIPMENT CORP.,[1]<br><br>Debtor | Chapter 11<br><br>Case No. 17-12205-MSH<br><br>Jointly-Administered |

### EIGHTH INTERIM ORDER GRANTING (1) USE OF CASH COLLATERAL, (2) REPLACEMENT LIENS, (3) ADDITIONAL ADEQUATE PROTECTION, AND (4) OTHER RELIEF

This matter having come before the Court on the *Motion for an Order (1) Authorizing the Continued Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* (the "Cash Collateral Motion") [doc. no. 370] filed on September 1, 2017, by Cashman Equipment Corp. ("CEC"), Cashman Scrap & Salvage, LLC ("CSS"), Servicio Marina Superior, LLC ("SMS"), Cashman Canada, Inc. ("CCI"), and Mystic Adventure Sails, LLC ("Mystic", and together with CEC, CSS, SMS and CCI the "Debtors"), the debtors and debtors-in-possession in the above captioned cases; and the Court having considered the Cash Collateral Motion, the *Affidavit of James Cashman in Support of First Day Motions* [doc. no. 12], the objections to the use of cash collateral of the Debtors as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), and the arguments of counsel made at the hearing held on October 11, 2017 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and MBLR

---

[1] The Debtors in these jointly administered Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Cashman Equipment Corp. (7969), Cashman Scrap & Salvage, LLC (6088), Servicio Marina Superior, LLC (6919), Mystic Adventure Sails, LLC (2137) and Cashman Canada, Inc. (1296).

4001-2(b); and the Interim Hearing having been held and concluded; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estate pending a final hearing on the use of cash collateral, and is otherwise fair and reasonable, in the best interests of the Debtors, their estates, and their creditors, and equity holders, and essential for the maximization of the assets of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS AND RULINGS:**

A. On June 9, 2017 (the "Petition Date"), the Debtors filed voluntary petitions with this Court for relief under Chapter 11 of the Bankruptcy Code. The Chapter 11 cases filed by the Debtors are referred to herein as the "Cases."

B. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cases.

C. This Court has jurisdiction over these proceedings, and the persons and properties affected hereby, pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and the standing order of reference codified in LR D. Mass. 201. The Cash Collateral Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

D. On June 28, 2017, the United States Trustee for the District of Massachusetts (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") in the Cases pursuant to Section 1102 of the Bankruptcy Code.

E. The Debtors requested entry of this Order pursuant to Bankruptcy Rule 4001(b)(2). The Debtors have an immediate need to use the Cash Collateral to, among other things, preserve and maximize the value of the Debtors' assets, absent which immediate and irreparable harm will result

to the Debtors, their estates, and their creditors.  The preservation and maintenance of the Debtors'

assets and business is necessary to maximize values available for distribution to creditors.  Absent

the Debtors' ability to use Cash Collateral, the Debtors would not have sufficient available sources

of working capital or financing and would be unable to pay their operating expenses (including fuel,

port fees, insurance cost, crew and repairs) or maintain their assets (including, their fleet of vessels),

to the severe detriment of the Debtors' estates and creditors.  Accordingly, the relief requested in the

Cash Collateral Motion and the terms of this Order are (i) critical to the Debtors' ability to maximize

the value of their Chapter 11 estates, (ii) in the best interests of the Debtors and their estates, and (iii)

necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and

their assets.  This Order and all of its terms meet the standard for interim relief set forth in MLBR

4001-2(e)(2).

       F.     The following entities (collectively the "Lenders"), subject only to the reservations

of rights set forth in paragraph 16 of this Order, have valid claims against the Debtors secured by

valid and perfected liens on certain of the Debtors' properties (including an interest in Cash

Collateral relating to those properties) as specified in paragraph 13 of this Order: (i) Rockland Trust

Company ("Rockland"); (ii) Santander Bank, N.A. ("Santander"); (iii) Wells Fargo Equipment

Finance, Inc. ("Wells"); (iv) Citizens Asset Finance, Inc. ("Citizens"); (v) U.S. Bank, National

Association, acting through its division, U.S. Bank Equipment Finance ("U.S. Bank"); (vi) Key

Equipment Finance, a division of KeyBank National Association ("Key"); (vii) Fifth Third Bank

("Fifth Third"); (viii) Radius Bank ("Radius"); (ix) Pacific Western Bank ("PacWest"); (x) Equitable

Bank ("Equitable"); and (xi) Banc of America Leasing and Capital, LLC ("B of A").  (Each such

claim, including any portion subject to a Retained Challenge Right as defined in paragraph 16 below

and including any expenses (including counsel fees) accrued before the Petition Date and any

interest, fees and other charges under section 506(b) of the Bankruptcy Code not yet determined by order of this Court, is referred to as the "Lender Claim" of such Lender.)  In addition, the U.S. Secretary of Transportation acting through the U.S. Maritime Administration ("MARAD"), and Starr Indemnity & Liability Company and Great American Insurance Company (the "Insurers") assert claims against and liens on certain properties of the Debtors, including, as to MARAD only, an interest in Cash Collateral relating to those properties.

G.     Attached to the Cash Collateral Motion is a budget (the "Budget") for the use of Cash Collateral.  The Budget has been approved by the Lenders, and is reasonable.

H.     On June 14, 2017, the Court entered its *Interim Order Granting Motion for an Order (1) Authorizing the Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* (the "First Interim Order") [doc. no. 56].

I.     On July 12, 2017, the Court entered its *Interim Order Granting Motion for an Order (1) Authorizing the Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* (the "Second Interim Order") [doc. no. 217].

J.     On August 14, 2017, the Court entered its *Interim Order Granting Motion for an Order (1) Authorizing the Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* (the "Third Interim Order") [doc. no. 326].

K.     On August 30, 2017, the Court entered its *Fourth Interim Order Granting Motion for an Order (1) Authorizing the Use of Cash Collateral, (2) Granting Replacement Liens, (3)*

*Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* (the "Fourth Interim Order") [doc. no. 326].

L.     On September 13, 2017, the Court entered its *Fifth Interim Order Granting Motion for an Order (1) Authorizing the Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* (the "Fifth Interim Order") [doc. no. 407].

M.     On October 6, 2017, the Court entered its *Sixth Interim Order Granting Motion for an Order (1) Authorizing the Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* (the "Sixth Interim Order") [doc. no. 407].

N.     On October 11, 2017, the Court entered its *Seventh Interim Order Granting Motion for an Order (1) Authorizing the Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* (the "Seventh Interim Order") [doc. no. 506].  (The First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, the Sixth Interim Order and the Seventh Interim Order are referred to collectively as the "Previous Interim Orders.").  Each Lender has filed an objection in connection with proposed Cash Collateral usage under the Previous Interim Orders and in respect of the Cash Collateral Motion, challenging, among other things, the adequacy of the Debtors' proposed adequate protection arrangements [doc. nos. 36, 37, 42, 161, 166, 167, 168, 169, 170, 174, 175, 179, 294, 295, 391, 392, 393, 394, 396, 455].

O.     On June 30, 2017, the Debtors filed a *Motion for an Order Authorizing the Debtors (A) to Sell Vessels in the Ordinary Course of Business, (B) to Distribute Sale Proceeds, and (C) to Grant Substitute Liens* [doc. no. 128] (the "Sale Motion").  Each Lender has objected to the Sale

Motion on various grounds, including the propriety of applying Bankruptcy Code section 363(c) to the proposed notice-based sale process in the Sale Motion and the retention of sale proceeds by the Debtors in exchange for additional liens on certain unmortgaged vessels of the Debtors [doc. nos. 162, 171, 172, 173, 176, 180, 182, 185, 186, 189, 315].

P.      The Debtors, the Lenders and the Creditors' Committee have entered into a settlement reflected in a term sheet filed with this Court on September 11, 2017, pursuant to which, *inter alia*, this Order is being entered with the assent and agreement of the Debtors, the Lenders and the Creditors' Committee.  *See* Notice of Proposed Term Sheet [doc. no. 389], Ex. A (the "Term Sheet").  This Order is the New Cash Collateral Order defined in and contemplated by the Term Sheet.

Q.      Contemporaneously with entry of this Order, this Court is entering its *Order Authorizing Sales of Certain Assets Free and Clear of All Liens, Claims and Interests*, which is the Sale Order as defined in and contemplated by the Term Sheet (the "Sale Order").  The Sale Order authorizes the Debtors, subject to the conditions specified, to (i) sell Mortgaged Vessels and/or Unencumbered Vessels (each as defined below) without further notice or a hearing, free and clear of liens, claims and interests, (ii) pay the Closing Costs (as defined in the Sale Order) associated with such sales, and (iii) distribute the Net Proceeds (as defined in the Sale Order) of such sales in accordance with the terms of the Sale Order.  Attached as **Exhibit A** is a schedule of: (1) the vessels and certain other equipment that are subject to a mortgage and/or lien in favor of any Lender or MARAD as of the Petition Date (collectively the "Mortgaged Vessels," and excluding vessels and equipment subject to a lien in favor of MARAD or PacWest, the "Adequate Protection Mortgaged Vessels"), and (2) all vessels of any Debtor that are not subject to a mortgage or other lien as of the Petition Date (collectively the "Unencumbered Vessels").

R.      Rockland has agreed to serve as Collateral Agent for the Lenders (the "Collateral Agent") under the form of Intercreditor Agreement attached to this Order as **Exhibit B** (the "Intercreditor Agreement"), to hold on behalf of the Lenders the liens on the Unencumbered Vessels and the Adequate Protection Mortgaged Vessels as adequate protection pursuant to this Order and the Sale Order (together, the "Agreed Orders").

S.      Contemporaneously with entry of this Order, as provided in the Term Sheet, this Court is entering an order extending to January 31, 2018 (i) the exclusive period set forth in Section 1121(b), (ii) the period set forth in Section 1121(c)(2), and (iii) the period set forth in Section 1121(c)(3) (the "Exclusivity Order").

T.      In connection with the entry of this Order, the Debtors have requested that this Court enter an order (the "Proposed Insurers Order") granting the *Motion by Debtors to Approve Stipulation of Settlement by and Between Debtors and Insurers* filed September 27, 2017 [doc. no. 463]. Pursuant to the Proposed Insurers Order, the Insurers will have liens, in the amount, as to each vessel, equal to the premium for policy year 2016 attributable to such vessel as set forth in the settlement stipulation with the Insurers (the lien against each such vessel, the "Insurer Lien"), junior in priority of lien and interest to liens or interests in or on the Mortgaged Vessels held by the Lenders and MARAD. Except pursuant to such Order and solely as to the Insurer Liens, this Court has not made, nor makes pursuant to this Order, any determination concerning whether any maritime lien that may be asserted against any particular vessel is valid and has priority over any particular mortgage or other lien against such vessel (in such case, a "Priority Maritime Lien") or is invalid and/or junior to such liens. This Order also does not address the effect on the priority of liens against assets of the Debtors of any subordination or other agreement among Lenders prior to the Petition Date (each, an "Existing Intercreditor Agreement").

U.      The Debtors have caused notice of the Cash Collateral Motion, the Interim Hearing and the Term Sheet to be served by first class mail, email, or through the Court's CM/ECF System on the following parties (the "Notice Parties"): (i) the U.S. Trustee; (ii) the Creditors' Committee; (iii) the Lenders and MARAD; (iv) the Insurers; (v) the Internal Revenue Service; (vi) any other taxing authority with a claim against any Debtor; (vii) each Debtor's twenty largest unsecured creditors, (viii) the Office of the Attorney General for the Commonwealth of Massachusetts, and (ix) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Under the circumstances, the notice given by the Debtors of the Motion, the Interim Hearing and the proposed terms of this Order complies with Bankruptcy Rules 2002, 4001(b), (c), and (d) and MLBR 4001-2(b).

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Settlement Term Sheet.  This Order is intended to incorporate the provisions of the Term Sheet, but in the event of any inconsistency between the Term Sheet and this Order, the terms of this Order (absent a scrivener's error) shall prevail.

2.      Granting of Motion.  The Cash Collateral Motion is GRANTED on an interim basis as set forth in this Order.  Subject to paragraph 26 below, all objections to the Cash Collateral Motion in respect of final or further interim use of cash collateral are preserved in full for all creditors and parties in interest.

3.      Use of Cash Collateral.  The Debtors are authorized to use Cash Collateral in accordance with the Budget (as it may be modified from time to time by the Debtors with the written approval of the Collateral Agent, all Lenders, and the Creditors' Committee) through and including the Termination Date, as defined in paragraph 21 below (the "Budget Period"), subject to the following conditions:

a. <u>Actual-to-Budget Report</u>.  Commencing on October 19, 2017, and continuing every two weeks thereafter, the Debtors shall deliver to each Lender, the Creditors' Committee and their respective counsel, not later than noon, a variance report for the two-week period ending the previous Sunday comparing the actual receipts and disbursements of the Debtors with the receipts and disbursements in the Budget (i) for such two-week period, and (ii) for the entire Budget Period through the end of such two-week period (the "<u>Measurement Period</u>").

b. <u>Restriction on Disbursements</u>.  The actual disbursements of the Debtors shall not exceed the aggregate of the total disbursements set forth in the Budget for the Measurement Period by more than fifteen percent (15%).

c. <u>Restriction on Payments to Professionals</u>.  Compensation and reimbursement of expenses for professionals of the Debtors or Creditors' Committee are authorized to be paid from Cash Collateral to the extent provided for in the Budget, and approved by this Court or payable pursuant to compensation procedures approved by this Court; *provided, however,* that no compensation or reimbursement of expenses for professionals of the Debtors or Creditors' Committee is authorized to be paid from Cash Collateral relating, directly or indirectly, to any claim against or objection to the claims and liens asserted by any Lender, except that the Debtors (prior to September 13, 2017 and subject to a cap of $100,000) and the Committee (prior to the Committee Deadline (as defined below), and subject to a cap of $50,000) may use Cash Collateral to fund investigation of possible claims against Lenders and possible objections to Lender Claims, and preparation of notices of Retained Challenge Rights (as defined below).  Nothing in this Order waives or impairs any right of any Lender, the Collateral Agent or any other party in interest to object to the reasonableness of professional fees and expenses.

4.    <u>Vessel Reports</u>.  Commencing on October 19, 2017, and continuing every two (2) weeks thereafter, the Debtors shall provide the following reporting to each Lender and counsel for the Creditors' Committee: (a) a report, for the period from October 1, 2017 to October 15, 2017 (and thereafter for each succeeding two (2) week period), on the collection of accounts receivable and charter hire based on which Lender holds a lien on the collected accounts receivable, (b) a report identifying, as to each vessel, accounts receivable generated during such two-week period, first mortgage holder (Lender or Collateral Agent), operating status of such vessel, and status of insurances; and (c) if not previously provided, a copy of each Debtor's last monthly operating report submitted to the Office of the United States Trustee.

5.      <u>Conference Calls</u>.  On Thursday, October 19, 2017, at 3:00 p.m., and at the same time on the same day every second week thereafter (as any such date and time might be rescheduled by agreement between the Debtors and the Collateral Agent on notice to the Lenders and the Creditors' Committee), the Debtors and their advisors shall conduct a case status call (including the Debtors' progress in execution of the Sales Plan referred to in the Term Sheet) with the Creditors' Committee, the Lenders who wish to participate, and their respective counsel.

6.      <u>Replacement Liens on Cash Collateral</u>.  For the purposes of Sections 361, 363(e) and 507(b) of the Bankruptcy Code, as adequate protection to the Lenders for the Debtors' use of Cash Collateral, each Lender is hereby granted a replacement lien (each, a "<u>Primary Replacement Lien</u>") on the same type of post-petition property of the Debtors' estates against which such Lender held a lien as of the Petition Date.  Each Lender's Primary Replacement Liens shall maintain the same priority, validity and enforceability as such Lender's pre-petition liens.  To the extent that the diminution of any Lender's interest in Cash Collateral after the Petition Date exceeds the value of such Lender's Primary Replacement Lien (including such liens granted pursuant to the Previous Interim Orders), such Lender is granted a lien (a "<u>Supplemental Replacement Lien</u>") on Cash Collateral junior to (a) existing liens as of the Petition Date, (b) Replacement Liens and Primary Replacement Liens granted pursuant to the Previous Interim Orders, and (c) Primary Replacement Liens granted pursuant to this Order.  Supplemental Replacement Liens granted pursuant to this Order and any of the Previous Interim Orders shall be *pari passu*.  Each Lender's Primary Replacement Lien and Supplemental Replacement Lien shall be valid only to the extent of the post-petition diminution in value of such Lender's pre-petition collateral resulting from the Debtors' use of the Cash Collateral.

7.    <u>Exclusion of Avoidance Powers</u>.    The Primary Replacement Liens and the Supplemental Replacement Liens shall not attach to any claims or causes of action asserting avoidance powers held by any of the Debtors or any trustee for the Debtors, including those avoidance powers set forth in Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or to the proceeds of any claims under or actions commenced pursuant to such powers (the "<u>Excluded Claims</u>").

8.    <u>Additional Adequate Protection Liens</u>.  For the purposes of Sections 361, 363(e) and 507(b) of the Bankruptcy Code, as further adequate protection to each Lender for any diminution in Cash Collateral of such Lender resulting from the Debtors' use of such Cash Collateral and as adequate protection to each Lender for any decline in value during the period from and after the Petition Date through the Termination Date of any and all other assets subject to the lien of such Lender, including Mortgaged Vessels ("<u>Non-Cash Collateral</u>"), the Collateral Agent, as agent for such Lender under the Intercreditor Agreement, shall be and hereby is granted a lien, junior to the Permitted Liens (as defined below), for its own benefit and for the ratable benefit of the Lenders, on each of the Adequate Protection Mortgaged Vessels, and on all cash and non-cash proceeds of any sale or other disposition or liquidation (excluding any lease or charter or charter hire) thereof (collectively, the "<u>Additional Adequate Protection Collateral</u>"), subject to the terms of the Intercreditor Agreement, as security for (a) any such diminution or decline, and (b) all Agent Claims (as defined in the Intercreditor Agreement) (each, an "<u>Additional Adequate Protection Lien</u>").  For the avoidance of doubt, any vessels subject to liens held by MARAD and PacWest are not included in the term "Adequate Protection Mortgaged Vessels."  The Additional Adequate Protection Lien as to each item of Additional Adequate Protection Collateral is subject only to (x) the prepetition mortgage(s)/security interests of any applicable Lender(s) on such Adequate Protection Mortgaged

Vessel, (y) any Priority Maritime Liens on such Adequate Protection Mortgaged Vessel as of the Petition Date, and (z) the Insurer Lien on such Adequate Protection Mortgaged Vessel (collectively the "Permitted Liens").  Any claim based on any such diminution or decline during the period after the Petition Date through the Termination Date (each, an "Adequate Protection Claim") shall be subject to allowance by this Court after notice and a hearing.  The Additional Adequate Protection Liens shall be *pari passu* with each other, shall be held by the Collateral Agent, and shall be governed by the Intercreditor Agreement, subject to the terms of this order; however, each Lender shall legally and beneficially hold its own Adequate Protection Claim (if any) and shall have sole standing to assert such claim.  For the avoidance of doubt by the Creditors' Committee, no Excluded Claims shall constitute Additional Adequate Protection Collateral.

9.      Proceeds of Additional Adequate Protection Liens.  Cash proceeds (if any) of the Additional Adequate Protection Lien shall be retained by the Debtors for use in accordance with any cash collateral orders entered by this Court, subject to:  (i) the payment of Agent Claims (as that term is defined in the Intercreditor Agreement) as the first item of priority, (ii) the payment of Adequate Protection Claims allowed at the time of the Debtors' receipt of such proceeds; (iii) the establishment of reserves, in an amount agreed to by the applicable Lien Lender and the Debtors or determined by order of this Court, for any asserted (but not allowed) Adequate Protection Claims at the time of the Debtors' receipt of such proceeds; (iv) the ratable payment and funding, respectively, of such allowed Adequate Protection Claims and such reserves if such proceeds are insufficient to pay all of such allowed Adequate Protection Claims and to fund all of such reserves (for the avoidance of doubt, the Additional Adequate Protection Lien attaches to all such proceeds until disbursed by the Debtors).

10.    <u>Retained Proceeds Lien</u>.  For the purposes of Sections 361, 363(e) and 507(b) of the Bankruptcy Code, as adequate protection to the Lenders for the Debtors' use of Retained Proceeds (as defined in the Sale Order), the Collateral Agent, as agent for each Lender under the Intercreditor Agreement, shall and hereby is granted the Retained Proceeds Lien (as defined in the Sale Order).

11.    <u>Intercreditor Agreement</u>.  The Intercreditor Agreement is hereby approved in all respects, *provided, however,* that at any time when the Cases remain pending, the Collateral Agent shall not (and notwithstanding anything to the contrary in the Intercreditor Agreement, shall not under any circumstances have any obligation or duty to any Lender to) foreclose the Adequate Protection Lien or the Retained Proceeds Lien as to any particular Adequate Protection Mortgaged Vessel or Unencumbered Vessel without first having obtained relief from the automatic stay of section 362(a) of the Bankruptcy Code as to such Adequate Protection Mortgaged Vessel or Unencumbered Vessel, which relief may be requested on an emergency basis (with three business days' notice of the hearing to the Notice Parties being sufficient) upon appropriate motion.  Without limiting the generality of the foregoing, no Retained Proceeds Vessels Advance, pursuant to and as defined in the Intercreditor Agreement and/or in each Vessel Mortgage (as defined in the Sale Order), shall be made without an order of this Court (at any time when the Cases remain pending) and compliance with the notice procedures in the Intercreditor Agreement and/or in each Vessel Mortgage.  Neither this Order nor the Intercreditor Agreement shall have any effect on Existing Intercreditor Agreements.

12.    <u>Liens Immediately Effective</u>.  Notwithstanding anything to the contrary contained in this Order, the Retained Proceeds Lien and the Additional Adequate Protection Liens (as well as the Primary Replacement Liens and Supplemental Replacement Liens) shall be immediately effective upon, and based solely on, entry of this Order and without need for any further documentation,

notice, recordation or other act, with the same effect as though all steps permitted or required under applicable non-bankruptcy law to obtain a valid, perfected and enforceable lien were taken simultaneously with the entry of this Order. Without derogating in any way from the effect of the preceding sentence, (a) the Collateral Agent and each Lender, as the case may be, may take such further steps as it may in its reasonable discretion wish to take by way of documentation, notice or recordation, (b) the Debtor shall provide reasonable cooperation, which shall include executing each and every proper document, in form and substance reasonably acceptable to the Debtors, presented for the Debtors' signature by the Collateral Agent or any Lender, in connection with the documentation, notice or recordation of the Retained Proceeds Lien, Adequate Protection Liens, Primary Replacement Liens and Supplemental Replacement Liens, and (c) without limiting the generality of the foregoing, the Debtors shall immediately execute, and the Collateral Agent is authorized to record, the Vessel Mortgages.

13.    <u>Allowance of Claims and Liens</u>. Subject to paragraph 16 of this Order, on a final basis for all purposes in the Cases and in any successor cases, in consideration of the Lenders' accommodations to the Debtors pursuant to the Term Sheet and as additional adequate protection, on behalf of each of their estates and any successors thereto, the Debtors admit and agree:

> a.    <u>Rockland</u>. There is hereby allowed a claim of Rockland against each of the Debtors in the amount of $47,671,782.13, consisting of principal and interest as of the Petition Date (as detailed in **Exhibit C**). Subject to the Retained Challenge Rights, any expenses (including counsel fees) accrued before the Petition Date and any interest, fees and other charges under section 506(b) of the Bankruptcy Code later allowed by an order of this Court shall be added to the amount of such allowed claim. Subject to the Retained Challenge Rights (as described below) and the effect of any pre-petition intercreditor agreement, Rockland's allowed claim is secured by a valid, enforceable, and perfected, first priority lien on and security interest in: (i) the Mortgaged Vessels attributable to Rockland on **Exhibit A** to this Order, subject only to any Senior Maritime Liens as of the Petition Date, and (ii) the Debtors' other personal property. Subject to the Retained Challenge Rights, the Rockland liens and security interests governed hereby are: (1) valid, binding, perfected, duly recorded and enforceable liens on and security interests

in all of Rockland's prepetition Collateral, and (2) not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, recoupment, counterclaims, defenses, claims, causes of action, impairment or any other kind of challenge under applicable bankruptcy or non-bankruptcy law, in the United States or elsewhere, by rule, in admiralty or in equity.  Without any further action or notice, Rockland is identified as an additional insured, lender, mortgagee and loss payee in respect of all insurance policies as to its Collateral.

b.   <u>Santander</u>.  There is hereby allowed a claim of Santander against each of the Debtors in the amount of $26,869,190.16, consisting of principal and interest as of the Petition Date (as detailed in **Exhibit C**).  Subject to the Retained Challenge Rights, any expenses (including counsel fees) accrued before the Petition Date and any interest, fees and other charges under section 506(b) of the Bankruptcy Code later allowed by an order of this Court shall be added to the amount of such allowed claim.  Subject to the Retained Challenge Rights (as described below) and the effect of any pre-petition intercreditor agreement, Santander's allowed claim is secured by a valid, enforceable, and perfected, first priority lien on and security interest in the Mortgaged Vessels attributable to Santander on **Exhibit A** to this Order, subject only to any Senior Maritime Liens as of the Petition Date.  Subject to the Retained Challenge Rights, the Santander liens and security interests governed hereby are: (1) valid, binding, perfected, duly recorded and enforceable liens on and security interests in all of Santander's prepetition Collateral, and (2) not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, recoupment, counterclaims, defenses, claims, causes of action, impairment or any other kind of challenge under applicable bankruptcy or non-bankruptcy law, in the United States or elsewhere, by rule, in admiralty or in equity.  Without any further action or notice, Santander is identified as an additional insured, lender, mortgagee and loss payee in respect of all insurance policies as to its Collateral.

c.   <u>Wells</u>.  There is hereby allowed a claim of Wells against each of the Debtors in the amount of $22,473,173.93, consisting of principal and interest as of the Petition Date (as detailed in **Exhibit C**).  Subject to the Retained Challenge Rights, any expenses (including counsel fees) accrued before the Petition Date and any interest, fees and other charges under section 506(b) of the Bankruptcy Code later allowed by an order of this Court shall be added to the amount of such allowed claim.  Subject to the Retained Challenge Rights (as described below) and the effect of any pre-petition intercreditor agreement, Wells' allowed claim is secured by a valid, enforceable, and perfected, first priority lien on and security interest in the Mortgaged Vessels attributable to Wells on **Exhibit A** to this Order, subject only to any Senior Maritime Liens as of the Petition Date.  Subject to the Retained Challenge Rights, the Wells liens and security interests governed hereby are: (1) valid, binding, perfected, duly recorded and enforceable liens on and security interests in all of Wells' prepetition Collateral, and (2) not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, recoupment, counterclaims, defenses, claims, causes of

action, impairment or any other kind of challenge under applicable bankruptcy or non-bankruptcy law, in the United States or elsewhere, by rule, in admiralty or in equity. Without any further action or notice, Wells is identified as an additional insured, lender, mortgagee and loss payee in respect of all insurance policies as to its Collateral.

d.  <u>Citizens</u>.  There is hereby allowed a claim of Citizens against each of the Debtors in the amount of $13,952,207.65, consisting of principal and interest as of the Petition Date (as detailed in **Exhibit C**).  Subject to the Retained Challenge Rights, any expenses (including counsel fees) accrued before the Petition Date and any interest, fees and other charges under section 506(b) of the Bankruptcy Code later allowed by an order of this Court shall be added to the amount of such allowed claim.  Subject to the Retained Challenge Rights (as described below) and the effect of any pre-petition intercreditor agreement, Citizens' allowed claim is secured by a valid, enforceable, and perfected, first priority lien on and security interest in the Mortgaged Vessels attributable to Citizens on **Exhibit A** to this Order, subject only to any Senior Maritime Liens as of the Petition Date.  Subject to the Retained Challenge Rights, the Citizens liens and security interests governed hereby are: (1) valid, binding, perfected, duly recorded and enforceable liens on and security interests in all of Citizens' prepetition Collateral, and (2) not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, recoupment, counterclaims, defenses, claims, causes of action, impairment or any other kind of challenge under applicable bankruptcy or non-bankruptcy law, in the United States or elsewhere, by rule, in admiralty or in equity.  Without any further action or notice, Citizens is identified as an additional insured, lender, mortgagee and loss payee in respect of all insurance policies as to its Collateral.

e.  <u>U.S. Bank</u>.  There is hereby allowed a claim of U.S. Bank against each of the Debtors in the amount of $2,384,457.01, consisting of principal and interest as of the Petition Date (as detailed in **Exhibit C**).  Subject to the Retained Challenge Rights, any expenses (including counsel fees) accrued before the Petition Date and any interest, fees and other charges under section 506(b) of the Bankruptcy Code later allowed by an order of this Court shall be added to the amount of such allowed claim.  Subject to the Retained Challenge Rights (as described below) and the effect of any pre-petition intercreditor agreement, U.S. Bank's allowed claim is secured by a valid, enforceable, and perfected, first priority lien on and security interest in the Mortgaged Vessels attributable to U.S. Bank on **Exhibit A** to this Order, subject only to any Senior Maritime Liens as of the Petition Date.  Subject to the Retained Challenge Rights, the U.S. Bank liens and security interests governed hereby are: (1) valid, binding, perfected, duly recorded and enforceable liens on and security interests in all of U.S. Bank's prepetition Collateral, and (2) not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, recoupment, counterclaims, defenses, claims, causes of action, impairment or any other kind of challenge under applicable bankruptcy or non-bankruptcy law, in the United States or elsewhere, by rule, in admiralty or in equity.  Without any further action

or notice, U.S. Bank is identified as an additional insured, lender, mortgagee and loss payee in respect of all insurance policies as to its Collateral.

f.  <u>Key</u>.  There is hereby allowed a claim of Key against each of the Debtors in the amount of $6,440,126.15, consisting of principal and interest as of the Petition Date (as detailed in **Exhibit C**).  Subject to the Retained Challenge Rights, any expenses (including counsel fees) accrued before the Petition Date and any interest, fees and other charges under section 506(b) of the Bankruptcy Code later allowed by an order of this Court shall be added to the amount of such allowed claim.  Subject to the Retained Challenge Rights (as described below) and the effect of any pre-petition intercreditor agreement, Key's allowed claim is secured by a valid, enforceable, and perfected, first priority lien on and security interest in the Mortgaged Vessels attributable to Key on **Exhibit A** to this Order, subject only to any Senior Maritime Liens as of the Petition Date.  Subject to the Retained Challenge Rights, the Key liens and security interests governed hereby are: (1) valid, binding, perfected, duly recorded and enforceable liens on and security interests in all of Key's prepetition Collateral, and (2) not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, recoupment, counterclaims, defenses, claims, causes of action, impairment or any other kind of challenge under applicable bankruptcy or non-bankruptcy law, in the United States or elsewhere, by rule, in admiralty or in equity.  Without any further action or notice, Key is identified as an additional insured, lender, mortgagee and loss payee in respect of all insurance policies as to its Collateral.

g.  <u>Fifth Third</u>.  There is hereby allowed a claim of Fifth Third against each of the Debtors in the amount of $4,069,697.36, consisting of principal and interest as of the Petition Date (as detailed in **Exhibit C**).  Subject to the Retained Challenge Rights, any expenses (including counsel fees) accrued before the Petition Date and any interest, fees and other charges under section 506(b) of the Bankruptcy Code later allowed by an order of this Court shall be added to the amount of such allowed claim.  Subject to the Retained Challenge Rights (as described below) and the effect of any pre-petition intercreditor agreement, Fifth Third's allowed claim is secured by a valid, enforceable, and perfected, first priority lien on and security interest in the Mortgaged Vessels attributable to Fifth Third on **Exhibit A** to this Order, subject only to any Senior Maritime Liens as of the Petition Date. Subject to the Retained Challenge Rights, the Fifth Third liens and security interests governed hereby are: (1) valid, binding, perfected, duly recorded and enforceable liens on and security interests in all of Fifth Third's prepetition Collateral, and (2) not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, recoupment, counterclaims, defenses, claims, causes of action, impairment or any other kind of challenge under applicable bankruptcy or non-bankruptcy law, in the United States or elsewhere, by rule, in admiralty or in equity.  Without any further action or notice, Fifth Third is identified as an additional insured, lender, mortgagee and loss payee in respect of all insurance policies as to its Collateral.

h.  Radius.  There is hereby allowed a claim of Radius against each of the Debtors in the amount of $4,187,905.83, consisting of principal and interest as of the Petition Date (as detailed in **Exhibit C**).  Subject to the Retained Challenge Rights, any expenses (including counsel fees) accrued before the Petition Date and any interest, fees and other charges under section 506(b) of the Bankruptcy Code later allowed by an order of this Court shall be added to the amount of such allowed claim.  Subject to the Retained Challenge Rights (as described below) and the effect of any pre-petition intercreditor agreement, Radius's allowed claim is secured by a valid, enforceable, and perfected, first priority lien on and security interest in the Mortgaged Vessels attributable to Radius on **Exhibit A** to this Order, subject only to any Senior Maritime Liens as of the Petition Date.  Subject to the Retained Challenge Rights, the Radius liens and security interests governed hereby are: (1) valid, binding, perfected, duly recorded and enforceable liens on and security interests in all of Radius's prepetition Collateral, and (2) not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, recoupment, counterclaims, defenses, claims, causes of action, impairment or any other kind of challenge under applicable bankruptcy or non-bankruptcy law, in the United States or elsewhere, by rule, in admiralty or in equity.  Without any further action or notice, Radius is identified as an additional insured, lender, mortgagee and loss payee in respect of all insurance policies as to its Collateral.

i.  PacWest.  There is hereby allowed a claim of PacWest against each of the Debtors in the amount of $688,362.70, consisting of principal and interest as of the Petition Date (as detailed in **Exhibit C**).  Subject to the Retained Challenge Rights, any expenses (including counsel fees) accrued before the Petition Date and any interest, fees and other charges under section 506(b) of the Bankruptcy Code later allowed by an order of this Court shall be added to the amount of such allowed claim.  Subject to the Retained Challenge Rights (as described below) and the effect of any pre-petition intercreditor agreement, PacWest's allowed claim is secured by a valid, enforceable, and perfected, first priority lien on and security interest in the Mortgaged Vessels attributable to PacWest on **Exhibit A** to this Order, subject only to any Senior Maritime Liens as of the Petition Date.  Subject to the Retained Challenge Rights, the PacWest liens and security interests governed hereby are: (1) valid, binding, perfected, duly recorded and enforceable liens on and security interests in all of PacWest's prepetition Collateral, and (2) not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, recoupment, counterclaims, defenses, claims, causes of action, impairment or any other kind of challenge under applicable bankruptcy or non-bankruptcy law, in the United States or elsewhere, by rule, in admiralty or in equity.  Without any further action or notice, PacWest is identified as an additional insured, lender, mortgagee and loss payee in respect of all insurance policies as to its Collateral.

j.  Equitable.  There is hereby allowed a claim of Equitable against each of the Debtors in the amount of $1,149,911.34, consisting of principal and interest as of the Petition Date (as detailed in **Exhibit C**).  Subject to the Retained Challenge

Rights, any expenses (including counsel fees) accrued before the Petition Date and any interest, fees and other charges under section 506(b) of the Bankruptcy Code later allowed by an order of this Court shall be added to the amount of such allowed claim.  Subject to the Retained Challenge Rights (as described below) and the effect of any pre-petition intercreditor agreement, Equitable's allowed claim is secured by a valid, enforceable, and perfected, first priority lien on and security interest in the Mortgaged Vessels attributable to Equitable on **Exhibit A** to this Order, subject only to any Senior Maritime Liens as of the Petition Date.  Subject to the Retained Challenge Rights, the Equitable liens and security interests governed hereby are: (1) valid, binding, perfected, duly recorded and enforceable liens on and security interests in all of Equitable's prepetition Collateral, and (2) not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, recoupment, counterclaims, defenses, claims, causes of action, impairment or any other kind of challenge under applicable bankruptcy or non-bankruptcy law, in the United States or elsewhere, by rule, in admiralty or in equity.  Without any further action or notice, Equitable is identified as an additional insured, lender, mortgagee and loss payee in respect of all insurance policies as to its Collateral.

k.  <u>B of A</u>.  There is hereby allowed a claim of B of A against each of the Debtors in the amount of $12,210,607.57, consisting of principal and interest as of the Petition Date (as detailed in **Exhibit C**).  Subject to the Retained Challenge Rights, any expenses (including counsel fees) accrued before the Petition Date and any interest, fees and other charges under section 506(b) of the Bankruptcy Code later allowed by an order of this Court shall be added to the amount of such allowed claim.  Subject to the Retained Challenge Rights (as described below) and the effect of any pre-petition intercreditor agreement, B of A's allowed claim is secured by a valid, enforceable, and perfected, first priority lien on and security interest in the Mortgaged Vessels attributable to B of A on **Exhibit A** to this Order, subject only to any Senior Maritime Liens as of the Petition Date.  Subject to the Retained Challenge Rights, the B of A liens and security interests governed hereby are: (1) valid, binding, perfected, duly recorded and enforceable liens on and security interests in all of B of A's prepetition Collateral, and (2) not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, recoupment, counterclaims, defenses, claims, causes of action, impairment or any other kind of challenge under applicable bankruptcy or non-bankruptcy law, in the United States or elsewhere, by rule, in admiralty or in equity.  Without any further action or notice, B of A is identified as an additional insured, lender, mortgagee and loss payee in respect of all insurance policies as to its Collateral.

For the avoidance of doubt, nothing in this Order shall preclude any Lender from asserting a claim for items other than principal and non-default interest, all of which shall be subject to allowance pursuant to applicable bankruptcy law, non-bankruptcy law, and rules of procedure.

14.  <u>Acknowledgement of Guaranties</u>.  James M. Cashman hereby acknowledges the validity of all personal guaranties of the Lender Claims, effective as of the date of entry of this Order.

15.  <u>Releases/Waivers</u>.  Subject to paragraph 16 of this Order, on a final basis for all purposes in the Cases, the Debtors, on behalf of themselves and their respective bankruptcy estates and any successors to those estates, hereby:

    a.  Release, remise and forever discharge each of the Lenders of and from all claims, debts, demands, obligations and liabilities of every nature whatsoever, whether absolute or contingent, whether at law, in equity or in admiralty, whether capable of assertion by way of claim, counterclaim, setoff, recoupment or otherwise, and whether or not bearing any relationship to the allowed claim of such Lender under paragraph 13 of this Order, (i) incurred or otherwise existing as of the Petition Date, or (ii) pursuant to any avoidance powers held by any of the Debtors or any trustee for the Debtors, including those avoidance powers set forth in Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

    b.  Waive all rights against such Lender (i) under section 506(c) of the Bankruptcy Code as to any and all liabilities incurred by the Debtors from the Petition Date through the Termination Date, except for expenses (including compensation and reimbursement of expenses of professionals) projected under the Budget to accrue prior to the Termination Date but become payable thereafter (for the avoidance of doubt, any expense first arising after the Termination Date is also excluded from this waiver), and (ii) under section 552(b) of the Bankruptcy Code or to require marshaling of prepetition collateral.

16.  <u>Retained Challenge Rights</u>.  The allowance of Lenders' claims and determination of the validity and priority of their liens pursuant to paragraph 13 of this Order and the releases, waivers pursuant to paragraph 15 of this Order (collectively, the "<u>Acknowledgements</u>"), and the acknowledgement of James M. Cashman set forth in paragraph 14 above, are final, irrevocable and unconditional, and fully binding upon the Debtors, their estates and their creditors, parties in interest, entities, and their successors, except that the Acknowledgements are subject to:

    a.  <u>Debtors' Retained Challenges</u>.  Each of the specific matters set forth as an exception to the Acknowledgements in **Exhibit D** (the "<u>Debtor Retained Challenges</u>"), but only as to any such matter that is the subject of an actual claim, right, cause of action, or challenge brought in this Court through the filing of Appropriate Pleadings by the Debtors on or before November 30, 2017 (as such deadline may be extended by the applicable Lender); and

734602                                          20

b. <u>Committee Notice</u>. Each of the specific matters set forth as an exception to the Acknowledgements in a written notice provided by the Creditors' Committee to each affected Lender such that the notice is received by such Lender not later than October 30, 2017 (the "<u>Committee Retained Challenges</u>" and together with the Debtor Retained Challenges the "<u>Retained Challenge Rights</u>"), but only as to any such matter that is the subject of an actual claim, right, cause of action, or challenge brought in this Court through the filing of Appropriate Pleadings by the Creditors' Committee on or before November 30, 2017 (as such deadline may be extended by the applicable Lender) (the "<u>Committee Deadline</u>"). Nothing in this Order vests or confers upon the Creditors' Committee standing to pursue any claims, rights, causes of action, or challenges belonging to the Debtors, debtor James M. Cashman and each of their estates. The Creditors' Committee must file a motion to obtain standing, attaching a complaint specifying all claims, rights, causes of action, and/or challenges, not later than the Committee Deadline (the "<u>Committee Complaint</u>"). If such a motion is filed by such date, the deadline for the Creditors' Committee to file the Committee Complaint is tolled until the Court enters an order ruling on the motion, whereupon the Creditors' Committee shall have three (3) business days within which to file a Committee Complaint. Such complaint (which, for the avoidance of doubt, may not include any claims not included in the Committee Complaint as on file as of the Committee Deadline) may include claims as to which such order denies standing, but in such event the Creditors' Committee shall within the same period of three (3) business days file a notice of appeal from such order and a motion for a stay pending appeal, whereupon the Creditors' Committee shall have an additional seven (7) days within which to obtain a stay pending appeal. If such stay is not obtained within such period, the Creditors' Committee shall dismiss the Committee Complaint and the final sentence of this paragraph 16 shall apply. If such stay is timely obtained, all process in respect of the Committee Complaint and the related adversary proceeding shall be administratively stayed pending further order of the Court.

"<u>Appropriate Pleadings</u>" (i) may include (notwithstanding any national or local rule requiring an adversary proceeding) a motion as to which every affected Lender shall have not less than thirty (30) days to respond and any moving party shall have fourteen (14) days to reply, and (ii) in the case of the Creditors' Committee, shall require that the Creditors' Committee be determined by this Court to have standing to file such pleading, through a request for such determination filed with this Court before or contemporaneously with such pleading. In the event that a Retained Challenge Right (including any such right retained by the Creditors' Committee) is not exercised through the timely filing of Appropriate Pleadings, any of the steps required in subparagraph (b) above is not timely

accomplished, or a Retained Challenge Right is timely exercised and then withdrawn, then as to the matter in question, each and every claim, right, cause of action, or challenge shall be deemed to be forever waived and released.

17.     Affiliate Transfers.  The Debtors shall account for transfers and accruals among Debtors and with non-Debtor insiders and affiliates.  No funds shall be transferred by any Debtor to or for the benefit of Debtor James M. Cashman, except amounts in payment of his salary and benefits and reimbursement of reasonable expenses in connection with his employment that may accrue in the ordinary course after the Petition Date.

18.     Insurance.  The Debtors shall maintain in effect all insurance currently in effect, as disclosed to the U.S. Trustee and the Lenders.

19.     Lawful Operations.  The Debtors shall operate their vessels in accordance with the law of all applicable jurisdictions, subject to a twenty (20) day notice period and opportunity to cure (regardless of whether the vessel is subject to a Vessel Mortgage).

20.     Retained Proceeds.  The Debtors shall keep all Retained Proceeds in a separate debtor-in-possession bank account, but may use such proceeds (a) before the Termination Date, in accordance with the Budget, or (b) after the Termination Date, in accordance with any subsequent budget approved by the Lenders, or by this Court on proper notice to the Notice Parties.

21.     Termination Date.  The Termination Date shall be January 15, 2018, or such earlier date (if any) as the Debtors are in default in any obligation under the Sale Order or under paragraph 3(a), (b) or (c), or 17 of this Order, or as the Debtors are in default in any other obligation under this Order and such default has not been cured within three (3) business days following notice by the Collateral Agent or any Lender to the Debtors and the Creditors' Committee, or (without derogating from paragraph 22 of this Order) as any of the Cases are dismissed or converted to Chapter 7, or as

any examiner with special powers or trustee is appointed in any of the Cases, or as this Court

determines at the request of the Collateral Agent or any Lender that the Debtors are not paying their

undisputed ordinary course expenses (which determination may be requested on an emergency basis,

with ten (10) days' notice to the Notice Parties of the hearing being sufficient).  Upon any of the

occurrences specified in the preceding sentence, the Collateral Agent and any Lender (subject in all

cases to all the provisions of the Intercreditor Agreement and the respective rights, remedies and

undertakings of each of the Collateral Agent and each Lender thereunder) may (a) if the Cases remain

pending, seek relief from the automatic stay of section 362(a) of the Bankruptcy Code (including

relief to allow enforcement of the Retained Proceeds Lien and/or Adequate Protection Lien as to any

Adequate Protection Mortgaged Vessel and/or Unencumbered Vessel), which relief may be

requested on an emergency basis (with three business days' notice to the Notice Parties of the hearing

being sufficient) by filing an appropriate motion, provided that all rights, claims and defenses of the

Debtors and/or the Creditors' Committee with respect to any such request for relief are fully

preserved, and (b) if the Cases are no longer pending (including by reason of an order of this Court

as to which an appeal is pending but which has not been stayed), exercise their rights and remedies

under the Agreed Orders and the Vessel Mortgages, as well as all rights and remedies that would

have been available to the Lenders but for the automatic stay.

22.    <u>Lender Restrictions Through Termination Date</u>.  Unless by reason of a cause arising

after the entry of this Order, the Lenders shall not, prior to the Termination Date, whether by pleading

filed with the Bankruptcy Court or otherwise, (a) request additional adequate protection, (b) seek

relief from the automatic stay or to compel abandonment of estate property, (c) challenge the

Debtors' use of Cash Collateral (other than by reason of any violation of this Order), or (d) seek any

examination under F.R.B.P. 2004, the appointment of a trustee or examiner, to convert the Cases to cases under Chapter 7 of the Bankruptcy Code, or to shorten any period under the Exclusivity Order.

23.   <u>Survival of Certain Provisions</u>.   The following shall survive the Termination Date: (a) all liens and interests granted in or pursuant to the Agreed Orders (including the Previous Interim Orders); and (b) subject to the Retained Challenge Rights (which shall continue to be subject to the requirements of paragraph 16 above), the acknowledgements, releases, waivers and as otherwise set forth in paragraphs 13 and 15 above and the acknowledgement of James M. Cashman set forth in paragraph 14 above; provided that any adequate protection liens granted by this Court, including the Additional Adequate Protection Lien, shall not cover any diminution in any Lenders' collateral that occurs after the Termination Date.

24.   <u>Reservation of Rights</u>.   After the Termination Date, subject to the preceding paragraph of this Order, all parties reserve all rights under applicable bankruptcy and non-bankruptcy law, under Chapter 11 or otherwise, including, without limitation, in respect of adequate protection, stay relief, the use of Cash Collateral, and the sale of property under Section 363(b) or 363(c) of the Bankruptcy Code.

25.   <u>Parties Bound by this Order</u>.   This Order shall bind the Debtors, debtor James M. Cashman, the Insurers, the Collateral Agent, the Lenders, all other creditors of the Debtors, the Creditors' Committee, any trustee or other estate representative appointed in the Debtors' cases, and all other parties in interest in the Cases.

26.   <u>Notice of this Order</u>.   Within three (3) business days after entry of this Order, the Debtors shall serve, or cause to be served, by the Court's CM/ECF system, first class mail or other appropriate method of service, a copy of this Order on the Notice Parties and on all known parties asserting maritime liens against the Debtors' vessels.

27.    <u>Continued Hearing</u>.  A continued hearing on the Debtors' request for entry of an interim order on the use of Cash Collateral is scheduled for **January 10, 2018, at 10:00 a.m.** (prevailing Eastern Time), before this Court.

28.    <u>Objections</u>.  Any further responses or objections to the Cash Collateral Motion shall be made in writing, conform to the applicable Federal Rules of Bankruptcy Procedure and the local rules of this Court ("<u>Bankruptcy Rules</u>"), be filed with this Court no later than **January 5, 2018, at 4:00 p.m.** (prevailing Eastern time) and served on the Notice Parties, and set forth the name of the objecting party, the basis for the objection, and the specific grounds therefor.  In order to have a clear record, any party objecting to continued use of Cash Collateral following the Termination Date shall file an objection, regardless of whether such party has previously filed an objection to use of Cash Collateral, but any objection may incorporate by reference the basis for objection in a specific previously-filed objection by such party or another party.

29.    <u>Reservation of Rights as to Insiders and Affiliates</u>.  Anything in this Order to the contrary notwithstanding, the claims of any insider and/or an affiliate of any Debtor or of James M. Cashman asserted against the Estates (a) in subrogation shall be subject to Section 509(b) of the Bankruptcy Code, and/or (b) as a successor to any Lender shall be subject to Section 510(c) of the Bankruptcy Code.  For the avoidance of doubt, the claims of any person or entity who or that is not insider and/or an affiliate of any Debtor or of James M. Cashman asserted against the Estates as a successor to any Lender shall be fully entitled to each and all of the Lender protections and benefits set forth in this Order.

30.    <u>Immediate Effect</u>.  Notwithstanding any applicable Bankruptcy Rules, this Order shall be immediately effective and enforceable upon being entered on the docket of this Court.

31.    <u>Retained Jurisdiction</u>.   This Court has and will retain jurisdiction and power to enforce this Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Order.

DATED at Boston, Massachusetts, as of the 24th day of October, 2017.


BY THE COURT


_____
Hon. Melvin S. Hoffman
Chief United States Bankruptcy Judge

IN RE: CASHMAN EQUIPMENT CORP., *ET AL.*
BANKRUPTCY NO. 17-12205
(JOINTLY ADMINISTERED)

EXHIBIT A TO

EIGHTH INTERIM ORDER GRANTING (1) USE OF CASH COLLATERAL,
(2) REPLACEMENT LIENS, (3) ADDITIONAL ADEQUATE PROTECTION,
AND (4) OTHER RELIEF

Cashman Equipment Corp., et al.
Exh. A to Eighth Cash Collateral Order

| Marine Vessels and Certain Equipment | Description | Lender |
|---|---|---|
| JMC 3005 / No. 1231566 | ABS Deck - Non Coastwise | 5th 3rd |
| JMC 3006 / No. 1231564 | ABS Deck - Non Coastwise | 5th 3rd |
| JMC 2600 / No. 1239411 | ABS Deck - Non Coastwise | Banc of America |
| JMC 2601 / No. 1239412 | ABS Deck - Non Coastwise | Banc of America |
| JMC 3010 / No. 1239413 | ABS Deck - Non Coastwise | Banc of America |
| JMC 3011 / No. 1239414 | ABS Deck - Non Coastwise | Banc of America |
| Miss Nora (JMC 4003) / Vanuatu No. 2332 | ABS Self Ballastable Deck Barge | Banc of America |
| JMC 121 / No. 1161280 | Inland Spud Barge | Citizens |
| JMC 148 / No. 1233601 | ABS Deck Barge | Citizens |
| JMC 151 / No. 1137944 | ABS Spud Barge | Citizens |
| JMC 152 / No. 1149337 | Inland Spud Barge | Citizens |
| JMC 163 / No. 1232364 | ABS Spud Barge | Citizens |
| JMC 182 / No. 1200354 | ABS Deck Barge | Citizens |
| JMC 188 / No. 1218746 | ABS Deck Barge | Citizens |
| JMC 191 / No. 1220851 | ABS Deck Barge | Citizens |
| JMC 252 / No. 1239099 | ABS Deck Barge 3500 PSF | Citizens |
| JMC 257 / No. 1225117 | ABS Deck Barge 4000 PSF | Citizens |
| JMC 3334 / No. 1233624 | ABS Deck - Non Coastwise | Citizens |
| JMC 58 / Serial No. 2251127 Manitowoc | Manitowoc 2250 Crane - Cummings | Equitable |
| JMC 56/Serial No. 2251131 Manitowoc | Manitowoc 2250 Maxer Prepped self erect | Key |
| JMC 57/ Serial No. 2251112 Manitowoc | Manitowoc 2250 Maxer Prepped self erect | Key |
| JMC 3330 / No. 1198348 | ABS Deck - Non Coastwise | Key |
| JMC 3331 / No. 1203928 | ABS Deck - Non Coastwise | Key |
| JMC 2820 / No. Vanuatu 2059 | ABS Deck - Non Coastwise | Pacific West |
| JMC 2821 / No. Vanuatu 2060 | ABS Deck - Non Coastwise | Pacific West |
| JMC 12 / No. 985369 | Inland Deck Barge | Radius |
| JMC 75 / No. 1241274 | Inland Deck Barge | Radius |
| JMC 76 / No. 1241275 | Inland Deck Barge | Radius |
| JMC 122 / No. 1216319 | Inland Spud Barge | Radius |
| JMC 124 / No. 1210287 | Inland Deck Barge | Radius |
| JMC 144 / No. 1192756 | ABS Deck Barge | Radius |
| JMC 145 / No. 1192758 | ABS Deck Barge | Radius |
| JMC 190 / No. 1214662 | ABS Deck Barge | Radius |
| JMC 4004 / No. 613464 | Self Ballastable Deck Barge | Radius |
| | | |
| JMC 4 Metal Flat Deck Barge | Inland Deck Barge - Utility Barge | RTC |
| JMC 23 / Serial No. 40290 | Manitowoc 4000W Vicon Crawler Crane | RTC |
| JMC 24 (Ex-YFNB-8)/ Vanuatu No. 1938 | RMS Floatel Barge | RTC |
| JMC 29 / Crane | Manitowoc 4100W Ringer Crawler Crane | RTC |
| JMC 35 / Serial No. 41780 | Manitowoc 4100 Crane S2 | RTC |
| JMC 37 / Serial No. 395020 | Manitowoc 3900 Crane | RTC |
| JMC 40 / Serial No. 355293 | Broderson IC80-2f CarryDeck Crane | RTC |
| JMC 42 / Serial No. 413002 | Manitowac 4100 Ser II 230T Crane | RTC |
| JMC 44 Vanuatu No. 1939 | RMS Floatel Barge | RTC |
| JMC 47 / No. Canada 839918 | ABS Deck Barge | RTC |
| JMC 48 / No. Canada 839919 | ABS Deck Barge | RTC |
| JMC 52 / Serial No. 41484 | Manitowoc 4100S2 Crawler crane | RTC |
| JMC 54 / Serial No. 41302 | Manitowoc 4100 Series II Crawler crane | RTC |
| JMC 55 / Serial No.40049 Manitowoc | Manitowac 4000W 1965 Crane | RTC |
| JMC 59 / Serial No. 9991114 Manitowoc | Manitowoc 999 Crawler Crane On JMC 00153 | RTC |

Cashman Equipment Corp., et al.
Exh. A to Eighth Cash Collateral Order

| | | |
|---|---|---|
| JMC 60 / Serical No. 99991072 Manitowoc | Manitowoc 999 Crawler Crane On JMC 00154 | RTC |
| JMC 73 / No. 1180710 | Converted to Inland Deck Barge 2015 | RTC |
| JMC 74 / No. 1180709 | Converted to Inland Deck Barge 2015 | RTC |
| JMC 86 (Tidelands 019) / No. 617004 | Inland Spud Barge | RTC |
| JMC 92 (Preeminent I) | Inland Quarters | RTC |
| JMC 123 (Ex-JMC103) / No. 1259904 | Inland Deck Barge | RTC |
| JMC 126 / No. 979389 | Inland Deck Barge | RTC |
| JMC 127 / No. 639696 | Inland Deck Barge | RTC |
| JMC 140 / No. 1137943 | ABS Spud Barge | RTC |
| JMC 153 / No. 1265276 | Inland Spud Barge | RTC |
| JMC 154 / No. 1266804 | Inland Spud Barge | RTC |
| JMC 184 (Lisa Michelle) / No. 1103489 | ABS Spud Barge | RTC |
| JMC 185 / No. Canada 838024 | ABS Deck Barge | RTC |
| JMC 231 / No. 1267468 | Inland Deck Barge | RTC |
| JMC 232 / No. 1267469 | Inland Deck Barge | RTC |
| JMC 244 / Vanuatu No. 1936 | RMS Deck Barge | RTC |
| JMC 245 / Vanuatu No. 1937 | RMS Deck Barge | RTC |
| JMC 250 / No. 1074918 | ABS Deck Barge | RTC |
| JMC 258 / No. 1226873 | ABS Deck Barge 4000 PSF | RTC |
| JMC 610, 611, 615, 617, 626, 628, 633-637, 639, 641 & 642 (Sectional Barges) | | RTC |
| JMC 2508 / No. Mexico 025/16 | ABS Deck - Non Coastwise | RTC |
| JMC 2509 / No. Mexico 022/12 | ABS Deck - Non Coastwise | RTC |
| JMC 2510 / No.1203929 | ABS Deck - Non Coastwise | RTC |
| JMC 2515 / No. Mexico 024/16 | ABS Deck - Non Coastwise | RTC |
| JMC 2516 / No. Mexico 021/16 | ABS Deck - Non Coastwise | RTC |
| JMC 2602 / No. 1264966 | ABS Deck - Non Coastwise | RTC |
| JMC 2823 / No. Vanuatu 2046 | ABS Deck - Non Coastwise | RTC |
| JMC 2824 / No. Vanuatu 2406 | ABS Deck - Non Coastwise | RTC |
| JMC 2825 / No. Vanuatu 2407 | ABS Deck - Non Coastwise | RTC |
| JMC 3007 / No. 1210087 | ABS Deck - Non Coastwise | RTC |
| JMC 3008 / No. 1210089 | ABS Deck - Non Coastwise | RTC |
| JMC 3080 / No. Vanuatu 2400 | Rina Deck Barge -Non Coastwise | RTC |
| Atlas / No.1097588 | ABS Classed Tug | RTC |
| Marina Orion / No. 1209095 | BV Classed Tug | RTC |
| Marina Polaris / No. 1209096 | BV Classed Tug | RTC |
| Miss Hannah (JMC 4002) No. 1237602 | ABS Self Ballastable Deck Barge | RTC |
| Miss Mary (JMC 4001) / No. Vanuatu 2249 | ABS Self Ballastable Deck Barge | RTC |
| Ocean Raider 17 / No. 1191447 | ABS Classed Tug | RTC |
| Reed Danos Tug / No. 588434 | ABS Classed Tug | RTC |
| Todd Danos Tug / No. 637906 | ABS Classed Tug | RTC |
| JMC 253 / No. 1236914 | ABS Deck Barge 4000 PSF | Santander |
| JMC 2514 / No. 1206774 | ABS Deck - Non Coastwise | Santander |
| JMC 300 / No. 1094810 | ABS Deck Barge | Santander |
| JMC 3003 / No. Mexico 031/16 | ABS Deck - Non Coastwise | Santander |
| JMC 3004 / No. 1183281 | ABS Deck - Non Coastwise | Santander |
| JMC 3009 / No. Mexico 030/16 | ABS Deck - Non Coastwise | Santander |
| JMC 3012 / No. 1243362 | ABS Deck - Non Coastwise | Santander |
| JMC 3013 / No. 1243363 | ABS Deck - Non Coastwise | Santander |
| JMC 3014 / No. 1246365 | ABS Deck - Non Coastwise | Santander |
| JMC 3015 / No. 1246573 | ABS Deck - Non Coastwise | Santander |

In re Cashman Equipment Corp., et al.
Exh. A to Eighth Cash Collateral Order

| | | |
|---|---|---|
| Miss Molly Tug / No. 9598000 Vanuau No. 2340 | BV Classed Tug | Santander |
| Mystic Schooner Sail Boat / No. 1185949 | Three Masted Schooner | Santander |
| JMC 85 / No. 1095096 | ABS Spud Barge | US Bank |
| JMC 146 / No. 1214459 | ABS Deck Barge | US Bank |
| JMC 159 / No. 1122407 (Deer Isle Granite) | ABS Spud Barge | US Bank |
| JMC 41 / Serial No. CW-4076 | Amclyde Crane - CBW-8800 Gantry Crane | Wells Fargo |
| JMC 49 / Serial No. 2251071 | Manitowac 2250 Crawler Crane | Wells Fargo |
| JMC 120 / No. 1144582 | Inland Spud Barge | Wells Fargo |
| JMC 130 / No. 1138024 | Inland Spud Barge | Wells Fargo |
| JMC 141 / No. 1137948 | ABS Spud Barge | Wells Fargo |
| JMC 147 / No. 1220856 | ABS Deck Barge | Wells Fargo |
| JMC 150 / No. 1136586 | ABS Spud Barge | Wells Fargo |
| JMC 158 / No. 1164407 | Inland Spud Barge | Wells Fargo |
| JMC 164 / No. 1235150 | ABS Spud Barge | Wells Fargo |
| JMC 171 / No. 1137281 | Hooper Barge | Wells Fargo |
| JMC 186 / No. 1208748 | ABS Deck Barge | Wells Fargo |
| JMC 187 / No. 1208552 | ABS Deck Barge | Wells Fargo |
| JMC 192 / No. 1114610 | Inland Spud Barge | Wells Fargo |
| JMC 256 / No. 1217297 | ABS Deck Barge 4000 PSF | Wells Fargo |
| JMC 259 / No. 1230994 | ABS Deck Barge 4000 PSF | Wells Fargo |
| JMC 263 / No. 1230780 | ABS Deck Barge | Wells Fargo |
| JMC 264 / No. 1243694 | ABS Deck Barge | Wells Fargo |
| JMC 304 / No. 1105091 | ABS Deck Barge | Wells Fargo |

| | | |
|---|---|---|
| JMC 50 / No. 1069223 | ABS Deck Barge | Unencumbered |
| JMC 137 / No. 979637 | Inland Sand Scow | Unencumbered |
| JMC 2511 / No.1198346 | ABS Deck - Non Coastwise | Unencumbered |
| JMC 3332 / No. 1216553 | ABS Deck - Non Coastwise | Unencumbered |
| JMC 3333 / No. 1216560 | ABS Deck - Non Coastwise | Unencumbered |
| JMC 3335 / No. 1233625 | ABS Deck - Non Coastwise | Unencumbered |
| JMC 3337 / No. 1243364 | ABS Deck - Non Coastwise | Unencumbered |
| JMC 3339 / No. | Flat Top Ballastable Barge | Unencumbered |
| JMC 3340 / No. | Flat Top Ballastable Barge | Unencumbered |
| JMC 3341 / No. | Flat Top Ballastable Barge | Unencumbered |
| JMC 20004 (EX WGN 9804) / No. 1063849 | Inland Hopper Barge | Unencumbered |
| JMC 20005 (EX WGN 9805) / No. 1063851 | Inland Hopper Barge | Unencumbered |
| JMC 20008 (EX WGN 9808) / No. 1063854 | Inland Hopper Barge | Unencumbered |
| JMC 20011 (EX WGN 9811) / No. 1063848 | Inland Hopper Barge | Unencumbered |
| JMC 20012 (EX WGN 9812) / No. 1063852 | Inland Hopper Barge | Unencumbered |
| JMC 20013 (EX WGN 9813) / No. 1063857 | Hopper Barges No. 106387 | Unencumbered |
| Carloyn Anne JMC 926 / No. 956128 | Inland Pushboat | Unencumbered |

IN RE: CASHMAN EQUIPMENT CORP., *ET AL.*
BANKRUPTCY NO. 17-12205
(JOINTLY ADMINISTERED)

EXHIBIT B TO

EIGHTH INTERIM ORDER GRANTING (1) USE OF CASH COLLATERAL,
(2) REPLACEMENT LIENS, (3) ADDITIONAL ADEQUATE PROTECTION,
AND (4) OTHER RELIEF

# INTERCREDITOR AGREEMENT

dated as of

September 28, 2017

among

**ROCKLAND TRUST COMPANY,**
as Collateral Agent,

and

BANC OF AMERICA LEASING AND CAPITAL, LLC,
CITIZENS ASSET FINANCE, INC.,
EQUITABLE BANK,
FIFTH THIRD BANK,
KEY EQUIPMENT FINANCE, A DIVISION OF KEYBANK NATIONAL ASSOCIATION,
PACIFIC WESTERN BANK,
RADIUS BANK,
ROCKLAND TRUST COMPANY,
SANTANDER BANK, N.A.,
U.S. BANK NATIONAL ASSOCIATION, ACTING THROUGH ITS DIVISION, U.S. BANK
EQUIPMENT FINANCE, and
WELLS FARGO EQUIPMENT FINANCE, INC.,
as Lenders

and

CASHMAN EQUIPMENT CORP.,
CASHMAN SCRAP & SALVAGE, LLC,
SERVICIO MARINA SUPERIOR, LLC,
CASHMAN CANADA, INC., and
MYSTIC ADVENTURE SAILS, LLC

## TABLE OF CONTENTS

Page

ARTICLE I  Definitions ....................................................................................................2

    SECTION 1.01      Construction; Certain Defined Terms ..............................................2

ARTICLE II  AGENCY APPOINTMENT AND AGREEMENTS AND RETAINED
    PROCEEDS VESSELS ADVANCES ...............................................................2

    SECTION 2.01      Appointment ......................................................................................2

    SECTION 2.02      Nature of Duties; Delegation ............................................................4

    SECTION 2.03      Rights, Exculpation, Etc ...................................................................5

    SECTION 2.04      Reliance.............................................................................................6

    SECTION 2.05      Collateral Matters.............................................................................6

    SECTION 2.06      Agency Expenses; Agency Fees .......................................................8

    SECTION 2.07      Indemnification .................................................................................9

    SECTION 2.08      Agent Individually ..........................................................................10

    SECTION 2.09      Successor Agent...............................................................................11

    SECTION 2.10      No Fiduciary Relationship ..............................................................12

    SECTION 2.11      Conduct of Business by the Lenders and Collateral Agent ...........12

    SECTION 2.12      Retained Proceeds Vessels Advances .............................................12

ARTICLE III  Priorities and Agreements with Respect to Additional Adequate Protection
    Collateral ........................................................................................................13

    SECTION 3.01      Payment of Claims...........................................................................13

    SECTION 3.02      Actions With Respect to Collateral; Prohibition on
        Contesting Lien.................................................................................14

    SECTION 3.03      No Duties of Senior Lenders; Provision of Notice ........................15

    SECTION 3.04      No Interference; Payment Over; Avoidance Issues ........................16

    SECTION 3.05      Automatic Release of Junior Liens .................................................17

SECTION 3.06      Certain Agreements With Respect to Insolvency Proceedings ................................................................17

SECTION 3.07      Primacy of Existing Intercreditor Agreements .............................18

ARTICLE IV   Priorities with Respect to Retained Proceeds Collateral .......................................18

SECTION 4.01      Priority of Claims...........................................................................18

ARTICLE V   Existence and Amounts of Liens and Obligations ..................................................19

ARTICLE VI   Consent of Debtors ................................................................................................20

ARTICLE VII   Representations and Warranties ..........................................................................20

SECTION 7.01      Representations and Warranties of Each Party..............................20

ARTICLE VIII   Miscellaneous.....................................................................................................20

SECTION 8.01      Notices ...........................................................................................20

SECTION 8.02      Waivers; Amendment ....................................................................21

SECTION 8.03      Parties in Interest...........................................................................21

SECTION 8.04      Conflict with Agreed Orders..........................................................21

SECTION 8.05      Survival .........................................................................................21

SECTION 8.06      Counterparts...................................................................................21

SECTION 8.07      Severability ....................................................................................21

SECTION 8.08      Governing Law; Jurisdiction; Consent to Service of Process........22

SECTION 8.09      WAIVER OF JURY TRIAL............................................................22

SECTION 8.10      Headings ........................................................................................23

SECTION 8.11      Conflicts.........................................................................................23

SECTION 8.12      Provisions Solely to Define Relative Rights..................................23

SECTION 8.13      Agent Capacities ...........................................................................23

SECTION 8.14      Term of Agreement........................................................................23

SECTION 8.15      No Precedent..................................................................................23

149245.06501/106149789V.15

INTERCREDITOR AGREEMENT (this "*Agreement*") dated as of September 28, 2017, among ROCKLAND TRUST COMPANY, as collateral agent and security trustee for the Lenders referred to in this Agreement (together with its successors and co-agents in substantially the same capacity as may from time to time be appointed, the "*Collateral Agent*"), BANC OF AMERICA LEASING AND CAPITAL, LLC, CITIZENS ASSET FINANCE, INC., EQUITABLE BANK, FIFTH THIRD BANK, KEY EQUIPMENT FINANCE, A DIVISION OF KEYBANK NATIONAL ASSOCIATION, PACIFIC WESTERN BANK, RADIUS BANK, ROCKLAND TRUST COMPANY, SANTANDER BANK, N.A., U.S. BANK, NATIONAL ASSOCIATION, ACTING THROUGH ITS DIVISION, U.S. BANK EQUIPMENT FINANCE, AND WELLS FARGO EQUIPMENT FINANCE, INC. (each a "*Lender*", and collectively, the "*Lenders*")[1], and, solely with respect to those provisions set forth in Article VI,  CASHMAN EQUIPMENT CORP., CASHMAN SCRAP & SALVAGE, LLC, SERVICIO MARINA SUPERIOR, LLC, CASHMAN CANADA, INC., and MYSTIC ADVENTURE SAILS, LLC (the "*Debtors*").

## RECITALS

A.      On June 9, 2017 (the "*Petition Date*"), each of the Debtors and James M. Cashman filed a voluntary petition under chapter 11 of the United States Code, 11 U.S.C. §101, *et seq.* (the "*Bankruptcy Code*"), commencing the Bankruptcy Case in the Bankruptcy Court.

B.      On June 12, 2017, the Debtors filed a *Motion for an Order (1) Authorizing the Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Related Relief* and renewed this request for relief by a second motion on September 1, 2017..  [Dkt. No. 13] [Dkt. No. 370] (collectively, the "*Cash Collateral Motions*").  While a series of agreed interim orders authorizing cash collateral usage has been entered by the Bankruptcy Court, each Lender has objected to the Cash Collateral Motions on various grounds, including, without limitation, the sufficiency of adequate protection provided to each Lender under the interim orders and pursuant to the Cash Collateral Motions.

C.      On June 30, 2017, the Debtors filed a *Motion for an Order Authorizing the Debtors (A) to Sell Vessels in the Ordinary Course of Business, (B) to Distribute Sale Proceeds, and (C) to Grant Substitute Liens* (the "*Sale Motion*").  Each Lender has objected to the Sale Motion on various grounds, including, without limitation, the propriety of applying Bankruptcy Code section 363(c) to the proposed notice based sale process in the Sale Motion and the retention of sale proceeds by the Debtors in exchange for additional Liens on certain unmortgaged Debtor vessels.

D.      In order to resolve the Lender objections to the Cash Collateral Motions and the Sale Motion on a further interim basis, each of the Debtors and the Lenders have entered into an agreement regarding vessel sales and adequate protection evidenced by the Agreed Orders and related documents, agreements, and instruments, including, without limitation, this Agreement and certain fleet mortgages and/or ship mortgages on certain of the Retained Proceeds Collateral.

---

[1]      For the avoidance of doubt, the parties agree that United States Secretary of Transportation, acting through the US Maritime Administration, a creditor of the Debtors, is not party and has no rights, remedies, obligations or undertakings hereunder.

NOW THEREFORE, in consideration of the mutual agreements in this Agreement contained and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, and intending to be legally bound, the parties to this Agreement agree as follows:

## ARTICLE I

### Definitions

SECTION 1.01   *Construction; Certain Defined Terms*.

(a)     All initially capitalized, but otherwise undefined terms in this Agreement shall have the meaning set forth in Annex 1.01 to this Agreement.

(b)     The definitions of terms in Annex 1.01 shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation."  The word "will" shall be construed to have the same meaning and effect as the word "shall."  Unless the context requires otherwise, (i) any reference in this Agreement to any Person shall be construed to include such Person's successors and assigns, but shall not be deemed to include the subsidiaries of such Person unless express reference is made to such subsidiaries, (ii) the words "herein," "hereof" and "hereunder," and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (iii) all references in this Agreement to Articles, Sections and Exhibits (with initial capitalization) shall be construed to refer to Articles, Sections and Exhibits of this Agreement, (iv) unless otherwise expressly qualified in this Agreement, the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights, and (vi) the term "or" is not exclusive.

## ARTICLE II

### AGENCY APPOINTMENT AND AGREEMENTS AND RETAINED PROCEEDS VESSELS ADVANCES

SECTION 2.01      *Appointment*.

(a)     Each Lender irrevocably appoints and authorizes ROCKLAND TRUST COMPANY as Collateral Agent hereunder, to perform, subject to the specific terms of this Agreement, the following duties on behalf of the Beneficiary Claimants:  (i) to accept, hold, maintain, preserve and protect the Additional Adequate Protection Liens and the Retained Proceeds Liens as collateral agent and security trustee for the Beneficiary Claimants, (ii) to collect, accept and receive any cash proceeds of any of the Additional Adequate Protection Collateral and the Retained Proceeds Collateral for the ratable benefit of the Beneficiary Claimants, and to distribute promptly any such proceeds so received in accordance with the terms hereof and of the Agreed Orders, (iii) to maintain, in accordance with its customary business practices, ledgers and records reflecting the status of the Collateral and related matters; (iv) to execute or file any and all ship mortgages, financing or similar statements or notices, amendments, renewals, supplements,

documents, instruments, proofs of claim, notices and other written agreements with respect to this Agreement or the Additional Adequate Protection Liens and the Retained Proceeds Liens for the ratable benefit of the Beneficiary Claimants; (v) without limiting or contradicting the provisions of the foregoing clause (i), to negotiate and agree, to accept and to execute and/or file first priority New Vessel Mortgages, an assignment of insurances with respect to the Retained Proceeds Vessels, and a financing statement to perfect a security interest in the proceeds of such insurances, which are being granted by the Debtors to supplement the adequate protection provided by the Retained Proceeds Liens, and any and all amendments, supplements, renewals, notices and other documents relating thereto; (vi) to perform, exercise, and enforce any and all other rights and remedies reasonably incidental to the exercise by the Collateral Agent of the rights and remedies specifically authorized to be exercised by the Collateral Agent by the terms of this Agreement or the Agreed Orders; (vii) subject to Section 2.06 of this Agreement, to incur and pay such costs and expenses reasonable, necessary, or appropriate for the performance and fulfillment of its functions and powers pursuant to this Agreement or the Agreed Orders; and (viii) subject to Section 2.03 of this Agreement, to take such action as the Collateral Agent deems appropriate on its behalf to exercise for the ratable benefit of the Beneficiary Claimants such other powers delegated to the Collateral Agent by the terms hereof or the Agreed Orders (including, without limitation, the power to give or to refuse to give notices, waivers, consents, approvals and instructions and the power to make or to refuse to make determinations and calculations, except as required under Section 2.01(b) of this Agreement) together with such powers as are reasonably incidental thereto to carry out the purposes hereof and thereof.

(b)    As a part of its duties as the Collateral Agent, Collateral Agent shall keep a ledger and accounting (the "***Beneficiary Claimants' Accounting***") of all Retained Proceeds Claims outstanding from time to time of which Collateral Agent shall have received written notice and the holders thereof, all Retained Proceeds Vessels Advances outstanding from time to time and the interest accrued thereon of which Collateral Agent shall have received written notice, all Adequate Protection Claims (including any Adequate Protection Reserve) allowed and outstanding from time to time of which Collateral Agent shall have received written notice, all Adequate Protection Claims asserted by any Lender from time to time, and all Agent Claims outstanding from time to time, provided that, Collateral Agent shall not be deemed to have any knowledge at any time of any Retained Proceeds Claim, Retained Proceeds Vessels Advance, or allowed Adequate Protection Claim (or Court Order concerning any Adequate Protection Reserve) unless Collateral Agent shall have received written notice from the Lender holding such Retained Proceeds Claim, Retained Proceeds Vessels Advance, or allowed/asserted Adequate Protection Claim (including being served with a copy of the pertinent Court Order) that such Retained Proceeds Claim has arisen, such Retained Proceeds Vessels Advance has been made or that such Adequate Protection Claim has been allowed or is disputed and entitled to an Adequate Protection Reserve, in each such case including the amount thereof. On a monthly basis, no later than the fifth Business Day of each month, the Collateral Agent shall deliver to each Lender and the Debtors a copy of the Beneficiary Claimants' Accounting as of the last day of the prior month, which shall be deemed an account stated and binding among the Lenders and Collateral Agent (absent manifest error) unless Collateral Agent shall receive written notice from any Lender disputing any part of the Beneficiary Claimants' Accounting within ten (10) Business Days after the distribution thereof. Each Lender shall deliver to the Collateral Agent promptly upon the entry of thereof a copy of each Court Order entered on account of or with respect to any Retained Proceeds Claim, Retained Proceeds Vessels Advance, any allowed Adequate Protection Claim or any asserted Adequate

3

Protection Claim as to which such Lender is entitled to an Adequate Protection Reserve, of such Lender.

SECTION 2.02    ***Nature of Duties; Delegation***.

(a)    The Collateral Agent shall have no duties or responsibilities except those expressly set forth in this Agreement or in the Agreed Orders.  The duties of the Collateral Agent shall be mechanical and administrative in nature.  The Collateral Agent shall not have by reason of this Agreement or the Agreed Orders a fiduciary relationship in respect of any Lender.  Nothing in this Agreement or the Agreed Orders, express or implied, is intended to or shall be construed to impose upon the Collateral Agent any obligations in respect of this Agreement or the Agreed Orders except as expressly set forth in this Agreement or therein.  Each Lender shall make its own independent investigation of the financial condition and affairs of the Debtors and shall make its own determination of the value of the Collateral, and the Collateral Agent shall have no duty or responsibility, either initially or on a continuing basis, to provide any Lender with any credit or other information with respect thereto, whether coming into the Collateral Agent's possession before the date hereof or at any time or times thereafter, except to the extent provided in Section 2.01(a)(ii) and (b) herein.

(b)    The Collateral Agent may, upon any term or condition it specifies, delegate or exercise any of its rights, powers and remedies under, and delegate or perform any of its duties or any other action with respect to, this Agreement or the Agreed Orders to or through any trustee(s), co-agent(s), sub-agent(s), employee(s), attorney(s)-in-fact and any other Person(s) (including any Lender(s)) (any of the foregoing, as "Subagent") to the extent the Collateral Agent reasonably determines that the services of such Subagent(s) are necessary or advisable to assist the Collateral Agent in the performance of its duties hereunder upon reasonable prior notice to the Debtors.  For the avoidance of doubt, this provision shall not impair the Debtors' and Required Lenders' respective rights as regards to the appointment of a successor Collateral Agent pursuant to Section 2.09 of this Agreement, nor can any delegation in this subsection (b) be a full delegation of rights, powers, and remedies by the Collateral Agent.  Any such Subagent shall benefit from this Article II to the extent provided by the Collateral Agent.  The Collateral Agent shall not be liable for any act or omission of any such Subagent selected by the Collateral Agent with reasonable care and without any gross negligence or willful misconduct.

(c)    The Collateral Agent shall not take any Major Action with respect to any Collateral without first having received written instructions (either as a response to a request for such instructions sent in writing by the Collateral Agent to Lenders requesting a response within a reasonable time frame or as a result of an independent action by the applicable Required Lenders) from the applicable Required Lenders approving such Major Action.  With respect to any actions or approvals other than a Major Action which by the terms of this Agreement or the Agreed Orders the Collateral Agent is permitted or required to take or to grant, the Collateral Agent may at any time request instructions from the applicable Required Lenders (and shall be fully protected in so acting in accordance with such instructions once received or refraining from acting if the applicable Required Lenders do not approve or supply instructions), which instructions shall be binding upon all Lenders.  As to any action not expressly required of the Collateral Agent under this Agreement or the Agreed Orders, the Collateral Agent shall not be required to exercise any discretion or take any action on its own initiative, but shall be required to act or to refrain from acting (and shall be

fully protected in so acting or refraining from acting) upon the instructions of the applicable Required Lenders, and such instructions of the applicable Required Lenders shall be binding upon all Lenders, and in any such case, (x) the Collateral Agent shall be absolutely entitled to refrain from taking any action or to withhold any approval in connection herewith or with the Agreed Orders with respect to any action not expressly required of the Collateral Agent under this Agreement or the Agreed Orders until the Collateral Agent shall have received such instructions from the Required Lenders, and (y) without limiting the foregoing, no Lender shall have any right of action whatsoever against the Collateral Agent as a result of the Collateral Agent either (A) acting or refraining from acting under this Agreement or the Agreed Orders in accordance with the written instructions of the Required Lenders (whether the Required Lenders provided such written instructions either as a timely response to a request for such instructions sent in writing by the Collateral Agent to Lenders requesting a response within a reasonable time frame or as a result of an independent action by the applicable Required Lenders), in each case with respect to any action not expressly required of the Collateral Agent under this Agreement or the Agreed Orders, or (B) refraining from acting under this Agreement or the Agreed Orders with respect to any action not expressly required of the Collateral Agent under this Agreement or the Agreed Orders while awaiting a response to any request by Collateral Agent for the written instructions of the applicable Required Lenders with respect to such action. If the Collateral Agent is required or elects to seek the consent or approval of the Required Lenders to the taking or refraining from taking any action hereunder, the Collateral Agent shall send notice thereof to each Lender. The Collateral Agent shall promptly notify each Lender any time that the Required Lenders have instructed the Collateral Agent to act or refrain from acting pursuant hereto.

SECTION 2.03 ***Rights, Exculpation, Etc***. Notwithstanding anything to the contrary contained in any provision of this Agreement or the Agreed Orders, the Collateral Agent and its past, present and future directors, officers, employees, attorneys, representatives and other agents shall not be liable for any action taken or omitted to be taken by them under or in connection with this Agreement or the Agreed Orders, except for their own gross negligence or willful misconduct as determined by a final non-appealable judgment of a court of competent jurisdiction. Without limiting the generality of the foregoing, the Collateral Agent: (i) may consult with legal counsel selected by it and, in the absence of gross negligence or willful misconduct, shall not be liable for any action taken or omitted to be taken in good faith by it in accordance with the advice of such counsel; (ii) makes no warranty or representation to any Lender and shall not be responsible to any Lender for any statements, certificates, warranties or representations made in or in connection with this Agreement or the Agreed Orders, other than in connection with any written report or notice required to be sent by the Collateral Agent to any Lender(s) hereunder; (iii) shall not have any duty to ascertain or to inquire as to the performance or observance of any of the terms, covenants or conditions of this Agreement or the Agreed Orders on the part of any Person, or the existence or possible existence of any default under this Agreement or any of the Agreed Orders, or to inspect the Collateral or other property (including, without limitation, the books and records) of any Person (subject to the express provisions of Section 2.02(b) of this Agreement with respect to acts or omissions by Subagents); (iv) shall not be responsible to any Lender for the due execution, legality, validity, enforceability, genuineness or sufficiency of this Agreement, the Agreed Orders, or any other instrument or document furnished pursuant hereto or thereto; and (v) shall not be deemed to have made any representation or warranty regarding the existence, value or collectibility of the Collateral, the existence, priority or perfection of the Additional Adequate Protection Liens or Retained Proceeds Liens, or any certificate or other

5

document delivered by any Debtor in connection therewith, nor shall the Collateral Agent be responsible or liable to the Lenders for any failure to monitor or maintain any portion of the Collateral.

SECTION 2.04    **_Reliance_**.  The Collateral Agent shall be entitled to rely upon any written notices, statements, certificates, orders or other documents or any telephone message believed by it in good faith to be genuine and correct and to have been signed, sent or made by the proper Person, and with respect to all matters pertaining to this Agreement or the Agreed Orders and its duties hereunder or thereunder, upon advice of counsel selected by it.

SECTION 2.05    **_Collateral Matters_**.

(a)    The Lenders irrevocably authorize the Collateral Agent (i) to release any Agent Lien as to any particular Mortgaged Vessel or Retained Proceeds Vessel upon either (x) the closing of any sale or disposition (but not any charter, charter hire or lease) of such Vessel pursuant to the terms of the Sale Order or any Subsequent Sale Order, or (y) any other sale or disposition (but not any charter, charter hire or lease) of such vessel free and clear of all claims and Liens pursuant to an order of the Bankruptcy Court, (ii) to release all the Retained Proceeds Liens after the Sale Period has expired and all Retained Proceeds Claims, Retained Proceeds Vessels Advances and Agent Claims (other than Agent Claims for contingent indemnification obligations which have not yet been asserted (orally or in writing) at such time and Agent Claims for fees, costs and expenses not yet accrued or arising as of such time) have been Discharged, (iii) to release all Additional Adequate Protection Liens after the Adequate Protection Claims Adjudication Date has passed and all Adequate Protection Claims and Agent Claims (other than Agent Claims for contingent indemnification obligations which have not yet been asserted (orally or in writing) at such time and Agent Claims for fees, costs and expenses not yet accrued or arising as of such time) have been Discharged and all Adequate Protection Reserves distributed, and (iv) to otherwise release any Agent Lien to the extent required to be released under the Agreed Orders, _provided, however,_ that as to clause (ii) or clause (iii) above, no amounts under Sections 2.06 or 2.07 of this Agreement (to wit, any unpaid Agent Claims) have been or will be incurred, and have not been paid or secured by a cash escrow.  Upon request by the Collateral Agent at any time, the Lenders will confirm in writing the Collateral Agent's authority to release any Agent Lien in any case provided for in this Section 2.05(a).  Upon the prior written request by any Debtor, the Collateral Agent shall be irrevocably authorized by the Lenders to execute such documents as may be necessary or reasonably requested by any Debtor to evidence the release of any Agent Lien which is permitted to be released pursuant to this Section 2.05(a); _provided, however,_ that (i) as between the Collateral Agent and the Lenders, the Collateral Agent shall not be required to execute any such document on terms which, in the Collateral Agent's reasonable opinion, would expose the Collateral Agent to liability, or create any obligations or entail any consequence other than the release of any applicable Lien without recourse or warranty, and (ii) any such release shall not in any manner discharge, affect or impair the remaining Agent Liens, any Retained Proceeds Claims, any Adequate Protection Claims, or any Lender Claims.  Notwithstanding anything to the contrary otherwise provided for in this Agreement, (A) upon any sale or disposition (but not any charter, charter hire or lease) of any Retained Proceeds Vessel, to the extent of any proceeds of such sale or disposition remaining after Discharge of all Retained Proceeds Claims, Retained Proceeds Vessels Advances and Agent Claims then outstanding, the Retained Proceeds Lien on any such excess proceeds shall be automatically released and terminated upon such indefeasible payment in

6

full of such Secured Obligations, and (B) upon any sale or disposition (but not any charter, charter hire or lease) of any Mortgaged Vessel, (i) the Additional Adequate Protection Lien shall continue on all remaining Mortgaged Vessels for the ratable benefit of the Adequate Protection Beneficiary Claimants who may thereafter obtain allowance of any Adequate Protection Claim(s) (and, in the case of the Collateral Agent, to secure future Agent Claims) until such time as the Adequate Protection Claims Adjudication Date has passed and all Adequate Protection Claims and Agent Claims have been Discharged, and (ii) to the extent any proceeds of such sale or disposition are turned over to the Debtors at a time when Adequate Protection Claims remain outstanding (including allowed Adequate Protection Claims and asserted Adequate Protection Claims for which Adequate Protection Reserves have not been funded in full), the Additional Adequate Protection Lien shall remain attached to such proceeds to the extent of such outstanding Adequate Protection Claims until such proceeds are disbursed by the Debtors in payment of allowed Adequate Protection Claims or, in the case of Adequate Protection Reserves, disbursed pursuant to Court Order.  For the avoidance of any doubt, nothing in this Agreement or in any Agreed Order shall give the Collateral Agent (in its capacity as such) any right, ability or authorization to release, or consent to the release, of any Senior Lien on any Mortgaged Vessel (although nothing in the foregoing shall apply to or impair the rights of the Collateral Agent with respect to any Senior Liens held by the Collateral Agent in its capacity as a Lender).

(b)     No Lender shall have any right individually to realize upon any of the Collateral by any exercise of rights or remedies under any Agent Lien, it being understood and agreed that all powers, rights and remedies under such Liens may be exercised solely by the Collateral Agent for the ratable benefit of the Beneficiary Claimants, in accordance with the terms hereof and the Agreed Orders.  In the event of a foreclosure by the Collateral Agent on any of the Collateral pursuant to a public or private sale, the Collateral Agent or any Lender may be the purchaser of any or all of such Collateral at any such sale.  For the avoidance of doubt, following the Sale Period any Senior Lender shall have the right to individually exercise upon any Mortgaged Vessel subject to such Senior Lender's Senior Lien any rights or remedies under any the otherwise applicable rules and provisions of applicable laws and any applicable Lender Financing Documents.

(c)     The Collateral Agent shall have no obligation whatsoever to any Lender (i) to assure that the Collateral exists or is owned by the Debtors or is cared for, protected or insured or has been encumbered, or that the Agent Liens have been properly or sufficiently or lawfully created, perfected, protected or enforced or are entitled to any particular priority, other than the obligation to duly file/record a New Vessel Mortgage, in substantially the same form as that approved in the Agreed Orders, with respect to each Retained Proceeds Vessel with the appropriate governmental registry in the "flag state" for such Retained Proceeds Vessel, or (ii) to exercise at all or in any particular manner or under any duty of care, disclosure or fidelity, or to continue exercising, any of the rights, authorities and powers granted or available to the Collateral Agent in this Section 2.05 or in any Agreed Orders or subsequent Court Orders, it being understood and agreed that in respect of the Collateral, or any act, omission or event related thereto, the Collateral Agent may act in any manner it may deem appropriate, in its sole discretion, given the Collateral Agent's own interest in the Collateral as one of the Lenders, and that the Collateral Agent shall have no duty or liability whatsoever to any other Lender, except as otherwise provided in this Agreement.

7

(d)      Notwithstanding anything to the contrary provided for in this Agreement, and for the avoidance of doubt, the Collateral Agent shall have no duty, obligation, discretionary power, responsibility or authority to analyze, assert, establish, pursue, preserve, protect or obtain allowance of and enforce any Adequate Protection Claim, and each Lender shall be solely responsible for all such actions with respect to any Adequate Protection Claim that any Lender may or may not have from time to time (provided that nothing contained in the foregoing shall affect the Collateral Agent's rights, remedies, duties, undertakings and obligations as a collateral agent with respect to the Additional Adequate Protection Liens to be held and enforced by the Collateral Agent for the ratable benefit of the Adequate Protection Beneficiary Claimants that at any time have obtained, or might in the future obtain, allowance of or establishment of an Adequate Protection Reserve for an Adequate Protection Claim, as otherwise provided for in and in accordance with the provisions of this Agreement and the Agreed Orders).

SECTION 2.06      ***Agency Expenses; Agency Fees***.

(a)      Attached hereto as Exhibit 2.06 is a schedule of the fees to be charged by the Collateral Agent to, and paid by, the Debtors in connection with the services to be provided by the Collateral Agent under this Agreement.  In addition, the Collateral Agent shall be reimbursed by the Debtors for its reasonable costs and expenses incurred in performing its duties as the Collateral Agent hereunder and under the Agreed Orders (including but not limited to reasonable counsel fees, reimbursement of reasonable counsel expenses, recording fees, and taxes or stamps in connection therewith), including all such incurred in connection with the preparation, negotiation among the parties, execution, delivery and (as applicable) filing and recording of this Agreement and any ship mortgage(s)/fleet mortgage(s) on any Retained Proceeds Vessels; provided that the costs and expenses for which Collateral Agent shall be reimbursed under this sentence shall not exceed $100,000 in any twelve (12) month period (the "***Ordinary Course Costs and Expenses Limitation***").  No more often than monthly, the Collateral Agent shall send to the Debtors, with a copy to all Lenders, and prior to the Bankruptcy Case Termination, also to the Committee and the United States trustee, an invoice for fees and expenses hereunder, which may be redacted and/or sealed and impounded by Court Order.  All amounts in respect of such fees, costs and expenses payable under this Section 2.06(a) shall be paid by the Debtors after twenty (20) days of receipt of such invoice, *provided, however,* that prior to the Bankruptcy Case Termination, if the Debtors, or the Committee and/or the United States trustee, dispute any item contained in any such invoice, they shall notify the Collateral Agent in writing before the due date for payment stating the grounds for and amount in dispute, and the Debtors shall pay the invoice in full except for such disputed amount and shall be excused from paying such disputed amount pending a further Court Order.  The Ordinary Course Costs and Expenses Limitation shall not apply to any reasonable costs and expenses reasonably incurred by Collateral Agent (i) following any default by the Debtors under the Agreed Orders or any New Vessel Mortgage, (ii) after Bankruptcy Case Termination has occurred, or (iii) in connection with a motion for relief from the automatic stay as to which a Court Order is entered lifting such stay (all such costs and expenses, the "***Enforcement Costs and Expenses***").  If Bankruptcy Case Termination has not occurred, the Debtors shall not be required to pay Enforcement Costs and Expenses except as required by a Court Order obtained by the Collateral Agent, *provided* that the Collateral Agent reserves the right to request the redaction and/or impoundment of any portion of any motion, objection or Court Order concerning any request by the Collateral Agent for any Enforcement Costs and Expenses. If Bankruptcy Case Termination has occurred, all amounts set forth in any invoice to the Debtors

8

for the Collateral Agent's reasonable fees or expenses reasonably incurred shall be due and payable on the twentieth (20th) day following Debtors' receipt of such invoice and without any requirement for a Court Order.  To the extent that any such obligation under this Section 2.06, other than any Agency Fees, is not paid by the Debtors (or, prior to the Bankruptcy Case Termination, the Debtors' estates) within thirty (30) days after the same shall be due and payable in accordance with the foregoing, the Lenders shall on a pro rata basis  (as determined by the respective principal amounts of the Lender Claims owing to the respective Lenders on the Petition Date) pay such amount to the Collateral Agent whereupon the Lenders shall be subrogated to the Collateral Agent's rights against the Debtors, the Debtors' estates and the Collateral, as applicable.  For the avoidance of doubt, following Bankruptcy Case Termination no Bankruptcy Court approval in connection with any enforcement action under this Agreement, the New Vessel Mortgages, or otherwise, or in connection with Enforcement Costs and Expenses, is required.

(b)    Reserved.

(c)    Notwithstanding any other provision of this Agreement, the Retained Proceeds Liens and the Additional Adequate Protection Liens shall secure (in addition to the Retained Proceeds Claims and Adequate Protection Claims respectively) all amounts due under this Section 2.06 and Section 2.07 of this Agreement, subject to the provisions of Section 2.05(a) of this Agreement.  Any such amounts not paid by the Debtors when due shall be payable to the Collateral Agent from the proceeds of any sale or other disposition or liquidation (excluding any lease or charter or charter hire) of any Collateral as provided for in Sections 3.01 or 4.01 hereof, as applicable; provided that, in the case of any such sale or other disposition or liquidation occurring prior to the Bankruptcy Case Termination, any fees, costs or expenses being disputed by the Debtors, the Committee or the United States trustee in accordance with the procedures set forth in Section 2.06(a) above shall be held in reserve rather than paid from the proceeds of such sale, disposition or liquidation unless such disputed amount is deemed to be owing and payable to the Collateral Agent under a further Court Order.

(d)    Reserved.

(e)    The obligations of the Debtors under this Section 2.06 shall survive the Discharge of the Secured Obligations and the termination of this Agreement.

SECTION 2.07    **_Indemnification_**.  The Debtors shall, and by their respective signatures to this Agreement do, jointly and severally indemnify the Collateral Agent and its respective past, present and future directors, officers, employees, attorneys and other agents (collectively, "**_Indemnitees_**") from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, advances or disbursements of any kind or nature whatsoever which may be imposed on, incurred by, or asserted against the Collateral Agent, in its capacity as the Collateral Agent (or against any other Indemnitees in connection with the Collateral Agent in its capacity as the Collateral Agent), except for any actions taken or any such amounts incurred or paid by reason of gross negligence or willful misconduct of the Collateral Agent or other Indemnitee as determined by a final non-appealable judgment of a court of competent jurisdiction; provided that, with respect to any such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, advances or disbursements that shall arise out of any event or circumstance first occurring prior to the Bankruptcy Case Termination,

9

the Debtors shall only be liable for such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, advances or disbursements to the extent they are asserted solely by the Debtors.  Any such indemnification obligations shall be paid by the Debtors to the Collateral Agent on behalf of the applicable Indemnitees upon written demand therefor by Collateral Agent given to Debtors with a copy to the Lenders, and, prior to the Bankruptcy Case Termination, also to the Committee and the United States trustee, provided that prior to the Bankruptcy Case Termination, payment by the Debtors of any such indemnification obligations shall be subject to a Court Order approving and allowing same (provided that, the Collateral Agent reserves the right to request the redaction and/or impoundment of any portion of any motion or objection filed or Court Order entered in connection with any request by the Collateral Agent for any such indemnification).  To the extent that any such obligation is not paid by the Debtors (or, prior to the Bankruptcy Case Termination, the Debtors' estates) within thirty (30) days after the Collateral Agent's demand therefor, and provided that the Collateral Agent does not determine in its discretion that such obligation is likely to be paid in full from proceeds of Collateral within the next ninety (90) days, the Lenders shall on a pro rata basis (as determined by the respective principal amounts of the Lender Claims owing to the respective Lenders on the Petition Date) pay such amount (to the same extent of the Debtors' liability therefor as provided for in this paragraph above) to the Collateral Agent upon notice from the Collateral Agent, whereupon the Lenders shall be subrogated to the Collateral Agent's rights against the Debtors, the Debtors' estates and the Collateral (if any), as applicable; provided, however, that Rockland Trust Company shall be deemed to have paid its pro rata share as one of the Lenders of such indemnity payment to Rockland Trust Company as Collateral Agent by making the appropriate book entries (with any cash payment made by Rockland Trust Company as Collateral Agent to any third-party to include a cash payment made in respect of such share of Rockland Trust Company as Lender).  Any amounts received from the Debtors as reimbursement for amounts already reimbursed by the Lenders shall be paid to the Lenders in accordance with the terms hereof.  The obligations of the Debtors and the Lenders under this Section 2.07 shall survive the Discharge of the Secured Obligations and the termination of this Agreement; provided that, if at any time: (i) all of the Secured Obligations shall have been Discharged, and (ii) either (A) a chapter 11 plan shall have been confirmed in the Bankruptcy Case and the Court Order confirming such plan shall provide for the exculpation of the Collateral Agent in its capacity as such, or (B) the Debtors shall otherwise have obtained (upon reasonable prior written notice to the Collateral Agent) a final, non-appealable order of any court of competent jurisdiction authorizing the release of the Debtors' and the Debtors' estates' claims against the Collateral Agent subject to indemnity hereunder and related relief and signed and delivered such release to the Collateral Agent, or (C) a chapter 11 plan shall have been confirmed in the Bankruptcy Case, the Effective Date of the plan shall have occurred, and the Debtors shall have obtained, by final nonappealable order of any court of competent jurisdiction, a release of the Debtors' and Debtors' estates' claims against the Collateral Agent and signed and delivered such release to the Collateral Agent, then the obligations of the Debtors under this Section 2.07 shall terminate.

SECTION 2.08  ***Agent Individually***.  With respect to (A) its own Lender Claims, (B) its own Retained Proceeds Claims and Adequate Protection Claims (both as held in its capacity as a Lender), and (C) its own beneficial interest on account thereof in the Additional Adequate Protection Liens and the Retained Proceeds Liens, respectively, the Collateral Agent shall have and may exercise the same rights and powers hereunder as if it were not the Collateral Agent and is subject to the same obligations and liabilities as and to the extent set forth in this Agreement for

any other Lender.  The terms "Lenders," "Required Lenders" and any similar terms shall include the Collateral Agent in its individual capacity as a Lender.  The Collateral Agent and any affiliates may accept deposits from, lend money to, and generally engage in any kind of banking, trust or other business with any Debtor as if it were not acting as the Collateral Agent pursuant hereto, without any duty to account to the other Lenders with respect to such depositary, lending, banking, trust or other business.  In addition, the Collateral Agent may engage the same counsel to advise it with respect to its duties as the Collateral Agent under this Agreement, the New Vessel Mortgages and any related agreements and documents and with respect to its own Lender Claims, its own Retained Proceeds Claims and its own Adequate Protection Claims (all as held in its capacity as a Lender) and its own beneficial interest on account thereof in the Additional Adequate Protection Liens and the Retained Proceeds Liens.

SECTION 2.09    ***Successor Collateral Agent***.  The Collateral Agent may at any time give at least thirty (30) days' prior written notice of its resignation to the Lenders, the Committee and the Debtors, *provided* that, if a successor Collateral Agent assumes all of the resigning Collateral Agent's duties hereunder, such resigning Collateral Agent may provide notice on the effective date of its resignation.  Upon receipt of any such notice of resignation, the Required Lenders shall have the right to appoint a successor Collateral Agent.  If no such successor Collateral Agent shall have been so appointed by the Required Lenders and shall have accepted such appointment within thirty (30) days after the resigning Collateral Agent gives notice of its resignation (or such earlier day as shall be agreed by the Required Lenders) (the "***Resignation Effective Date***"), then the resigning Collateral Agent shall, on behalf of the Lenders, appoint a successor Collateral Agent from among the remaining Lenders or another financial institution that the Collateral Agent reasonably deems capable of carrying out the duties set forth in this Agreement, subject to such Lender and/or such replacement financial institution accepting such appointment.  Whether or not a successor Collateral Agent has been appointed, such resignation shall become effective in accordance with such notice on the Resignation Effective Date.  Prior to the Bankruptcy Case Termination, any Lender may request, by motion to the Bankruptcy Court, and any other Lender may oppose, the removal of the Collateral Agent for cause and appointment of a successor Collateral Agent that has, at the time of such motion, accepted such appointment subject only to the granting of such motion by a Court Order, and if such motion shall be so granted pursuant to a Court Order, the Resignation Effective Date shall be deemed to have occurred with respect to the Collateral Agent removed by the Required Lenders on the date specified in such Court Order.  Appointment of a successor Collateral Agent shall be limited to an existing Lender, absent the prior written consent of the Debtors, which consent shall not be unreasonably withheld.With effect from the Resignation Effective Date, (i) the resigning/removed Collateral Agent shall be discharged from its duties and obligations hereunder and under the Agreed Orders, and (ii) all payments, communications and determinations provided to be made by, to or through such resigning/removed Collateral Agent shall instead be made by or to each Lender directly, until such time, if any, as there is a successor Collateral Agent as provided for above; underlined provided that, in connection with any resignation (but not removal) of any Collateral Agent, if no new Collateral Agent shall have been appointed and accepted such appointment by the Resignation Effective Date, the resigning Collateral Agent shall continue to hold the Agent Liens and disburse any proceeds of any Agent Liens received by it in accordance with Sections 3.01 and 4.01 of this Agreement (but shall have no other duties or obligations of any kind whatsoever under this Agreement) for the ratable benefit of the Beneficiary Claimants until such time as the Required Lenders shall have appointed a successor Collateral Agent that has accepted such appointment

11

(and during the time from the Resignation Effective Date until such appointment and acceptance of a successor Collateral Agent (x) the provisions of this Article, specifically including without limitation Section 2.07 hereof, shall continue in effect for the benefit of such resigning Collateral Agent in respect of any actions taken or omitted, and (y) the Collateral Agent shall continue to receive and be entitled to the Agency Fees, and the Lenders, on a pro rata basis (as determined by the respective principal amounts of the Lender Claims owing to the respective Lenders on the Petition Date) shall be responsible for the payment thereof upon any failure of the Debtors to pay such Agency Fees within thirty (30) days of the date any such Agency Fees become due and payable hereunder).  Upon the acceptance of a successor Collateral Agent's appointment as Collateral Agent hereunder, such successor shall succeed to and become vested with all of the rights, powers, privileges and duties of the resigning Collateral Agent.  After the resigning/removed Collateral Agent's resignation/removal takes effect, the provisions of this Article shall continue in effect for the benefit of such resigning/removed Collateral Agent in respect of any actions taken or omitted, and any unpaid fees, expenses or other obligations incurred, while acting as the Collateral Agent.  The Agency Fees payable to a successor Collateral Agent shall be the same as those payable to its predecessor.

SECTION 2.10     *__No Fiduciary Relationship__*.

(a)     Except as provided under Sections 3.01(e) and 4.01(d) hereof, the use of the term "agent" or "trustee" (or any other similar term) in this Agreement or in any Agreed Order with reference to the Collateral Agent is not intended to establish or reflect any fiduciary or other obligations arising under agency doctrine of any applicable law.  Instead such term is used as a matter of market custom, and is intended to create or reflect only an administrative relationship between contracting parties.

(b)     Each Lender acknowledges that it has, independently and without reliance upon the Collateral Agent or counsel to the Collateral Agent, and based upon the advice of such Lender's own counsel and on such documents and information as such Lender has deemed appropriate, made its own decision to enter into this Agreement.  In addition, each Lender acknowledges that it will, independently and without reliance upon the Collateral Agent or counsel to the Collateral Agent, and based upon the advice of such Lender's own counsel and on such documents and information as such Lender shall from time to time deem appropriate, continue to make its own decisions in taking or not taking any action with respect to this Agreement and any other agreements or documents relating thereto.

SECTION 2.11     *__Conduct of Business by the Lenders and Collateral Agent__*.  No provision of this Agreement will: (a) interfere with the right of any Lender or the Collateral Agent to arrange its affairs (tax or otherwise) in whatever manner it thinks fit; (b) oblige any Lender or the Collateral Agent to investigate or claim any credit, relief, remission or repayment available to it or the extent, order and manner of any claim; or (c) oblige any Lender or the Collateral Agent to disclose any information relating to its affairs (tax or otherwise) or any computations in respect of taxes.

SECTION 2.12     *__Retained Proceeds Vessels Advances__*.  At any time and from time to time, any one or more of the Lenders holding any then-outstanding Retained Proceeds Claims (the "***Proposing Lenders***") may, by written notice given to each other Lender and the

149245.06501/106149789V.15

Collateral Agent (each a "**_Retained Proceeds Vessels Advances Notice_**") and, unless Bankruptcy Case Termination has occurred, by motion filed with the Bankruptcy Court (which may be filed on an emergency basis if the Proposing Lenders so elect in their reasonable discretion under emergency circumstances) seeking authority to advance funds (a "**_Retained Proceeds Vessels Advance Motion_**"), on notice to the Debtors, the Committee, the United States trustee and other appropriate interested parties, propose to make and fund such disbursements and advances ("**_Retained Proceeds Vessels Advances_**") which such Proposing Lender(s), each in its commercially reasonable discretion, deems necessary or desirable to preserve, protect, prepare for sale or lease or dispose of any Retained Proceeds Vessel, in order to enhance the likelihood of maximizing the amount of repayment of then-outstanding Retained Proceeds Claims of all Lenders.  Such Proposing Lender(s) shall be deemed to have been authorized to fund any such proposed Retained Proceeds Vessels Advances in the amounts and for the purposes described in the applicable Retained Proceeds Vessels Advances Notice unless, no later than three (3) Business Days after the giving of such Retained Proceeds Vessels Advances Notice, the Lenders holding not less than seventy-five percent (75%) of the then-outstanding allowed amount of the Retained Proceeds Claims (including, for purposes of this calculation, the Proposing Lender(s) providing the Retained Proceeds Vessels Advances Notice) shall give written notice to the Proposing Lenders objecting to the proposed Retained Proceeds Vessels Advances, and provided that, if Bankruptcy Case Termination has not occurred, a Court Order has been entered granting the Retained Proceeds Vessels Advance Motion.  If a Retained Proceeds Vessels Advance is approved pursuant to the provisions of this paragraph 2.12, the Proposing Lender(s) may provide to the Collateral Agent immediately available funds in the amount of the Retained Proceeds Vessels Advances proposed in the applicable Retained Proceeds Vessels Advances Notice, and, upon receipt thereof, the Collateral Agent shall promptly use and disburse such funds representing such Retained Proceeds Vessels Advances for the purposes proposed in the Retained Proceeds Vessels Advances Notice. Any such Retained Proceeds Vessels Advances so funded shall be secured by the Retained Proceeds Collateral and shall constitute Secured Obligations. Upon any sale or other disposition or liquidation (excluding any lease or charter or charter hire) of any Retained Proceeds Collateral, any and all Retained Proceeds Vessels Advances outstanding at such time shall be paid from the proceeds of such sale or other disposition or liquidation (excluding any lease or charter or charter hire) as provided for in Section 4.01 hereof (regardless of whether any such Retained Proceeds Vessels Advance was made in connection with the particular Retained Proceeds Vessel that is the subject of such sale, disposition or liquidation) in accordance with the provisions of Section 4.01 hereof, and until so paid any such Retained Proceeds Vessels Advance shall bear interest at a fluctuating per annum rate of interest equal to the Wall Street Journal prime rate of interest in effect from time to time (which interest shall also be due and payable upon and from the proceeds of any such sale, disposition or liquidation as provided for in Section 4.01 hereof).

ARTICLE III

**Priorities and Agreements with Respect to Additional Adequate Protection Collateral**

SECTION 3.01    **_Payment of Claims_**.

(a) Any proceeds received by the Collateral Agent in respect of the Additional Adequate Protection Liens and/or the Adequate Protection Beneficiary Claims secured thereby from any sale or other disposition or liquidation (excluding any lease or charter or charter hire) of

13

any Additional Adequate Protection Collateral, including pursuant to the Sale Order or any Subsequent Sale Order, shall be distributed or applied by the Collateral Agent as follows:

FIRST, to the Collateral Agent for application to all outstanding Agent Claims accrued and payable at the time of such distribution until Discharge thereof; and

SECOND, in accordance with the terms of the Cash Collateral Order.

(b)　　The priorities set forth above shall not be altered or otherwise affected by the release of any Collateral or of any guarantees for any Lender Claims or by any action that any Lender holding a Senior Lien, the Collateral Agent or any other secured party may take or fail to take in respect of any Collateral.

(c)　　Notwithstanding the date, time, method, manner or order of grant, attachment or perfection of any Senior Lien on any Additional Adequate Protection Collateral or of the Additional Adequate Protection Liens on the Additional Adequate Protection Collateral, and notwithstanding any provision of the Uniform Commercial Code of any jurisdiction, or any other applicable law, any Lender Financing Documents, or any defect or deficiencies in, or failure to perfect any such Senior Lien, or any other circumstance whatsoever, (x) the Senior Liens on the Additional Adequate Protection Collateral securing any of the Lender Claims will rank senior to the Additional Adequate Protection Liens on the Additional Adequate Protection Collateral securing the Adequate Protection Claims and the Agent Claims, and (y) the provisions of, and priorities as to the cash proceeds of any sale or other disposition or liquidation (excluding any lease or charter or charter hire) of any Additional Adequate Protection Collateral as set forth in Section 3.01(a) or (b) above shall apply; however, for the avoidance of doubt, nothing in the foregoing or otherwise in this Agreement shall be construed to alter the relative rights, remedies or priorities of the Senior Liens as to any particular Mortgaged Vessels, which such rights, remedies and priorities shall be governed by the otherwise applicable rules and provisions of applicable laws and any applicable Existing Intercreditor Agreements.

(d)　　For the avoidance of doubt, the application of the sharing provisions of the Sale Order as it relates to Section 3.01 of this Agreement or any similar provision of any Subsequent Sale Order as it relates to Section 3.01 of this Agreement is only effective during the term of the Sale Order or any Subsequent Sale Order to proceeds subject to such Orders during such relevant terms.

(e)　　Notwithstanding anything to the contrary provided for in this Agreement, from the time the Collateral Agent receives any cash proceeds of any sale or other disposition or liquidation (excluding any lease or charter or charter hire) of any Additional Adequate Protection Collateral until the time the Collateral Agent shall disburse such proceeds in accordance with the provisions of Section 3.01(a) above, the Collateral Agent shall hold such proceeds in trust as a trustee for the Adequate Protection Beneficiary Claimants with respect to their respective interests in such proceeds as provided for in this Agreement and in the Agreed Orders.

SECTION 3.02　　***Actions With Respect to Collateral; Prohibition on Contesting Liens***.

14

(a)     As to any particular Mortgaged Vessel, until such time as all Senior Claims as to such Mortgaged Vessel have been Discharged, the Collateral Agent shall not, without the prior written consent of the applicable Senior Lender(s), (i) commence any judicial or nonjudicial foreclosure proceedings with respect to, or (ii) seek to have a trustee, receiver, liquidator or similar official appointed for or over, or (iii) file any motion or otherwise seek relief from the automatic stay in the Bankruptcy Case or from any similar stay in any other Insolvency Proceeding with respect to, or (iv) attempt any action to take possession of, exercise any right, remedy or power with respect to, or otherwise take any action to enforce its interest in or realize upon, or take any other action available to it in respect of, such Mortgaged Vessel, it being agreed that (A) only the Lender(s) holding the Senior Lien(s) on such Mortgaged Vessel shall be entitled to take any such actions or exercise any such remedies with respect to such Mortgaged Vessel (subject as between themselves to otherwise applicable rules and provisions of applicable laws and any applicable Existing Intercreditor Agreement), and (B) notwithstanding the foregoing, the Collateral Agent may take Permitted Remedies.  The Collateral Agent will not contest, protest or object to any foreclosure proceeding or action brought by the applicable Senior Lender as to any particular Mortgaged Vessel or any other exercise by such Senior Lender of any rights and remedies relating to such Mortgaged Vessel.

(b)     The Collateral Agent and each Lender agrees that it will not (and waives any right to) contest or support any other Person in contesting, in any proceeding (including any Insolvency Proceeding), the perfection, priority, validity or enforceability of any Senior Lien, or the provisions of this Agreement; *provided* that nothing in this Agreement or the Agreed Orders shall be construed to prevent or impair the rights of any of any of the Lenders to enforce this Agreement or the Agreed Orders against any Person bound to the same.

SECTION 3.03     ***No Duties of Senior Lenders; Provision of Notice***.

(a)     No Senior Lender shall have any duties or other obligations to the Collateral Agent with respect to any Mortgaged Vessel, other than to turn over to the Collateral Agent any proceeds of any such Mortgaged Vessel in excess of its Lender Claim as to such Mortgaged Vessel as required and provided for the Agreed Orders.  In furtherance of the foregoing, the Collateral Agent acknowledges and agrees that until all of the Lender Claim(s) secured by Senior Lien(s) on any particular Mortgaged Vessel shall have been Discharged, each applicable Senior Lender shall be entitled, for its own benefit, and subject to any applicable Existing Intercreditor Agreement(s), to sell, transfer or otherwise dispose of or deal with such Mortgaged Vessel as provided in this Agreement and in the applicable Lender Financing Documents without regard to any rights to which the Collateral Agent would otherwise be entitled as a result of the Additional Adequate Protection Lien.  Without limiting the foregoing, the Collateral Agent agrees that no Senior Lender shall have any duty or obligation first to marshal or realize upon any Mortgaged Vessel or any other collateral securing the Lender Claim of such Senior Lender), or to sell, dispose of or otherwise liquidate all or any Mortgaged Vessel or any other collateral securing its Lender Claim, in any manner that would maximize the return to the Collateral Agent, notwithstanding that the order and timing of any such realization, sale, disposition or liquidation may affect the amount of proceeds actually received by the Collateral Agent from such realization, sale, disposition or liquidation.  The Collateral Agent waives any claim it may now or hereafter have against any Senior Lender (or its past, present and future directors, officers, employees, attorneys, representatives, and other agents) arising out of (i) any actions which such Senior Lender takes or

15

omits to take (including, actions with respect to the creation, perfection or continuation of any Senior Lien held by it, actions with respect to the foreclosure upon, sale, release or depreciation of, or failure to realize upon, any of the Mortgaged Vessels upon which it holds any Senior Lien, and actions with respect to the collection of any claim for all or any part of any of its Lender Claims from any account debtor, guarantor or any other party) in accordance with the applicable Lender Financing Documents or to the collection of any of its Lender Claims or the valuation, use, protection or release of any security for any of its Lender Claims, or (ii) any election by any Senior Lender in any proceeding instituted under the Bankruptcy Code (including the Bankruptcy Case) of the application of section 1111(b) of the Bankruptcy Code.

SECTION 3.04   *__No Interference; Payment Over; Avoidance Issues__*.

(a)   Subject to Section 3.01 of this Agreement, the Collateral Agent (i) shall not take or cause to be taken any action the purpose or effect of which is, or could be, to make Additional Adequate Protection Liens *pari passu* with, or to give Additional Adequate Protection Liens any preference or priority relative to, any Senior Lien, (ii) shall not challenge or question in in the Bankruptcy Case or in any other proceeding the validity or enforceability of any Lender Financing Document, the amount or validity of any Lender Claim, or the amount, validity, attachment, perfection or priority of any Senior Lien on any Mortgaged Vessel under any Lender Financing Documents, or the validity or enforceability of the priorities, rights or duties established by or other provisions of this Agreement, (iii) shall not take or cause to be taken any action the purpose or intent of which is, or could be, to interfere, hinder or delay, in any manner, whether by judicial proceedings or otherwise, any sale, transfer or other disposition of any Mortgaged Vessel by the applicable Senior Lender, (iv) shall have no right to (A) direct any Senior Lender to exercise or to refrain from exercising any right, remedy or power with respect to any Mortgaged Vessel or (B) consent to the exercise or the refraining from exercising by any Senior Lender of any right, remedy or power with respect to any Mortgaged Vessel, (v) shall not institute any suit or assert in the Bankruptcy Case or in any other proceeding any claim against any Senior Lender seeking damages from or other relief by way of specific performance, injunctive relief, instructions or otherwise with respect to, and no Senior Lender shall be liable for, any action taken or omitted to be taken by such Senior Lender with respect to, any Mortgaged Vessel, (vi) shall not seek any marshaling of Liens, and waives any right, to have any Mortgaged Vessel or any Senior Lien thereon marshaled upon any foreclosure, liquidation or other disposition of such Mortgaged Vessel, and (vii) shall not attempt, directly or indirectly, whether by judicial proceedings or otherwise, to challenge the enforceability of any provision of this Agreement; *provided* that nothing in this Agreement shall be construed to prevent or impair the rights of the Collateral Agent or any Lender to enforce this Agreement.

(b)   If the Collateral Agent shall obtain possession of any particular Mortgaged Vessel or shall realize any proceeds or payment in respect of any such Mortgaged Vessel, or if the holder of an Adequate Protection Claim shall receive any such proceeds or payment, at any time prior to the Discharge of any Lender Claim secured by a Senior Lien on such Mortgaged Vessel, then the Collateral Agent or Adequate Protection Claim holder shall hold such Mortgaged Vessel, proceeds or payment in trust for the applicable Senior Lender and transfer such Mortgaged Vessel, proceeds or payment, as the case may be, to the applicable Senior Lender reasonably promptly after any demand by the Senior Lender accompanied by evidence that the applicable Lender Claim has not been Discharged.  If the Collateral Agent or any holder of an Adequate Protection Claim

149245.06501/106149789V.15

has received payment from proceeds of a particular Mortgaged Vessel and at any time receives notice or obtains actual knowledge that all or part of any payment with respect to any Lender Claim secured by a Senior Lien on such Mortgaged Vessel has been rescinded for any reason whatsoever, the Collateral Agent or such Adequate Protection Claim holder shall promptly pay over to the applicable Senior Lender the payment or proceeds in respect of such Mortgaged Vessel received by it and (in the case of the Collateral Agent) then in its possession or under its control, and the provisions set forth in this Agreement shall be reinstated as if such payment had not been made, until the Discharge of such Lender Claim.

SECTION 3.05    *__Automatic Release of Junior Liens__*.

(a)    As between the Collateral Agent and the Lenders holding Senior Liens on the Mortgaged Vessels, in the event of a sale, transfer or other disposition of any particular Mortgaged Vessel (x) in connection with the foreclosure upon or other exercise of rights and remedies with respect to such Mortgaged Vessel that results in the release of all Senior Lien(s) thereon, or (y) by the Debtors in a transaction permitted under the applicable Lender Financing Documents and/or pursuant to any Court Order, and to which the applicable Senior Lender(s) (after taking into account any applicable Existing Intercreditor Agreement(s)) have consented, the Additional Adequate Protection Lien on such Mortgaged Vessel shall be automatically released and discharged as and when, but only to the extent, the Senior Lien(s) on such Mortgaged Vessel are released and discharged; *provided* that, notwithstanding the foregoing, the Additional Adequate Protection Lien shall continue in any and all proceeds of such a sale, transfer or other disposition that remain after Discharge of the applicable Lender Claim(s) secured by Senior Lien(s) on such Mortgaged Vessel.

(b)    The Collateral Agent shall promptly execute and deliver (with any expense governed by Section 2.06 of this Agreement) all such instruments, releases, terminations statements or other documents as shall reasonably be requested by any applicable Senior Lender to evidence and confirm any release of Additional Adequate Protection Liens provided for in this Section.  Solely in the event and to the extent that the Collateral Agent fails to comply with any request made under the foregoing sentence and in accordance with the terms of this Agreement within five (5) Business Days after the request of a Senior Lender, the Collateral Agent appoints such Senior Lender and any officer or duly authorized Person of such Senior Lender, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power of attorney in the place and stead of the Collateral Agent, and in the name of the Collateral Agent or in such Senior Lender's own name, from time to time, as determined in such Senior Lender's reasonable discretion, for the purposes of carrying out the terms of this Section 3.05, to take any and all appropriate action and to execute and deliver any and all instruments, releases, terminations statements or other documents as may be necessary or desirable to accomplish the purposes of this Section 3.05, including, without limitation, authorizing, executing and/or delivering any financing or termination statements, releases, endorsements, assignments or other documents or instruments of transfer (which appointment, being coupled with an interest, is irrevocable), all without representation, warranty or recourse, express or implied.  The Collateral Agent hereby ratifies all actions such attorneys-in-fact shall take or cause to be taken under this Section 3.05(b).

SECTION 3.06    *__Certain Agreements With Respect to Insolvency Proceedings__*.

17

(a)     This Agreement shall continue in full force and effect notwithstanding the continuation, conversion to Chapter 7 of the Bankruptcy Code and/or the dismissal of the Bankruptcy Case, the appointment of a trustee or an examiner with expanded powers in the Bankruptcy Case, and/or the commencement of any other Insolvency Proceeding by or against any of the Debtors.  The provisions of this Agreement are intended to be and shall be enforceable under section 510(a) of the Bankruptcy Code

(b)     The Collateral Agent shall not object to or otherwise contest: (i) any motion for relief from the automatic stay or from any injunction against foreclosure or enforcement of any Senior Lien made by the applicable Senior Lender; (ii) any lawful exercise by any Senior Lender of the right to credit bid its applicable Lender Claim secured by a Senior Lien on any Mortgaged Vessel in any sale of such Mortgaged Vessel or any foreclosure of its Senior Lien on any Mortgaged Vessel; (iii) any other request for judicial relief made in any court by any applicable Senior Lender relating to the lawful enforcement of any Senior Lien on any Mortgaged Vessel; or (iv) any sale or other disposition of any Mortgaged Vessel under section 363 of the Bankruptcy Code or any other provision of the Bankruptcy Code if the applicable Senior Lender shall have consented thereto.

(c)     The Collateral Agent shall not object to and or otherwise contest (or support any other Person objecting to or otherwise contesting) or challenge (or support any other Person challenging): (i) any request by any Senior Lender for adequate protection with respect to any Mortgaged Vessel securing the applicable Lender Claim of such Senior Lender secured by a Senior Lien on such Mortgaged Vessel, (ii) any objection by any Senior Lender to any motion, relief, action or proceeding based on such Senior Lender claiming a lack of adequate protection with respect to its Senior Lien, or (iii) any claim by any Senior Lender for allowance of its Lender Claim, including, without limitation, any post-petition interest or any fees, costs or charges provided by such Senior Lender's Lender Financing Documents to the extent of the value of its Senior Lien.

SECTION 3.07   ***Primacy of Existing Intercreditor Agreements***.   For the avoidance of doubt, (a) this Agreement shall have no effect on any Existing Intercreditor Agreement, (b) Existing Intercreditor Agreements shall remain fully enforceable among the parties thereto, and (c) the rights of the Collateral Agent shall be subject to the terms of any and all Existing Intercreditor Agreements.

ARTICLE IV

**Priorities with Respect to Retained Proceeds Collateral**

SECTION 4.01    ***Priority of Claims***.

(a)     The Lender(s)' share, as provided for in the Sale Order, of all cash proceeds of any sale or other disposition or liquidation (excluding any lease or charter or charter hire) of any Retained Proceeds Collateral shall be distributed and applied as follows:

FIRST, to the holder of any Lien senior to the Retained Proceeds Lien as of the Petition Date, for application to the claim secured by such Lien until Discharge

18

of such claim, or (to the extent and in such amount ordered by the Bankruptcy Court) in escrow for the benefit of such holder;

SECOND, to the Collateral Agent for application to all outstanding Agent Claims accrued and payable at the time of such distribution until Discharge thereof; and

THIRD, pursuant to the terms of the Sale Order.

(b)    The priorities set forth above shall apply notwithstanding the date, time, method, manner or order of grant, attachment or perfection of any Lien on Retained Proceeds Vessels, and notwithstanding any defect or deficiencies in, or failure to perfect any Retained Proceeds Lien, or any other circumstance whatsoever.

(c)    For the avoidance of doubt, the application of the sharing provisions of the Sale Order as it relates to Section 4.01 of this Agreement or any similar provision of any Subsequent Sale Order as it relates to Section 4.01 of this Agreement is only effective during the term of the Sale Order or any Subsequent Sale Order to proceeds subject to such Orders during such relevant terms.

(d)    Notwithstanding anything to the contrary provided for in this Agreement, from the time the Collateral Agent receives any cash proceeds of any sale or other disposition or liquidation (excluding any lease or charter or charter hire) of any Retained Proceeds Collateral until the time the Collateral Agent shall disburse such proceeds in accordance with the provisions of Section 4.01(a) of this Agreement, the Collateral Agent shall hold such proceeds in trust as a trustee for the Beneficiary Claimants with respect to their respective interests in such proceeds as provided for in this Agreement and in the Agreed Orders.

ARTICLE V

**Existence and Amounts of Liens and Obligations**

Whenever the Collateral Agent, in connection with the exercise of its rights or the performance of its obligations hereunder, seeks to determine the existence or amount of any Adequate Protection Claims, Retained Proceeds Claims, Lender Claims (including any Lender Claim secured by a Senior Lien on any Mortgaged Vessel(s)) or the Senior Liens securing such Lender Claims, the Collateral Agent may make a reasonable request that such information be furnished to it in writing by the Lender asserting such claim, and shall be entitled to make such determination on the basis of the information so furnished; *provided, however,* that if such Lender shall fail or refuse reasonably promptly to provide the requested information, the Collateral Agent shall be entitled to make any such determination by such method as it may, in the exercise of its good faith judgment, determine, including by reliance upon a certificate of the Debtors or a Court Order.  Without derogating from the generality of Sections 2.03 and 2.04 of this Agreement, the Collateral Agent may rely conclusively, and shall be fully protected in so relying, on any determination made by it in accordance with the provisions of the preceding sentence (or as otherwise authorized or directed by a court of competent jurisdiction) and shall have no liability to the Debtors, any Lender or any other Person as a result of such determination.

149245.06501/106149789V.15

## ARTICLE VI

## Consent of Debtors

Each Debtor by its signature hereto consents only to (I) the appointment of the Collateral Agent as collateral agent and security trustee for the Beneficiary Claimants having the power to accept, hold, maintain, preserve and protect the Additional Adequate Protection Liens and the Retained Proceeds Liens on behalf of the Beneficiary Claimants, and (II) the following provisions of this Agreement: (a) Section 2.06; (b) Section 2.07; (c) Section 3.06(a); (d) Section 7.01; and (e) Article VIII. The obligations of the Debtors under the Lender Financing Documents and the Agreed Orders will in no way be diminished or otherwise affected by such provisions of this Agreement. Each Debtor, by its acknowledgement signature below, confirms, acknowledges, and restates, and hereby grants anew, (A) the grant to the Collateral Agent for the ratable benefit of the Retained Proceeds Beneficiary Claimants of a security interest, mortgage, and Lien on the Retained Proceeds Vessels and other Retained Proceeds Collateral to secure the Retained Proceeds Claims, the Retained Proceeds Vessels Advances and the Agent Claims, and (B) the grant to Collateral Agent for the ratable benefit of the Adequate Protection Beneficiary Claimants of a security interest, mortgage, and Lien on the Mortgaged Vessels and the other Additional Adequate Protection Collateral to secure the Adequate Protection Claims and the Agent Claims.

## ARTICLE VII

## Representations and Warranties

SECTION 7.01    ***Representations and Warranties of Each Party***.  Each party hereto represents and warrants to the other parties hereto as follows:

(a)      Such party is duly organized, validly existing and in good standing (or its equivalent, if any) under the laws of the jurisdiction of its organization and has all requisite power and authority to enter into and perform its obligations under this Agreement.

(b)      This Agreement has been duly executed and delivered by such party.

(c)      The execution, delivery and performance by such party of this Agreement (i) do not require any consent or approval of, registration or filing with or any other action by any governmental authority other than pursuant to the Agreed Orders, (ii) will not violate any applicable law or regulation or any order of any governmental authority or any credit agreement, agreement or other instrument binding upon such party which could reasonably be expected to have a material adverse effect on the transactions contemplated by this Agreement, and (iii) will not violate the charter, by-laws or other organizational documents of such party.

## ARTICLE VIII

## Miscellaneous

SECTION 8.01    ***Notices***.  All notices and other communications provided for in this Agreement shall be in writing and shall be delivered by hand or overnight courier service, or (subject to Section 8.07(e) of this Agreement) sent by email, as follows:

20

(a)      [ADDRESSES]

Any party hereto may change its address for notices and other communications hereunder by notice to the other parties hereto.  All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt (if a Business Day) and on the next Business Day thereafter (in all other cases).

SECTION 8.02     **_Waivers; Amendment_**.  This Agreement may be amended by a writing (i) signed by all parties hereto, and (ii) consistent with the Agreed Orders or authorized by subsequent Court Order.

SECTION 8.03     **_Parties in Interest_**.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, all of whom are intended to be bound by, and to be third party beneficiaries of, this Agreement; provided that, the provisions of this Agreement are solely for the benefit of the Collateral Agent and the Beneficiary Claimants, and, no Debtor shall have rights as a third-party beneficiary of any of such provisions.  Without limiting the generality of the foregoing, nothing in this Agreement nor any provision hereof shall give any Debtor any rights to bring any action or suit, file any motion or objection in any Insolvency or Liquidation Proceeding (including the Bankruptcy Case), or take any other action to enforce the provisions of this Agreement against any Beneficiary Claimant or the Collateral Agent and/or to require specific performance by any Beneficiary Claimant or the Collateral Agent of any of the provisions hereof, or otherwise entitle any Debtor to any damages of any kind or nature whatsoever as a result of any breach hereof by any Beneficiary Claimant or the Collateral Agent; provided, however, that nothing herein shall impair any rights, claims, or defenses that the Debtors may have pursuant to Sections 2.06, 2.07, 3.06(a), 7.01, and Article VIII herein.

SECTION 8.04     **_Conflict with Agreed Orders_**.  In the event of any conflict between the terms of this Agreement and the terms of the Agreed Orders, the terms of the Agreed Orders shall control.

SECTION 8.05     **_Survival_**.  All covenants, agreements, representations and warranties made by any party in this Agreement shall be considered to have been relied upon by the other parties hereto and shall survive the execution and delivery of this Agreement.

SECTION 8.06     **_Counterparts_**.  This Agreement may be executed in counterparts, each of which shall constitute an original but all of which when taken together shall constitute a single contract.  Delivery of an executed signature page to this Agreement by facsimile transmission or any other electronic transmission shall be as effective as delivery of a manually signed counterpart of this Agreement.

SECTION 8.07     **_Severability_**.  Any provision of this Agreement held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.  The parties shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions

149245.06501/106149789V.15

with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 8.08    ***Governing Law; Jurisdiction; Consent to Service of Process***.

(a)    This Agreement shall be governed by, and construed in accordance with, the law of the Commonwealth of Massachusetts except to the extent that the Bankruptcy Code applies.

(b)    During the pendency of the Bankruptcy Case, the Bankruptcy Court shall have exclusive jurisdiction to construe and enforce this Agreement, and over any matter arising hereunder.

(c)    If the Bankruptcy Case is no longer pending, each party to this Agreement, by its signature to this Agreement, irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of the Business Litigation Session of the Superior Court Department for Suffolk County, Massachusetts, sitting at Boston, and of the United States District Court for the District of Massachusetts, sitting at Boston, in any action or proceeding arising out of or relating to this Agreement, or for recognition or enforcement of any judgment, and each of the parties to this Agreement, by its signature to this Agreement, irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such court.  Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Nothing in this Agreement shall affect any right that any party hereto may otherwise have to bring any action or proceeding relating to this Agreement in the courts of any jurisdiction.

(d)    Each party to this Agreement, by its signature to this Agreement, irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any court referred to in paragraphs (b) and (c) of this Section.  Each of the parties to this Agreement, by its signature to this Agreement, irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(e)    Each party to this Agreement irrevocably consents to service of process by hand or overnight courier service at the address provided for notices in Section 8.01 of this Agreement.  Nothing in this Agreement will affect the right of any party to this Agreement to serve process in any other manner permitted by law.

SECTION 8.09    ***WAIVER OF JURY TRIAL***.    EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT. EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF

22

LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

SECTION 8.10    *__Headings__*.  Article, Section and Annex headings used in this Agreement are for convenience of reference only, are not part of this Agreement and are not to affect the construction of, or to be taken into consideration in interpreting, this Agreement.

SECTION 8.11    *__Conflicts__*.  In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of any of Lenders Financing Documents, subject to Section 3.07 of this Agreement, the provisions of this Agreement shall control.

SECTION 8.12    *__Provisions Solely to Define Relative Rights__*.  The provisions of this Agreement are and are intended solely for the purpose of defining the relative rights of the Lenders and the Collateral Agent in the Retained Proceeds Collateral and the Additional Adequate Protection Collateral.  Nothing in this Agreement is intended to or will amend, waive or otherwise modify the provisions of any of the Lender Financing Documents or Agreed Orders.  Nothing in this Agreement is intended to or shall impair the obligations of any Debtor to pay any Lender Claims as and when the same shall become due and payable in accordance with their terms, subject to (i) all applicable provisions of the Agreed Orders, and (ii) any other applicable Court Orders.  Nothing in this Agreement is intended to or shall impair the rights of any Debtor under any orders that are not Agreed Orders.

SECTION 8.13    *__Agent Capacities__*.  Except as expressly set forth in this Agreement, the Collateral Agent shall not have (i) any duties or obligations in respect of any of the Collateral, or (ii) any liability or responsibility for the actions or omissions of any other Beneficiary Claimant, or for any other Beneficiary Claimant's compliance with (or failure to comply with) the terms of this Agreement or the Agreed Orders.  Except for payments or distributions resulting from its own gross negligence or willful misconduct as determined by a final non-appealable judgment by a court of competent jurisdiction, the Collateral Agent shall not have individual liability to any Person if it shall mistakenly pay over or distribute to any Lender or Debtor any amounts in violation of the terms of this Agreement or the Agreed Orders, so long as it is acting in good faith, and such action does not amount to gross negligence or willful misconduct.

SECTION 8.14    *__Term of Agreement__*.  Subject to the provisions of the final sentence of Section 2.07 hereof, the term of this Agreement shall commence on the first date set forth above and shall end on the date that all Additional Adequate Protection Liens and all Retained Proceeds Liens shall have been released in accordance with Section 2.05(a) of this Agreement and the Agreed Orders (the "*__Termination Date__*").

SECTION 8.15    *__No Precedent__*.  The Lenders party to this Agreement and Collateral Agent acknowledge and agree that this Agreement and the provisions hereof are not intended, and shall not under any circumstances be understood, interpreted or construed under any circumstances, to (i) alter the relative rights or priorities of the Senior Liens as to any particular Mortgaged Vessels, which rights and priorities shall be governed by the otherwise applicable rules

23

and provisions of applicable laws and any applicable Existing Intercreditor Agreements, or (ii) establish any binding or non-binding precedent, course of conduct, course of dealing, or other binding or non-binding expectation among any of the parties hereto in connection with any of their mutual dealings, agreements or arrangements in any circumstances outside of the Bankruptcy Case and/or with respect to any borrowers/guarantors/obligors/debtors other than the Debtors and James M. Cashman.

[Remainder of this page intentionally left blank; signatures follow.]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

ROCKLAND TRUST COMPANY,
as Lender and Collateral Agent


By:_____
Name:
Title:


[*Signature page continues.*]

[Signature Page to Intercreditor Agreement]

BANC OF AMERICA LEASING AND CAPITAL, LLC,
as Lender


By:_____
Name:
Title:


[*Signature page continues*.]

[Signature Page to Intercreditor Agreement]

CITIZENS ASSET FINANCE, INC.,
as Lender


By:_____
Name:
Title:


[*Signature page continues.*]

[Signature Page to Intercreditor Agreement]

EQUITABLE BANK,
as Lender


By:_____
Name:
Title:


[*Signature page continues.*]

[Signature Page to Intercreditor Agreement]

FIFTH THIRD BANK,
as Lender


By:_____
Name:
Title:


[*Signature page continues.*]

[Signature Page to Intercreditor Agreement]

KEYBANK EQUIPMENT FINANCE, A DIVISION OF
KEYBANK NATIONAL ASSOCIATION,
as Lender


By:_____
Name:
Title:



[*Signature page continues*.]

PACIFIC WESTERN BANK,
as Lender


By:_____
Name:
Title:


[*Signature page continues.*]

RADIUS BANK,
as Lender

By:_____
Name:
Title:

[*Signature page continues.*]

SANTANDER BANK, N.A.,
as Lender


By:_____
Name:
Title:


[*Signature page continues.*]

U.S. BANK, NATIONAL ASSOCIATION, ACTING THROUGH ITS DIVISION, U.S. BANK EQUIPMENT FINANCE,
as Lender


By:_____
Name:
Title:


[*Signature page continues.*]

[Signature Page to Intercreditor Agreement]

WELLS FARGO EQUIPMENT FINANCE, INC.,
as Lender


By:_____
Name:
Title:


[*Signature page continues.*]

[Signature Page to Intercreditor Agreement]

CASHMAN EQUIPMENT CORP.,
as Debtor


By:_____
Name:
Title:


[*Signature page continues.*]

CASHMAN SCRAP & SALVAGE, LLC,
as Debtor


By:_____
Name:
Title:


[*Signature page continues.*]

[Signature Page to Intercreditor Agreement]

SERVICIO MARINA SUPERIOR, LLC,
as Debtor


By:_____
Name:
Title:


[*Signature page continues.*]

[Signature Page to Intercreditor Agreement]

CASHMAN CANADA, INC.,
as Debtor


By:_____
Name:
Title:


[*Signature page continues.*]

MYSTIC ADVENTURE SAILS, LLC,
as Debtor


By:_____
Name:
Title:

[Signature Page to Intercreditor Agreement]

ANNEX 1.01

"***Adequate Protection Claims***" means any and all "Adequate Protection Claims" of the Lenders as defined in the Cash Collateral Order that may be allowed by Court Order from time to time, provided that, for the avoidance of doubt, any reference to an Adequate Protection Claim shall include a reference to each Adequate Protection Reserve to which any Lender is entitled at the applicable time.

"***Adequate Protection Claims Adjudication Date***" means the first to occur of (i) the first day following (A) a date established by Court Order (including a Court Order confirming and thereby incorporating the provisions of a chapter 11 plan) as the date on or before an Adequate Protection Claim must be asserted through the filing of an appropriate pleading in the Bankruptcy Case and service thereof on appropriate parties including the Collateral Agent, and (B) the date as of which all Adequate Protection Claims asserted prior to such date have been finally adjudicated; or (ii) closing or entry of a final decree in the Bankruptcy Case.

"***Additional Adequate Protection Collateral***" means, collectively, each of Mortgaged Vessels and all of the proceeds of any sale or disposition (but not any charter, charter hire or lease) thereof and all amounts recoverable by a Debtor under the insurances relating thereto (provided that, none of the Mortgaged Vessels on which Pacific Western Bank or MARAD shall be subject to the Additional Adequate Protection Liens or included in the Additional Adequate Protection Collateral).

"***Additional Adequate Protection Liens***" means the Liens held by the Collateral Agent on the Mortgaged Vessels and the other Additional Adequate Protection Collateral to secure the Adequate Protection Claims and the Agent Claims pursuant to the Cash Collateral Order and this Agreement (provided that, none of the Mortgaged Vessels on which Pacific Western Bank or MARAD shall be subject to the Additional Adequate Protection Liens or included in the Additional Adequate Protection Collateral).

"***Adequate Protection Beneficiary Claimants***" is defined in the definition of "Beneficiary Claimants" below in this Annex 1.01.

"***Adequate Protection Beneficiary Claims***" is defined in the definition of "Beneficiary Claims" below in this Annex 1.01.

"***Adequate Protection Reserve***" means any cash reserve in respect of any asserted but not yet allowed Adequate Protection Claim to which any Lender is entitled pursuant to an agreement between the Debtors and the Collateral Agent or a Court Order.

"***Agency Fee***" has the meaning set forth in Exhibit 2.06.

"***Agent Claims***" means the Agency Fee, reimbursements for reasonable costs and expenses reasonably incurred, indemnifications and other amounts of any kind or nature owing to Collateral Agent in its capacity as such under this Agreement and/or the Agreed Orders.

"***Agent Liens***" means, collectively, the Retained Proceeds Liens and the Additional Adequate Protection Liens.

"***Agreed Orders***" means, collectively, the Cash Collateral Order, the Sale Order, and, where the context requires, any Subsequent Sale Order.

"***Agreement***" has the meaning set forth in the preamble.

"***Bankruptcy Case***" means the case pending under the Bankruptcy Code as to the Debtors in the Bankruptcy Code (chapter 11 case no. 17-12205 (jointly administered)) (as such case may be converted to a case under chapter 7 of the Bankruptcy Code).

"***Bankruptcy Case Termination***" means the first day on which (x) the Bankruptcy Case shall be dismissed or (y) the Bankruptcy Case shall otherwise cease to be pending.

"***Bankruptcy Code***" has the meaning set forth in Recital A.

"***Bankruptcy Court***" means the United States Bankruptcy Court for the District of Massachusetts, or such other court as may properly exercise jurisdiction over the Bankruptcy Case.

"***Beneficiary Claimant***" means (i) as to the Retained Proceeds Liens, each of (x) each Lender in its capacity as holder of any Retained Proceeds Claim that may arise and/or be outstanding from time to time, (y) each Lender in its capacity as holder of any Retained Proceeds Vessels Advance that may be made and/or be outstanding from time to time, and (z) Collateral Agent in its capacity as holder of any Agent Claims that may arise and/or be outstanding from time to time (all collectively under this clause (i), the "***Retained Proceeds Beneficiary Claimants***"), and (ii) as to the Additional Adequate Protection Liens, (x) each Lender (other than Pacific Western Bank) in its capacity as holder of any Adequate Protection Claim that may arise and/or be outstanding from time to time, and (y) Collateral Agent in its capacity as holder of any Agent Claims that may arise and/or be outstanding from time to time (all collectively under this clause (ii), the "***Adequate Protection Beneficiary Claimants***").

"***Beneficiary Claimants' Accounting***" has the meaning set forth in Section 2.01(b).

"***Beneficiary Claims***" means (i) as to the Retained Proceeds Liens, each of (x) each Retained Proceeds Claim that may arise and/or be outstanding from time to time, (y) each Retained Proceeds Vessels Advance that may be made and/or be outstanding from time to time, and (z) all Agent Claims that may arise and/or be outstanding from time to time (all collectively under this clause (i), the "***Retained Proceeds Beneficiary Claims***"), and (ii) as to the Additional Adequate Protection Liens, (x) each Adequate Protection Claim (including each Adequate Protection Reserve) that may arise and/or be outstanding from time to time, and (y) ally Agent Claims that may arise and/or be outstanding from time to time (all collectively under this clause (ii), the "***Adequate Protection Beneficiary Claims***").

"***Business Day***" means any day that is not a Saturday, Sunday or other day that is a legal holiday under the laws of the Commonwealth of Massachusetts or on which banking institutions in the Commonwealth of Massachusetts are required or authorized by law or other governmental action to close.

"***Cash Collateral Motions***" has the meaning set forth in Recital B.

"***Cash Collateral Order***" means that certain *Seventh Interim Order Granting Motion for an Order Granting Motion for an Order (1) Authorizing the Use of Cash Collateral, (2) Granting Replacement and Other Liens, (3) Scheduling Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* [dkt. No. __] entered by the Bankruptcy Court on the docket of the Bankruptcy Case, all prior interim cash collateral orders as modified by such afore-mentioned order, and any subsequent order of the Bankruptcy Court concerning cash collateral that has been entered on the docket of the Bankruptcy Case, which is unstayed and to which the Collateral Agent and all Lenders have assented.

"***Collateral***" means, collectively, the Additional Adequate Protection Collateral and the Retained Proceeds Collateral.

"***Collateral Agent***" has the meaning set forth in the preamble, subject to Section 2.09.

"***Committee***" means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case.

"***Court Order***" means an order entered by the Bankruptcy Court, and in effect (not having been vacated, reversed or stayed), in the Bankruptcy Case, regardless, unless otherwise specified, of whether such order has become final.

"***Debtors***" has the meaning set forth in the preamble hereto.

"***Discharge***" means, with respect to any Lender Claim, Retained Proceeds Claim, Retained Proceeds Vessels Advance, Adequate Protection Claim or Agent Claim, (i) the indefeasible payment in full in cash of the outstanding amount thereof, including (as to any Lender Claim) the allowed amount of such claim as of the Petition Date and all interest, fees, expenses reimbursements and any other amounts payable under section 506(b) of the Bankruptcy Code in connection with such claim, or (ii) as to any amount thereof that is disputed, unliquidated or contingent, the funding, in cash equal to the full amount asserted by the holder of such claim, of an escrow or reserve pursuant to Court Order providing for adjudication of the claim and payment in full of the allowed amount thereof (together with all interest, fees, expenses reimbursements and any other amounts payable under section 506(b) of the Bankruptcy Code in connection with such claim) (and for the avoidance of doubt, the Discharge of Agent Claims at any time shall not require the payment of or escrow or reserve in respect of either Agent Claims for contingent indemnification obligations which have not yet been asserted (orally or in writing) at such time and Agent Claims for fees, costs and expenses not yet accrued or arising as of such time)).

"***Discharged***" means, with respect to any Lender Claim, Retained Proceeds Claim, Retained Proceeds Vessels Advance, Adequate Protection Claim or Agent Claim, that Discharge thereof has occurred.

"***Enforcement Costs and Expenses***" has the meaning set forth in Section 2.06(a).

"***Existing Intercreditor Agreement***" means any subordination agreement, intercreditor agreement or other agreement among any Lenders as of the Petition Date governing the priority of Lender Claims *inter se* and Liens therefor.

"***Indemnitees***" has the meaning set forth in Section 2.07.

"***Insolvency Proceeding***" means (i) the Bankruptcy Case, (ii) any other case pending from time to time as to any Debtor under the Bankruptcy Code or any similar statute governing the bankruptcy, insolvency, reorganization or administration of debtors under any state of the United States of America or any jurisdiction outside of the United States of America, (iii) any other proceeding for the reorganization, recapitalization or adjustment or marshalling of the assets or liabilities of any Debtor under the laws of state of the United States of America or any jurisdiction outside of the United States of America, (iv) any receivership, assignment for the benefit of creditors, liquidation, dissolution, marshalling of assets or liabilities or other winding up of or relating to any Debtor under the laws of the United States of America, any state of the United States of America or any jurisdiction outside of the United States of America, in each case whether or not voluntary; or (v) any other proceeding of any type or nature under the laws of the United States of America, any state of the United States of America or any jurisdiction outside of the United States of America, in which substantially all claims of creditors of any Debtor are determined and any payment or distribution is or may be made on account of such claims.

"***Lenders***" has the meaning set forth in the preamble.

"***Lender Claim***" means the claim of a Lender against any or all of the Debtors as of the Petition Date, in the amount of (i) to the extent such claim has been determined by Court Order (including the Cash Collateral Order), the amount thereof allowed by such order, and (ii) to the extent such claim has not yet been determined by Court Order, the amount asserted by the Lender as constituting the full amount of such claim.

"***Lender Financing Documents***" means, as to any Lender Claim, the underlying loan and financing documents, agreements and instruments, including without limitation any applicable loan agreements, promissory notes, security agreements, ship mortgages and financing statements, evidencing and/or governing such Lender Claim.

"***Lien***" means, with respect to any vessel, equipment or other personal property (including, without limitation, charter hire, other accounts and general/payment intangible property), any vessel mortgage, fleet mortgage, ship mortgage, charge, security interest under the Uniform Commercial Code or other applicable law, or similar interest of a creditor in such property whereby such property serves as collateral security for payment of claims of such creditor, and specifically including any lien granted by Court Order during any period preceding, or in the absence of, recordation of a mortgage, financing statement or the like.

"***Major Action***" shall mean any of the following:

(i)    Consenting to any sale of any Retained Proceeds Vessel (x) after the Sale Period, or (y) during the Sale Period for a cash sale price payable at the closing of such sale that is less than the MDP (as defined in the Sale Order) thereof;

(ii)     Consenting, in its capacity as the holder of the Additional Adequate Protection Liens, to any sale of a Mortgaged Vessel as to which the Lender Claim of the Senior Lender has been Discharged, (x) after the Sale Period or (y) during the Sale Period for a cash sale purchase price payable at the closing of such sale that is less than the MDP (as defined in the Sale Order) thereof;

(iii)    Filing any motion for relief from the automatic stay in the Bankruptcy Cases with respect to any Collateral in its capacity as the holder of and collateral agent of the applicable Beneficiary Claimants with respect to the Additional Adequate Protection Liens and/or the Retained Proceeds Liens, as applicable;

(iv)    Commencing any foreclosure proceedings or otherwise exercising remedies, other than Permitted Remedies, with respect to any Collateral in its capacity as the holder of and collateral agent of the applicable Beneficiary Claimants with respect to the Additional Adequate Protection Liens and/or the Retained Proceeds Liens, as applicable.

"*Mortgaged Vessels*" has the meaning set forth in the Cash Collateral Order (provided that, none of the Mortgaged Vessels on which Pacific Western Bank or MARAD shall be subject to the Additional Adequate Protection Liens or included in the Additional Adequate Protection Collateral).

"*New Vessel Mortgages*" means, collectively, each of the New Vessel Mortgages (as defined in the Sale Order) pursuant to which a Lien on any Retained Proceeds Vessel to secure the existing obligations under the Lender Financing Documents (which include the amount of the Retained Proceeds Claims) is granted to and created in favor of the Collateral Agent under 46 U.S.C. Chapter 313, as contemplated and authorized by the Cash Collateral Order.

"*Ordinary Course Costs and Expenses Limitation*" has the meaning set forth in Section 2.06(a).

"*Permitted Remedies*" means, with respect to the Retained Proceeds Liens and the Additional Adequate Protection Liens only:

(i)     filing a claim or statement of interest with respect to such Liens or the obligations secured thereby in an Insolvency Proceeding;

(ii)    taking any action (not adverse to any Senior Lender's interest, rights or priority status as to any Mortgaged Vessel) in order to create or perfect (but not enforce) such Liens or to preserve or protect the collateral thereunder;

(iii)    filing any necessary responsive or defensive pleadings in opposition to any motion, claim, adversary proceeding or other pleading made by any person objecting to or otherwise seeking to avoid, subordinate or discharge any such Lien, other than in accordance with the terms of this Agreement; and

(iv)    filing any proof of claim, making other filings and making any arguments, objections, requests, and motions, in each case in its capacity as the holder of and collateral agent of the applicable Beneficiary Claimants with respect to the Additional Adequate Protection Liens

and/or the Retained Proceeds Liens, as applicable, that are, in each case, in accordance with the terms of this Agreement.

"***Person***" means any natural person, corporation, business trust, joint venture, association, company, partnership, limited liability company or government, individual or family trusts, or any agency or political subdivision thereof.

"***Petition Date***" has the meaning set forth in Recital A.

"***Proposing Lenders***" shall have the meaning set forth in Section 2.12.

"***Required Lenders***" shall mean (i) as to any Major Action concerning the Retained Proceeds Lien and/or Retained Proceeds Collateral at a time when at least one Retained Proceeds Claim is outstanding, Lenders holding not less than seventy-five percent (75%) of the then-outstanding amount of the Retained Proceeds Claims, (ii) as to any Major Action concerning the Additional Adequate Protection Liens and/or Additional Adequate Protection Collateral at a time when at least one Adequate Protection Claim has been allowed and is outstanding, Lenders (not including Pacific Western Bank) holding not less than seventy-five percent (75%) of the then-outstanding allowed amount of the Adequate Protection Claims, and (iii) as to (1) any Major Action concerning the Retained Proceeds Lien and/or Retained Proceeds Collateral at any time when no Retained Proceeds Claim is outstanding, (2) any Major Action concerning the Additional Adequate Protection Liens and/or Additional Adequate Protection Collateral at any time when no Adequate Protection Claim is outstanding, and/or (3) any other matter as to which this Agreement permits or requires consent of "Required Lenders" (including but not limited to the appointment of a successor Collateral Agent in Section 2.09(a)), Lenders holding not less than seventy-five percent (75%) of the then-outstanding principal amount of the Lender Claims.

"***Resignation Effective Date***" has the meaning set forth in Section 2.09(a).

"***Retained Proceeds Beneficiary Claimants***" is defined in the definition of "Beneficiary Claimant" above in this Annex 1.01.

"***Retained Proceeds Beneficiary Claims***" is defined in the definition of "Beneficiary Claims" above in this Annex 1.01.

"***Retained Proceeds Claims***" means any and all "Retained Proceeds Claims," as defined in the Sale Order, that may be outstanding at any time and/or from time to time, including any such claims that are in dispute or as to which the underlying Lender Claim or Liens therefor are in dispute.

"***Retained Proceeds Collateral***" means, collectively, each of Retained Proceeds Vessels and all of the proceeds of any sale or disposition (but not any charter, charter hire or lease) thereof and all amounts recoverable by a Debtor under the insurances relating thereto.

"***Retained Proceeds Liens***" means the Liens held by the Collateral Agent on the Retained Proceeds Vessels and other Retained Proceeds Collateral to secure the Retained Proceeds Claims, the Retained Proceeds Vessels Advances and the Agent Claims pursuant to the Cash Collateral Order and this Agreement, and shall include the Retained Proceeds Judicial Lien (as

defined in the Cash Collateral Order) and the Liens granted pursuant to each New Vessel Mortgage.

"*Retained Proceeds Vessels*" means, collectively, each of the vessels defined as "Unencumbered Vessels" in the Cash Collateral Order.

"*Retained Proceeds Vessels Advance Motion*" has the meaning set forth in Section 2.12.

"*Retained Proceeds Vessels Advances*" has the meaning set forth in Section 2.12.

"*Retained Proceeds Vessels Advances Notice*" has the meaning set forth in Section 2.12.

"*Sale Order*" means the _____ entered by the Bankruptcy Court on the docket of the Bankruptcy Case [Docket No. ____].

"*Sale Period*" means the period during which sales of Retained Proceeds Collateral or Additional Adequate Protection Collateral may take place under the Sale Order or and any Subsequent Sale Order.

"*Secured Obligations*" means the Adequate Protection Claims, the Retained Proceeds Claims, the Retained Proceeds Vessels Advances, and the Agent Claims.

"*Senior Lender*" means, as to any Mortgaged Vessel, a Lender that has a Senior Lien on such Mortgaged Vessel.

"*Senior Lien*" means, as to any Mortgaged Vessel, a Lien thereon securing a Lender Claim.

"*Subagent*" has the meaning set forth in Section 2.02(b).

"*Subsequent Sale Order*" means any Court Order extending the Sale Order or otherwise providing a process for sale of Mortgaged Vessels, to which (in either instance) all Lenders and the Collateral Agent have assented.

"*Termination Date*" has the meaning set forth in Section 8.14.

EXHIBIT 2.06

1 – A collateral agency fee in the amount of $8,300 every 30 days (the "***Agency Fee***") shall be payable by the Debtors to the Collateral Agent as compensation for the collateral agency services to be provided by Collateral Agent hereunder, which such  Agency Fee shall be due and payable in advance first on the Start Date and thereafter on the first business day of each successive 30 day period until the occurrence of the Termination Date.  Each such  Agency Fee shall be prorated if the Termination Date occurs within a 30 day cycle.

IN RE: CASHMAN EQUIPMENT CORP., *ET AL.*
BANKRUPTCY NO. 17-12205
(JOINTLY ADMINISTERED)

EXHIBIT C TO

EIGHTH INTERIM ORDER GRANTING (1) USE OF CASH COLLATERAL,
(2) REPLACEMENT LIENS, (3) ADDITIONAL ADEQUATE PROTECTION,
AND (4) OTHER RELIEF

**Cashman Equipment Corp., et al.**
Exh. C to Eighth Cash Collateral Order

| LENDER | Principal as of 6/9/17 | Accrued Int as of 6/9/17 | Total P+I as of 6/9/17 | Amount Reserved |
|---|---|---|---|---|
| Fifth Third Bank | $ 4,010,000.00 | $ 59,697.36 | $ 4,069,697.36 | $ 7,906.34 |
| Banc of America Leasing | $ 12,125,000.36 | $ 85,607.21 | $ 12,210,607.57 | $ |
| Citizens Asset Finance | $ 13,813,408.93 | $ 138,798.72 | $ 13,952,207.65 | $ 9,428.05 |
| Key Bank | $ 6,348,082.20 | $ 92,043.95 | $ 6,440,126.15 | $ |
| Pacific West Bank | $ 684,999.96 | $ 3,362.74 | $ 688,362.70 | $ 23,489.34 |
| Radius Bank | $ 4,170,451.63 | $ 17,454.20 | $ 4,187,905.83 | $ 109,737.31 |
| Rockland Trust Company | $ 47,235,463.97 | $ 436,318.16 | $ 47,671,782.13 | $ 21,530.50 |
| Santander Bank | $ 26,597,122.28 | $ 272,067.88 | $ 26,869,190.16 | $ |
| US Bank | $ 2,292,000.00 | $ 92,457.01 | $ 2,384,457.01 | $ |
| Wells Fargo | $ 22,190,836.27 | $ 282,337.66 | $ 22,473,173.93 | $ |
| Equitable Bank | $ 1,137,708.25 | $ 12,203.09 | $ 1,149,911.34 | $ |
| | | | | |
| **Totals** | **140,605,073.85** | **1,492,347.98** | **142,097,421.83** | |

IN RE: CASHMAN EQUIPMENT CORP., *ET AL.*
BANKRUPTCY NO. 17-12205
(JOINTLY ADMINISTERED)

EXHIBIT D TO

EIGHTH INTERIM ORDER GRANTING (1) USE OF CASH COLLATERAL,
(2) REPLACEMENT LIENS, (3) ADDITIONAL ADEQUATE PROTECTION,
AND (4) OTHER RELIEF

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

|  |  |
|---|---|
| In re<br><br>**CASHMAN EQUIPMENT CORP.,**[1]<br><br>**Debtor** | **Chapter 11**<br><br>**Case No. 17-12205-MSH**<br><br>**Jointly Administered** |

## DEBTORS' ACKNOWLEDGEMENTS AND RETAINED CHALLENGE RIGHTS

Cashman Equipment Corp. ("<u>CEC</u>"), Cashman Scrap & Salvage, LLC ("<u>CSS</u>"), Servicio Marina Superior, LLC ("<u>SMS</u>"), Cashman Canada, Inc. ("<u>CCI</u>"), and Mystic Adventure Sails, LLC ("<u>Mystic</u>", and together with CEC, CSS, SMS and CCI the "<u>Debtors</u>") set forth their acknowledgements and retained challenge rights with respect to the claims and/or liens asserted against the Debtors and/or their assets by Fifth Third Bank, Banc of America Leasing and Capital, LLC, Citizens Asset Finance, Inc, Key Equipment Finance, a division of KeyBank, National Association, Pacific Western Bank, Radius Bank, Rockland Trust Company, Santander Bank, N.A., and Wells Fargo Equipment Finance, Inc., Equitable Bank and U.S. Bank, National Association, acting through its division, U.S. Bank Equipment Finance (collectively the "<u>Lenders</u>" and individually a "<u>Lender</u>"):

1.     Subject to paragraph 5, below, the Debtors acknowledge that, as of June 9, 2017 the "<u>Petition Date</u>"), the Lenders were owed principal and interest in the amounts set forth on <u>Exhibit C</u> to the *Eighth Interim Order Granting (1) Use of Cash Collateral, (2) Replacement Liens, (3) Additional Adequate Protection, And (4) Other Relief* (the "<u>Cash Collateral Order</u>"). The Debtors reserve the right to challenge any other amounts claimed to be owed by any or all of the Lenders.

2.     The Debtors acknowledge the validity and perfection of: (i) the mortgages held by the particular Lender against the particular vessels described on <u>Exhibit A</u> to the Cash Collateral Order (collectively the "<u>Vessels</u>"), and (ii) the Lenders' respective liens on cash collateral (as that term is defined in the Bankruptcy Code) existing and identifiable as of the Petition Date and generated from Vessels against which they held valid and perfected liens, except for the following:

---

[1] The Debtors in these jointly administered Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Cashman Equipment Corp. (7969), Cashman Scrap & Salvage, LLC (6088), Servicio Marina Superior, LLC (6919), Mystic Adventure Sails, LLC (2137) and Cashman Canada, Inc. (1296).

733328

1

a.     Any lien asserted against a vessel listed as "Unencumbered" on <u>Exhibit A</u> to the Cash Collateral Order (collectively the "<u>Unencumbered Vessels</u>");

b.     Any Lenders' lien on cash collateral (as that term is defined under the Bankruptcy Code) generated by the Unencumbered Vessels or by a Vessel against which they do not have a valid and perfected lien;

c.     The extent of any lien asserted by a Lender on cash existing as of the Petition Date;

d.     Any lien asserted by Santander Bank, N.A. on cash collateral (as that term is defined under the Bankruptcy Code);

e.     Any lien asserted by Citizens Bank, N.A. on cash collateral generated by JMC-148, JMC-163 and/or JMC-3334;

f.     Any lien first perfected by a UCC-1 financing statement filed within ninety (90) days of the filing of the Debtors' bankruptcy cases, including the UCC-1 financing statement filed by Rockland Trust Company on or about March 17, 2017; and

3.     The Debtors acknowledge the validity and perfection of: (i) the liens held by the particular Lenders against the particular items of equipment (not including the Vessels) described on <u>Exhibit A</u> to the Cash Collateral Order; and (ii) the security interest held by Rockland Trust Company on the Debtors' personal property, except for the following:

a.     All challenge rights reserved under paragraph 2, to the extent applicable to personal property;

b.     Any lien asserted by a Lender on commercial tort claims;

c.     The extent of any lien asserted by Rockland Trust Company in the amounts recovered from Micoperi SRL.

4.     The Debtors reserve the right to challenge, for any reason, any claim or lien asserted by any Lender on the Debtors' assets other than those acknowledged to be valid in paragraphs 1, 2(i) and (ii), and 3(i) and (ii), above.

5.     Without limiting paragraph 4, above, the Debtors reserve the right to challenge, for any reason, the following additional amounts of principal and/or non-default interest claimed to be owed, as of the Petition Date and above and beyond the amounts acknowledged in the Cash Collateral Order, by the following Lenders:

a.     Fifth Third Bank:  $7,906.34;

b.     Pacific West Bank: $23,489.34;

733328

     c.       Citizens Asset Finance, Inc.: $9,428.05;

     d.       Rockland Trust Company: $21,530.50.

     6.       Without limiting paragraph 4, above, the Debtors and Radius Bank are currently reconciling the application of a portion of the JMC 77 sale proceeds in the amount of $109,737.31 received by Radius on May 2, 2017.  The Debtors and Radius expect that this reconciliation will be concluded on or before October 27, 2017, but in the interim both parties reserve their rights to modify the acknowledged principal and interest numbers to reflect the agreed reconciliation of these proceeds.

733328